UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| A.B., by and through his parents, L.B. and M.B., on his own behalf and on behalf of similarly situated others; L.B.; and M.B., | NO. |
| Plaintiffs, | **COMPLAINT** |
| v. | **(CLASS ACTION)** |
| PREMERA BLUE CROSS, | |
| Defendant. | |

## I.   INTRODUCTION

1.      The Patient Protection and Affordable Care Act ("Affordable Care Act" or "ACA") prohibits discrimination on the basis of age and sex in health care. This includes the administration, application, and enforcement of any exclusions of gender-affirming care by health insurance companies and claims administrators that receive federal financial assistance and participate in health care insurance marketplaces established under the ACA.

2.      As a health insurance company, Premera Blue Cross ("Premera") provides health insurance and related services to approximately 2 million people across the States of Washington and Alaska. And as a health carrier, Premera, directly or through a subsidiary, participates in the health care insurance marketplaces including the Washington Health Benefit Exchange in Washington State. In doing so, and

COMPLAINT – 1

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

notwithstanding its legal obligation to not discriminate on the basis of age or sex pursuant to Section 1557 of the ACA, Premera administers and enforces an exclusion of coverage of gender-affirming care (including medically necessary surgery) for transgender youth under the age of 18. Premera's exclusion deprives transgender youth of essential, evidence-based, and even lifesaving medical care. The exclusion facially excludes coverage for gender-affirming surgical care that transgender adolescents under 18 may require.

3. Plaintiff A.B., a fifteen-year-old transgender boy, and his parents, L.B. and M.B., are being discriminated against on the basis of sex because A.B. is transgender. They are also being discriminated against based on age because Premera has arbitrarily imposed a categorical exclusion based on age, notwithstanding that medical care should be individualized, based on a particular patient's development and medical needs, and consistent with well-established clinical practice guidelines.

4. Through L.B.'s employment, A.B. receives health insurance coverage through the Association of Washington Business HealthChoice Health Plan, a non-grandfathered Washington insured plan offered by Premera. A.B. is enrolled in the Premera insured plan as a dependent of L.B.

5. Premera purports to cover gender-affirming care when medically necessary, according to the express terms of the plan. *Exh. A*, pp. 3, 9, 20.

6. Indeed, gender-affirming care is typically covered without arbitrary and categorical age limitations: "Benefits for medically necessary gender affirming care services are subject to the same cost shares that you would pay for inpatient or outpatient treatment for other covered medical conditions *for all ages*." *Id.*, p. 20 (emphasis added).

7. Despite this plan language, Premera categorically excludes coverage for gender-affirming surgical care for insureds under the age of 18. *See Exh. B*, Medical Policy 7.01.557 Gender Transition/Affirmation Surgery and Related Services. Premera

COMPLAINT – 2

has imposed an exclusion of gender-affirming surgical care for youth since May 1, 2016. *Id.*, p. 37 of 41.

8.   A.B.'s pre-service request for authorization of gender-affirming care in the form of chest surgery (mastectomy) and reconstruction was denied because he is not yet 18, even though he, his parents, and treating medical providers all agree that the chest surgery and reconstruction is clinically appropriate.

9.   Premera's internal medical policies for the same or similar procedures provided to treat cisgender patients are not restricted or limited based upon the insured's age.

10.   For example, Premera does not impose an age restriction on medically necessary breast reduction for cisgender female insureds. *See Exh. C*.

11.   Premera does not apply an age restriction on medically necessary mastectomy for gynecomastia when performed on cisgender male insureds. *See Exh. D*.

12.   Premera does not apply an age restriction on medically necessary prophylactic mastectomy for cisgender female insureds. *See Exh. E*.

13.   Based on information and belief, Premera only imposes an age restriction on mastectomy when prescribed to treat gender dysphoria. In other words, Premera only imposes an age restriction when the surgical care is prescribed for transgender insureds.

14.   Premera's age restriction on coverage of gender-affirming care is not consistent with generally accepted standards of medical practice. Nor is the age limit clinically appropriate or effective for the treatment of gender dysphoria. *See Exh. A*, p. 76 (definition of "medical necessity").

15.   The Premera medical policy relies on the World Professional Association for Transgender Health (WPATH) Standards of Care as the "best available science and expert professional consensus." *Exh. B*, p. 34 of 41.

COMPLAINT – 3

16.     WPATH, however, confirms that chest surgery and reconstruction to treat gender dysphoria can be medically necessary for transgender adolescents under the age of 18. Specifically, WPATH Standards of Care, Version 8 details the requirements for gender-affirming medical and surgical treatment for adolescents under the age of 18. *See, e.g.,* Coleman, E., et al. (2022), Standards of Care for the Health of Transgender and Gender Diverse People, Version 8, *International Journal of Transgender Health*, 23(Suppl 1), S1–S259, available at https://doi.org/10.1080/26895269.2022.2100644 (Statement of Recommendations 6.12) (last visited 6/22/23).

17.     Premera cites certain studies asserting that developmental maturity is required in order to "make a truly informed, educated decision" required for gender-affirming surgical care. ***Exh. B***, pp. 34–35 of 41.

18.     Premera, however, does not impose the same limitations on coverage for similar surgical procedures for cisgender insureds with other conditions who are under age 18. *See* ***Exhs. C–E***.

19.     Finally, while Premera notes that coverage of gender-affirming care is mandated in Washington State as of 2022, it did not remove or revise its internal policy limiting coverage of such treatment to only insureds over the age of 18. *See* ***Exh. B***, p. 35 of 41.

20.     Premera's internal medical policy of excluding gender-affirming surgical care for transgender adolescents under 18 contravenes the well-established medical consensus that gender-affirming health care can be medically necessary and even lifesaving for adolescents and adults, and that determinations about medical necessity should be individualized.

21.     A.B. has been denied coverage for medically necessary gender-affirming health care because A.B. is transgender and under the age of 18, based on the exclusion imposed by Premera's internal medical policy.

COMPLAINT – 4

22.     Plaintiffs will incur financial hardship without the coverage promised in the Premera health plan.

23.     A.B. has also suffered stigmatization, humiliation, and a loss of dignity because of the Plan's targeted discrimination against transgender youth, which wrongly deems their health care needs as unworthy of equal coverage.

24.     This targeted discrimination against transgender youth, which Premera designed, administers, and enforces, violates the ACA's Section 1557.

25.     Plaintiffs bring this lawsuit on behalf of themselves and a proposed class of similarly situated individuals for declaratory and injunctive relief preventing Premera's design, administration, and enforcement of the discriminatory exclusion of coverage of gender-affirming surgical care for youth.

26.     Plaintiffs bring this lawsuit to obtain a judgment to remedy their injuries and that of the proposed class and to have the design and administration of such exclusions declared unlawful, thereby preventing their enforcement by Premera.

27.     Plaintiffs also seek compensatory, consequential, and nominal damages for their own individual injuries resulting from Premera's discriminatory administration of the Plan.

## II.   PARTIES

28.     ***Plaintiff A.B.*** Plaintiff A.B. is a fifteen-year-old transgender boy who is enrolled in a Premera Washington insured non-grandfathered health plan. A.B. brings suit by and through his next friends and parents, L.B. and M.B. A.B. is enrolled in a Premera health plan issued through the Association of Washington Business due to his father's employment. A.B. and his parents live in King County, Washington.

29.     ***Plaintiffs L.B. and M.B.*** Plaintiffs L.B. and M.B. are the parents of A.B. As part of his employment, L.B. receives health insurance coverage through the Plan, which

COMPLAINT – 5

Sirianni Youtz
Spoonemore Hamburger pllc
3101 Western Avenue, Suite 350
Seattle, Washington 98121
Tel. (206) 223-0303   Fax (206) 223-0246

is insured and administered by Premera. Together, L.B. and M.B. pay for A.B.'s health care needs.

30.     ***Defendant Premera Blue Cross.*** Defendant Premera Blue Cross ("Premera") is a health carrier that issues and administers health plans in Washington State. Premera is a recipient of federal financial assistance and participates in health care insurance marketplaces established under the ACA, including the Washington Health Benefit Exchange. Premera is headquartered in Mountlake Terrace, Snohomish County, Washington. Premera is not a religious organization.

### III.   JURISDICTION AND VENUE

31.     This action arises under Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116.

32.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the matters in controversy arise under the Constitution and laws of the United States.

33.     Declaratory relief is authorized by Rules 57 and 65 of the Federal Rules of Civil Procedure and by 28 U.S.C. §§ 2201 and 2202.

34.     Venue is proper under 28 U.S.C. § 1391(b)(2) because, *inter alia*, Premera is located in and a substantial part of the events giving rise to the claim occurred in Snohomish County, Washington.

35.     The Court has personal jurisdiction over Premera because Premera is headquartered in Snohomish County, Washington.

### IV.   FACTUAL BACKGROUN

*A.     Gender Dysphoria and Its Treatment*

36.     Every individual's sex is multifaceted and comprises a number of characteristics, including but not limited to chromosomal makeup, hormones, internal

COMPLAINT – 6

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

and external reproductive organs, secondary sex characteristics, and most importantly, gender identity.

37.     Gender identity is a person's internal sense of their sex. It is an essential element of human identity that everyone possesses, and a well-established concept in medicine.

38.     A person's sex is generally assigned at birth based solely on a visual assessment of external genitalia at the time of birth. External genitalia are only one of several sex-related characteristics and are not always indicative of a person's sex.

39.     For most people, these sex-related characteristics are all aligned, and the visual assessment performed at birth serves as an accurate proxy for that person's gender.

40.     Where a person's gender identity does not match that person's sex assigned at birth, however, gender identity is the critical determinant of that person's sex.

41.     The ability to live in a manner consistent with one's gender identity is vital to the health and wellbeing of transgender people.

42.     For transgender people, an incongruence between their gender identity and sex assigned at birth can result in a feeling of clinically significant stress and discomfort known as gender dysphoria.

43.     Being transgender is not a medical condition to be treated or cured. But gender dysphoria—the clinically significant distress that some transgender people experience as a result of the incongruence between their gender identity and sex assigned at birth—is a serious medical condition.

44.     Gender dysphoria is recognized in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, Text Revision ("DSM-5-TR"), which sets forth the criteria for diagnosing gender dysphoria, and by

COMPLAINT – 7

other leading medical and mental health professional groups, including the American Medical Association ("AMA") and the American Psychological Association.

45.     Gender dysphoria can be assessed, diagnosed, and treated in accordance with evidence-based, widely accepted clinical practice guidelines, such as WPATH's Standards of Care, Version 8.

46.     The goal of medical treatment for gender dysphoria is to eliminate or alleviate the clinically significant distress by helping a transgender person live in alignment with their gender identity. This treatment is sometimes referred to as "gender transition," "transition-related care," or "gender-affirming care."

47.     The clinical practice guidelines for the treatment of gender dysphoria, such as WPATH's Standards of Care and the Endocrine Society's guidelines, are widely accepted as best practices for the treatment of adolescents and adults diagnosed with gender dysphoria and have been recognized as authoritative by leading medical organizations, including the American Academy of Pediatrics, AMA, and American Psychological Association, which agree that this care is safe, effective, and medically necessary for many adolescents suffering from gender dysphoria.

48.     The precise treatment for gender dysphoria depends upon each person's individualized needs, and the guidelines for medical treatment differ depending on whether the treatment is for an adolescent or an adult.

49.     Under the WPATH Standards of Care, medically necessary treatments may include, among other things, "[h]ormone therapy" and "[s]urgery to change primary and/or secondary sex characteristics (e.g., breasts/chest, external and/or internal genitalia, facial features, body contouring)."

50.     The individualized steps that transgender people take to live in a manner consistent with their gender, rather than the sex they were assigned at birth, are known as transitioning.

COMPLAINT – 8

51.     Transitioning is particular to the individual but typically includes social, legal, and medical transition.

52.     Social transition entails a transgender individual living in accordance with their gender identity in all aspects of life. For example, social transition can include wearing attire, following grooming practices, and using pronouns consistent with that person's gender identity. The steps a transgender person can take as part of their social transition help align their gender identity with all aspects of everyday life.

53.     Legal transition involves steps to formally align a transgender individual's legal identity with their gender identity, such as legally changing one's name and updating the name and gender marker on their driver's license, birth certificate, and other forms of identification.

54.     Medical transition, a critical part of transitioning for many transgender people, includes gender-affirming care that bring the sex-specific characteristics of a transgender person's body into alignment with their gender identity. Gender-affirming care can involve counseling to obtain a diagnosis of gender dysphoria, hormone replacement therapy, surgical care, or other medically necessary treatments for gender dysphoria.

55.     Gender-affirming surgical care might be sought by a transgender person to better align primary or secondary sex characteristics with their gender identity. Surgical care can include, but is not limited to, hysterectomies, gonadectomies, mammoplasties, mastectomies, orchiectomies, vaginoplasties, and phalloplasties. These treatments are for the purpose of treating gender dysphoria.

56.     Under the WPATH Standards of Care, transgender adolescents also may receive medically necessary chest reconstructive surgeries before the age of majority provided that the adolescent has lived in their affirmed gender for a significant period of time.

COMPLAINT – 9

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

57.     These various components associated with transition—social, legal, and medical transition—do not change an individual's sex, as that is already established by gender identity, but instead bring the individual's appearance, legal identity, and sex-related characteristics into greater alignment with the individual's gender identity and lived experience.

58.     Medical treatment recommended for and provided to transgender adolescents with gender dysphoria can substantially reduce lifelong gender dysphoria and eliminate the medical need for surgery or other medical interventions later in life.

59.     Providing gender-affirming medical care can be lifesaving treatment and positively change the short- and long-term health outcomes for transgender adolescents.

60.     The consequences of untreated, or inadequately treated, gender dysphoria are dire. Symptoms of untreated gender dysphoria include intense emotional suffering, anxiety, depression, suicidality, and other attendant mental health issues. Untreated gender dysphoria is associated with higher levels of stigmatization, discrimination, and victimization, contributing to negative self-image and the inability to function effectively in daily life.

61.     When transgender people are provided with access to appropriate and individualized gender-affirming care in connection with treatment of gender dysphoria, these symptoms can be alleviated and even prevented.

62.     The AMA, American Psychological Association, American Psychiatric Association, Endocrine Society, American College of Obstetricians and Gynecologists, American Academy of Family Physicians, and other major medical organizations have recognized that gender-affirming care is medically necessary, safe, and effective treatment for gender dysphoria—and that access to such treatment improves the health and well-being of transgender people. Each of these groups has publicly opposed

COMPLAINT – 10

exclusions of coverage of this treatment by private and public health care administrators and payors, like the exclusion at issue here.

63.     WPATH has stated that, like hormone replacement therapy and other gender-affirming treatments, the "medical procedures attendant to sex reassignment are not 'cosmetic' or 'elective' or for the mere convenience of the patient," but instead are "medically necessary for the treatment of the diagnosed condition." Nor are they experimental, because "decades of both clinical research and medical research show that they are essential to achieving well-being for the [transgender] patient."

64.     In 2008, the AMA passed Resolution 122 recognizing gender dysphoria (then known as gender identity disorder) as a "serious medical condition" which, "if left untreated, can result in clinically significant psychological distress, dysfunction, debilitating depression, and for some people without access to appropriate medical care and treatment, suicidality and death." AMERICAN MED. ASS'N, *Resolution 122: Removing Financial Barriers to Care for Transgender Patients* (June 16, 2008). The AMA also opposes exclusions of coverage for treatment of gender dysphoria because "many of these same treatments … are often covered for other medical conditions" and "the denial of these otherwise covered benefits for patients suffering from [gender dysphoria] represents discrimination based solely on a patient's gender identity." *Id.*

65.     Similarly, in 2019, the AMA published an Issue Brief reiterating that, "The AMA opposes any discrimination based on an individual's sex, sexual orientation or gender identity, opposes the denial of health insurance on the basis of sexual orientation or gender identity, and supports public and private health insurance coverage for treatment of gender dysphoria as recommended by the patient's physician." AMERICAN MED. ASS'N and GLMA, *Issue brief:  Health insurance coverage for gender-affirming care of transgender patients* (2019), at 5, https://www.ama-assn.org/system/files/2019-03/transgender-coverage-issue-brief.pdf (last visited 6/22/23).

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

66.     In the past, public and private health administrators and payors excluded coverage for medically necessary treatment of gender dysphoria on the erroneous assumption that such treatments were cosmetic or experimental. Today, the medical consensus recognizes that exclusions of treatment for gender dysphoria on those grounds have no basis in medical science.

**B.     *Premera Is Subject to the ACA's Anti-Discrimination Law***

67.     Premera offers health care plans in health care exchanges established under the ACA.

68.     At all relevant times, Premera has received and continues to receive federal financial assistance in part of its health programs or activities, including programs and/or activities engaged in by affiliates, parents, or subsidiaries of Premera.

69.     At all relevant times, Premera was and remains a "health program or activity", a part of which receives federal financial assistance. 42 U.S.C. § 18116. As a result, Premera was and continues to be a "covered entity" under the Affordable Care Act, Section 1557.

70.     Premera provided assurances to the U.S. Department of Health and Human Services that it complies with the requirements of Section 1557. *See* 45 C.F.R. § 92.4.

71.     Premera also provided written assurances to A.B. and his parents that it would comply with the requirements of Section 1557. *See, e.g.*, ***Exh. A***, p. iii.

72.     Despite these assurances, Premera has administered the exclusion of medically necessary gender-affirming surgical care for transgender youth under the age of 18. Premera continues to do so, to date.

COMPLAINT – 12

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

***C.      Premera Denies Coverage of Gender-Affirming Surgical Care for A.B.***

73.      A.B. is a boy who is transgender. That means that he was assigned the sex of female at birth, but his gender identity is male. A.B. has openly identified and lived as male since May 2021.

74.      A.B. has been diagnosed with gender dysphoria.

75.      Although Premera has covered some of A.B.'s past treatment for gender dysphoria, Premera has denied coverage for A.B.'s medically necessary gender-affirming surgical care solely because he is transgender and under the age of 18.

76.      Specifically, Premera denied all coverage for A.B.'s chest surgery and reconstruction by letter dated December 3, 2022. ***Exh. F***. The denial of coverage was based on Premera's medical policy No. 7.01.557 Gender Transition/Affirmation Surgery and Related Services. *Id*. The sole reason for the denial was that A.B. was under 18 years old. *Id*., p. 2.

77.      A.B.'s medical providers at the Seattle Children's Gender Clinic appealed Premera's denial on December 23, 2022. ***Exh. G***. They explained and presented documentation to show that A.B. met all of the requirements for coverage of gender-affirming surgical care consistent with WPATH and generally accepted medical standards. *Id*.

78.      On December 30, 2022, Premera denied the appeal, again stating that the gender-affirming surgical care sought was "not considered medically necessary for people under age 18." ***Exh. G***.

79.      The sole reason for the denial given by Premera was its determination that gender-affirming surgery can never be medically necessary for youth under the age of 18. ***Exhs. G–H***.

80.      A.B.'s parents have repeatedly sought the internal records related to Premera's denials.

COMPLAINT – 13

81.     They first requested the records on January 31, 2023. *Exh. I*. Premera never responded to the request, even though it was sent via certified mail and return receipt requested, so that Plaintiffs know it was received.

82.     Plaintiffs' counsel also sent a request for the internal records, which was similarly ignored. *Exh. J*.

83.     Finally, after Plaintiffs sent a pre-litigation demand letter to Premera, the internal records were received on or about June 9, 2023.

84.     The internal records show that Premera's assistant medical director, Dr. Robert Small, reviewed A.B.'s appeal of the denial of pre-authorization for coverage of A.B.'s chest surgery. *Exh. K*.

85.     Upon information and belief, Dr. Small is the sole psychiatrist on staff at Premera.

86.     Dr. Small apparently applies his own criteria when he reviews claims for top surgery for insureds under the age 18. *Id*.

87.     Specifically, Dr. Small's notes indicate that he will "make an exception to the minimum age of 18" for gender-affirming chest surgery when all of the other published criteria in the Medical Policy (*Exh. B*) are met and when:

- The member is binding and the breast/chest binding is causing rib injury/skeletal injury, respiratory compromise, significant skin wounds (which can be a precursor to rib/skeletal injury) or pain (which is generally a precursor to rib/skeletal injury);

- Or the member is experiencing suicidal ideation and/or intent or self-harm behaviors or severe functional impairment due to psychiatric symptoms due to breast-induced gender dysphoria;

COMPLAINT – 14

- Or the member has severe gynecomastia to the extent that binding is not feasible and the member is therefore unable to adequately reduce visible breast size or hide breasts.

*See **Exh. K**, p. AB_PRE00000034.*

88.     Dr. Small's personal (and seemingly arbitrary) criteria for an exception were never disclosed to A.B. or his parents and were not included by Premera in any of the denial letters to them.

89.     Dr. Small's personal criteria for top surgery for transgender persons under the age of 18 are not based on and are not consistent with any generally accepted clinical practice guidelines.

90.     Dr. Small's personal criteria do not appear in any of the sources Premera relied upon for crafting its Gender Transition/Affirmation Surgery and Related Services medical policy.

91.     Premera's application of Dr. Small's personal criteria, imposed only on gender-affirming care, also is illegal sex discrimination.

92.     A.B. is scheduled to have gender-affirming chest surgery and reconstruction on June 27, 2023, by Dr. Morrison at Seattle Children's Hospital.

93.     As a result of Premera's deliberate discriminatory actions, A.B. has not received pre-service authorization for medically necessary treatment for his gender dysphoria. His parents, L.B. and M.B., have been forced to make arrangements to pay out-of-pocket for A.B.'s needed surgery.

94.     A.B. and his parents, L.B. and M.B., anticipate that they will incur additional expenses related to his medically necessary treatment for gender dysphoria if Premera continues to administer and enforce its exclusion of gender-affirming surgical care for transgender youth.

COMPLAINT – 15

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

95.     Premera's administration of the exclusion denies transgender youth the benefits and health coverage available to other insureds. It is discrimination on the basis of sex, which includes discrimination on the basis of sex characteristics, gender identity, nonconformity with sex stereotypes, transgender status, and gender transition.

96.     It is also discrimination based on age in that it arbitrarily and categorically imposes an age restriction on coverage for medically indicated gender-affirming surgical care, notwithstanding that medical care should be individualized and provided consistent with clinical practice guidelines.

97.     A.B., by and through his medical providers, has appealed Premera's denial of pre-authorization for A.B.'s medically necessary treatment, but his appeal has been denied. While any further administrative appeals would be futile, no such appeal is required before a claim may be brought under Section 1557 of the Affordable Care Act.

98.     Because of Premera's administration and enforcement of the exclusion, Plaintiffs have suffered humiliation, degradation, embarrassment, emotional pain and anguish, violation of their dignity, loss of enjoyment of life, and other harms.

## V.  CLASS ALLEGATIONS

99.     Plaintiffs, on behalf of themselves and all similarly situated individuals, bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

100.    *Class Definitions.* Plaintiffs assert their claims against Premera on behalf of the following class. The proposed Class is defined as:

> All individuals who have been, are, or will be participants or beneficiaries in Premera non-grandfathered "group health plans" (whether insured or administered by Premera) who required, require, or will require treatment with gender-affirming chest surgery to treat their diagnosis of gender dysphoria, and who were denied pre-authorization or

COMPLAINT – 16

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

coverage of required surgical care because they were or are under the age of 18.

101.    *Size of Class.* The proposed class is expected to be so numerous and geographically dispersed that joinder of all members is impracticable.

102.    *Class Representative A.B.* Named Plaintiff A.B. is a member of the proposed class. A.B. is enrolled in a Premera non-grandfathered group health plan. Premera has applied its internal medical policy that excludes coverage for gender-affirming surgical care for youth under the age of 18. A.B.'s treating providers have prescribed and recommended gender-affirming mastectomy and reconstruction that is medically necessary and effective to treat A.B.'s gender dysphoria. The proposed treatment meets all of Premera's requirements for coverage, except that A.B. is under the age of 18. By the plain terms of A.B.'s Premera plan, this treatment should be covered, when medically necessary for transgender youth under 18, just as it is for cisgender youth with other conditions. Nonetheless, Premera refuses to cover the surgical care solely because A.B. is seeking the treatment for his gender dysphoria and he is under the age of 18. A.B.'s claims are typical of the claims of other members of the proposed class, and through his parents, he will fairly and adequately represent the interests of the class.

103.    *Common Questions of Law and Fact.* This action requires a determination of whether Premera's internal medical policy, which has the effect of denying coverage for gender-affirming surgical care for transgender insureds under the age of 18, violates Section 1557 of the Affordable Care Act. Adjudication of this issue will in turn determine whether Premera must reprocess all such wrongfully denied claims and be prospectively enjoined from administering such exclusions now and in the future.

104.    *Separate suits would create risk of varying conduct requirements.* The prosecution of separate actions by proposed class members against Premera would create a risk of inconsistent or varying adjudications with respect to individual class

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

members that would establish incompatible standards of conduct. Certification is therefore proper under Federal Rule of Civil Procedure 23(b)(1).

105. ***Premera has acted on grounds generally applicable to the relevant class.*** By administering and applying policies and exclusions that result in the denial of coverage of gender-affirming surgical care, Premera has acted on grounds generally applicable to the relevant class, rendering declaratory relief appropriate respecting the entirety of the class for the particular claim. Certification is therefore proper under Federal Rule of Civil Procedure 23(b)(2).

106. ***Venue.*** This action can be most efficiently prosecuted as a class action in the Western District of Washington, where Premera and A.B. reside. The case is properly assigned to the Western District of Washington in Seattle because the claim arose in Snohomish County, Washington, where Premera resides.

107. ***Class Counsel.*** A.B. and his parents have retained experienced and competent class counsel. Plaintiffs are represented by Sirianni Youtz Spoonemore Hamburger PLLC, a Seattle-based law firm with significant experience representing individuals who have been denied pension, health, or disability benefits under plans governed by both state law and ERISA, as well as in class actions. Plaintiffs are also represented by Lambda Legal Defense and Education Fund, Inc. ("Lambda Legal"), the nation's oldest and largest legal organization dedicated to protecting the rights of lesbian, gay, bisexual, transgender, and queer ("LGBTQ") people and everyone living with HIV; and Q Law Foundation of Washington ("Q Law Foundation"), which protects the rights of LGBTQ+ Washingtonians through legal services and community organizing. Lambda Legal and Q Law Foundation have extensive federal court experience litigating on behalf of LGBTQ+ people, including regarding transgender people's access to nondiscriminatory health care, and Lambda Legal has served as class counsel and putative class counsel in a number of LGBTQ+-related cases.

COMPLAINT – 18

**VI.   CLAIMS FOR RELIEF:**

**ONE – VIOLATION OF SECTION 1557 OF THE AFFORDABLE CARE ACT**
**(SEX DISCRIMINATION), 42 U.S.C. § 18116**

108.   Plaintiffs re-allege and incorporate each of the allegations in the paragraphs above as though fully set forth herein.

109.   Plaintiffs state this cause of action on behalf of themselves and members of the proposed class for purposes of seeking declaratory and injunctive relief, and they challenge the discriminatory sex-based discrimination arising out of the administration of the exclusions denying coverage for gender-affirming surgical care, such as the exclusion to transgender persons under the age of 18, both facially and as applied to Plaintiffs and the proposed class.

110.   Named Plaintiffs also state this cause of action for their individual compensatory damages, including but not limited to out-of-pocket damages, consequential damages, and nominal damages.

111.   Section 1557 of the ACA, 42 U.S.C. § 18116, provides that "an individual shall not, on the ground prohibited under … title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.) … be excluded from participation in, denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance."

112.   Premera is a covered "health program or activity", a part of which receives federal financial assistance and is therefore a "covered entity" for purposes of Section 1557.

113.   Because Premera is a covered entity under Section 1557 of the ACA, Plaintiffs and members of the proposed class have a right under Section 1557 to receive health benefits administered by Premera free from discrimination on the basis of sex, sex characteristics, gender identity, nonconformity with sex stereotypes, transgender status, or gender transition.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

114. Discrimination on the basis of sex characteristics, gender identity, nonconformity with sex stereotypes, transgender status, or gender transition is discrimination on the basis of "sex" under Section 1557.

115. A covered entity, such as Premera, cannot cover chest surgery (such as mastectomy and chest reconstruction) for cisgender youth while excluding the same surgical care for transgender youth. Premera's medical policy that excludes coverage of this procedure for transgender youth is discrimination based upon sex.

116. Premera's exclusion of gender-affirming surgical care for transgender youth violates Section 1557's prohibition against discrimination on the basis of sex in a health program or activity receiving federal financial assistance.

117. By administering the internal medical policy which excludes all coverage of gender-affirming surgical care for transgender youth, Premera has drawn a classification that discriminates on the basis of "sex." Specifically, Premera has denied A.B. and other similarly situated individuals coverage for medically necessary services based on their sex, sex characteristics, gender identity, nonconformity with sex stereotypes, transgender status, or gender transition. Other enrollees whose gender identity conforms with their sex assigned at birth are able to receive these services when medically necessary, and even when they are under the age of 18.

118. By implementing the hidden exclusion in its medical policy, Premera has intentionally discriminated and continues to discriminate on the basis of sex against A.B., his parents, and similarly situated individuals in violation of Section 1557.

119. Premera has discriminated against Plaintiffs and the members of the proposed class on the basis of sex in violation of Section 1557 and have thereby denied Plaintiffs and the members of the proposed class the full and equal participation in, benefits of, and right to be free from discrimination in a health program or activity.

COMPLAINT – 20

120.    Plaintiffs and the members of the proposed class have been and continue to be injured by Premera's administration, application, and enforcement of the exclusion of gender-affirming surgical care for transgender persons under the age of 18 in its medical policy, and they are entitled to reprocessing of all claims wrongfully denied and all medical expenses never submitted for consideration to Premera as a result of any such exclusions.

121.    Without reprocessing, declaratory, and prospective injunctive relief from Premera's ongoing, discriminatory medical policy, Plaintiffs and proposed class members have suffered and will continue to suffer irreparable harm.

**TWO – VIOLATION OF SECTION 1557 OF THE AFFORDABLE CARE ACT
(AGE DISCRIMINATION), 42 U.S.C. § 18116**

122.    Plaintiffs re-allege and incorporate each of the allegations in the paragraphs above as though fully set forth herein.

123.    Plaintiffs state this cause of action on behalf of themselves and members of the proposed class for purposes of seeking declaratory and injunctive relief, and they challenge the discriminatory age-based discrimination arising out of the administration of the exclusions denying coverage for gender-affirming surgical care, such as the exclusion, to transgender persons under the age of 18, both facially and as applied to Plaintiffs and the proposed class.

124.    Named Plaintiffs also state this cause of action for their individual compensatory damages, including but not limited to out-of-pocket damages, consequential damages, and nominal damages.

125.    Section 1557 of the ACA, 42 U.S.C. § 18116, provides that "an individual shall not, on the ground prohibited under … the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.) … be excluded from participation in, denied the benefits of, or be

COMPLAINT – 21

subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance."

126.    Premera is a covered "health program or activity", a part of which receives federal financial assistance and is therefore a "covered entity" for purposes of Section 1557.

127.    Because Premera is a covered entity under Section 1557 of the ACA, Plaintiffs and members of the proposed class have a right under Section 1557 to receive health benefits administered by Premera free from discrimination on the basis of age.

128.    A covered entity, such as Premera, also cannot impose arbitrary and categorical age limits for coverage of gender-affirming medical care, particularly when the treatment is clinically effective for the age group.

129.    The design and implementation of categorical age limits for coverage, particularly when the treatment is clinically effective for the age group, constitutes age discrimination.

130.    By administering the internal medical policy which excludes all coverage of gender-affirming surgical care for transgender youth, Premera has drawn a classification that discriminates on the basis of "sex." Specifically, Premera has denied A.B. and other similarly situated individuals coverage for medically necessary services based on their sex, sex characteristics, gender identity, nonconformity with sex stereotypes, transgender status, or gender transition. Other enrollees whose gender identity conforms with their sex assigned at birth are able to receive these services when medically necessary, and even when they are under the age of 18.

131.    By implementing the hidden exclusion in its medical policy, Premera has intentionally discriminated and continues to discriminate on the basis of age against A.B., his parents, and similarly situated individuals in violation of Section 1557.

COMPLAINT – 22

132.     Premera has discriminated against Plaintiffs and the members of the proposed class on the basis of age in violation of Section 1557 and have thereby denied Plaintiffs and the members of the proposed class the full and equal participation in, benefits of, and right to be free from discrimination in a health program or activity.

133.     Plaintiffs and the members of the proposed class have been and continue to be injured by Premera's administration, application, and enforcement of the exclusion of gender-affirming surgical care for transgender persons under the age of 18 in its medical policy, and they are entitled to reprocessing of all claims wrongfully denied and all medical expenses never submitted for consideration to Premera as a result of any such exclusions.

134.     Without reprocessing, declaratory, and prospective injunctive relief from Premera's ongoing, discriminatory medical policy, Plaintiffs and proposed class members have suffered and will continue to suffer irreparable harm.

## VII.  DEMAND FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

1.     Enter judgment on behalf of Plaintiffs and the members of the proposed class due to Premera's discrimination on the basis of sex and age in violation of the Affordable Care Act's Section 1557;

2.     Declare that Premera violated the rights of Plaintiffs and the members of the proposed class under Section 1557 of the ACA when it designed, adopted, administered, and/or enforced the exclusion of all coverage for gender-affirming chest surgery for transgender persons under the age of 18 in the Premera medical policy;

3.     Enjoin Premera, its agents, employees, successors, and all others acting in concert with them from designing, adopting, administering, or enforcing the medical policy that results in the exclusion of all coverage for gender-affirming chest surgery for transgender persons under the age of 18 and other similar medical policies that Premera

COMPLAINT – 23

administers and enforces in violation of the Affordable Care Act, during the class period, now, and in the future;

4.      Require Premera, its agents, employees, successors, and all others acting in concert with them to reprocess and, when medically necessary and meeting the other terms and conditions under the relevant plans, provide coverage (payment) for all denied pre-authorizations and denied claims for coverage during the class period that were based solely upon the age of the enrollee when seeking gender-affirming chest surgery;

5.      Enter judgment in favor of the named Plaintiffs for damages in an amount to be proven at trial that would fully compensate Plaintiffs for their financial harm and other damages due to Premera's conduct in violation of Section 1557 of the Affordable Care Act, including nominal damages;

6.      Award reasonable attorney fees, costs, and expenses under 42 U.S.C. § 1988 and all other applicable statutes; and

7.      Award such other and further relief as is just and proper.

DATED:  June 27, 2023.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC

   /s/ Eleanor Hamburger
Eleanor Hamburger (WSBA #26478)
Email:  ehamburger@sylaw.com

   /s/ Daniel S. Gross
Daniel S. Gross (WSBA #23992)
Email:  dgross@sylaw.com
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303; Fax (206) 223-0246

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303    FAX (206) 223-0246

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.

  /s/ Omar Gonzalez-Pagan
Omar Gonzalez-Pagan
*(Pro Hac Vice Application forthcoming)*
Email: ogonzalez-pagan@lambdalegal.org
120 Wall Street, 19th Floor
New York, NY 10005
Tel. (646) 307-7406; Fax (212) 658-9721


Q LAW FOUNDATION OF WASHINGTON

  /s/ J. Denise Diskin
J. Denise Diskin (WSBA #41425)
Email: denise@qlawfoundation.org

  /s/ Dallas Martinez
Dallas Martinez (WSBA #52798)
Email: dallas@qlawfoundation.org
400 East Pine Street, Suite 225
Seattle, WA 98122
Tel. (206) 483-2725

*Attorneys for Plaintiffs*

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246