The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

L.B. and M.B., on behalf of their minor child
A.B., and on behalf of similarly situated
others; L.B.; M.B., C.M. and A.H., on behalf of
their minor child J.M., and on behalf of
similarly situated others; C.M.; and A.H.,

              Plaintiffs,

     v.

PREMERA BLUE CROSS,

              Defendant.

NO. 2:23-cv-00953-TSZ

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT ON
PREMERA'S LIABILITY FOR
DISCRIMINATION BASED ON SEX

**Note on Motion Calendar:**
**August 19, 2024**

# <u>REDACTED COPY</u>

# CONFIDENTIAL
**Filed Under Seal Pursuant to**
**Stipulated Protective Order, Dkt. No. 21**

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

**TABLE OF CONTENTS**

I. INTRODUCTION / RELIEF REQUESTED .................................................................1

II. UNDISPUTED MATERIAL FACTS ........................................................................3

    A. Premera Is a Covered Health Entity Under Section 1557 That Receives Federal Financial Assistance..........................................................3

    B. Premera Has a Standard Practice for Establishing Medical Policies...........................................................................................................3

    C. Premera Did Not Follow Its Standard Practice When It Established the GTAS Policy............................................................................4

    D. The GTAS Policy Contains a Unique Age-Exclusion. .......................................6

    E. Premera Does Not Apply the Age-Exclusion to Any Other Surgical Policy It Drafts. ..................................................................................9

    F. Premera Concedes That Gender-Affirming Chest Surgery Can Be Medically Necessary for Minors When It Allows Exceptions to the GTAS Policy. ............................................................10

III. ARGUMENT ....................................................................................................13

    A. Section 1557's Legal Standard...............................................................................13

    B. Premera Is a Covered Health Entity That Must Comply With the ACA's Anti-Discrimination Law in All Activities. .........................................................................................................14

    C. Premera's Age Exclusion Treats Transgender Minors Differently Based on Sex.........................................................................................15

    D. Premera Does Not Impose an Age Exclusion on the Same or Similar Chest Surgery for Other Conditions, Nor for Nearly All Other Surgeries for Minors............................................................18

        1. Over-Discrimination Is Illegal. ...................................................................19

        2. Covering gender-affirming chest surgery for some minors using hidden, arbitrary criteria does not neutralize Premera's discrimination........................................................20

        3. Premera's Age-Exclusion Is Facial Discrimination, such that any proffered "justifications" are irrelevant.......................................................................................................21

        4. In Any Event, Premera's Justifications Are Pretextual.............................................................................................................23

IV. CONCLUSION ..................................................................................................25

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - ii
[Case No. 2:23-cv-00953-TSZ]

## TABLE OF AUTHORITIES

### CASES

*Bostock v. Clayton Cnty.*,
590 U.S. 644 (2020) .................................................................................2, 17, 18

*Boyden v. Conlin*,
341 F. Supp. 3d 979 (W.D. Wis. 2018).......................................................17, 18

*Brandt v. Rutledge*,
551 F. Supp. 3d 882 (E.D. Ark. 2021), *aff'd*, 47 F.4th 661 (8th Cir.
2022) ....................................................................................................................9

*Bray v. Alexandria Women's Health Clinic*,
506 U.S. 263 (1993) ..........................................................................................24

*C.P. v. Blue Cross Blue Shield of Ill.*,
536 F. Supp. 3d 791 (W.D. Wash. 2021) ..........................................................14

*C.P. v. Blue Cross Blue Shield*,
2022 U.S. Dist. LEXIS 227832 (W.D. Wash. Dec. 19, 2022) ...........................16

*Castaneda v. Partida*,
430 U.S. 482 (1977) ..........................................................................................24

*Children's All. v. City of Bellevue*,
950 F. Supp. 1491 (W.D. Wash. 1997)..............................................................22

*Chuang v. Univ. of Cal. Davis*,
225 F.3d 1115 (9th Cir. 2000)...........................................................................28

*Cmty. House, Inc. v. City of Boise*,
490 F.3d 1041 (9th Cir. 2007)...........................................................................24

*Davis v. Guam*,
932 F.3d 822 (9th Cir. 2019).............................................................................24

*Dekker v. Weida*,
679 F. Supp. 3d 1271 (N.D. Fla. 2023)........................................................17, 19

*Doe v. CVS Pharm., Inc.*,
2022 U.S. Dist. LEXIS 139684 (N.D. Cal. Aug. 5, 2022)..................................16

*Doe v. Snyder*,
28 F.4th 103 (9th Cir. 2022) .........................................................................15, 18

*E.S. v. Blueshield*,
No. C17-1609-RAJ, 2024 U.S. Dist. LEXIS 48611 (W.D. Wash.
Mar. 19, 2024) ...................................................................................................24

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

*Edmo v. Corizon, Inc.*,
  935 F.3d 757 (9th Cir. 2019)................................................................................................9

*Erie Cnty. Retirees Ass'n v. Cnty. of Erie, Pa.*,
  220 F.3d 193 (3d Cir. 2000)..............................................................................................25

*Fabian v. Hosp. of Cent. Conn.*,
  172 F. Supp. 3d 509 (D. Conn. 2016)...............................................................................18

*Fain v. Crouch*,
  2022 U.S. Dist. LEXIS 137084 (S.D.W. Va. Aug. 2, 2022) ............................................14

*Fain v. Crouch*,
  545 F. Supp. 3d 338 (S.D.W. Va. 2021) ...........................................................................16

*Fain v. Crouch*,
  618 F. Supp. 3d 313 (S.D.W.V. 2022), , *aff'd sub nom Kadel*, 100
  F.4th 122 .............................................................................................................................20

*Flack v. Wisconsin Dep't of Health Servs*,
  328 F. Supp. 3d 931 (W.D. Wis. July 25, 2018) ..............................................................19

*Flack v. Wisconsin Dep't of Health* Servs.,
  395 F. Supp. 3d 1001 (W.D. Wis. 2019)..........................................................................17

*Fletcher v. Alaska*,
  443 F. Supp. 3d 1024 (D. Alaska 2020) ...........................................................................17

*Gerdom v. Cont'l Airlines*,
  692 F.2d 602 (9th Cir. 1982)............................................................................................25

*Grabowski v. Ariz. Bd. of Regents*,
  69 F.4th 1110 (9th Cir. 2023) ....................................................................................15, 18

*Hammons v. Univ. of Md. Med. Sys. Corp.*,
  649 F. Supp. 3d 104 (D. Md. 2023) .................................................................................17

*Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*,
  743 F.3d 569 (7th Cir. 2014)............................................................................................23

*Int'l Union v. Johnson Controls*,
  499 U.S. 187 (1991) ...................................................................................................21, 25

*Kadel v. Folwell*,
  100 F.4th 122 (4th Cir. 2024) ....................................................2, 9, 17, 19, 20, 21, 24

*Kadel v. Folwell*,
  446 F. Supp. 3d 1, 12–13 (M.D.N.C. 2020), *aff'd sub nom
  Kadel v. N.C. State Health Plan Teachers & State Emp.*,
  12 F.4th 422 (4th Cir. 2021), as amended (Dec. 2, 2021), *cert.
  denied*, 142 S. Ct. 861 (2022)..........................................................................................15

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - iv
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

*Lange v. Houston Cnty.*,
   101 F.4th 793 (11th Cir. 2024) ...............................................................................17, 19

*Latta v. Otter*,
   771 F.3d 456 (9th Cir. 2014)......................................................................................2, 25

*Lovell v. Chandler*,
   303 F.3d 1039 (9th Cir. 2002)..................................................................................21, 23

*M.H. v. Jeppesen*,
   677 F. Supp. 3d 1175 (D. Idaho 2023) ...............................................................................9

*McMahon v. World Vision, Inc.*,
   2023 U.S. Dist. LEXIS 127071 (W.D. Wash. July 24, 2023)...........................................26

*Munoz v. Giumarra Vineyards Corp.*,
   2015 U.S. Dist. LEXIS 122450 (E.D. Cal. Sep. 11, 2015) ..............................................13

*Pac. Shores Props., Ltd. Liab. Co. v. City of Newport Beach*,
   730 F.3d 1142 (9th Cir. 2013)..................................................................................22, 24

*Rice v. Cayetano*,
   528 U.S. 495 (2000) ...............................................................................................23, 24

*Schmitt v. Kaiser Found. Health Plan of Wash.*,
   965 F.3d 945 (9th Cir. 2020)....................................................................................14, 22

*Schroer v. Billington*,
   577 F. Supp. 2d 293 (D.D.C. 2008) ...............................................................................18

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard
   Coll.*,
   600 U.S. 181 (2023) ...............................................................................................25, 26

*T.S. v. Heart of Cardon, LLC*,
   43 F.4th 737 (7th Cir. 2022) .....................................................................................15, 16

*Tank v. State Farm Fire & Cas. Co.*,
   105 Wn.2d 381, 715 P.2d 1133 (1986) ...............................................................................4

*Toomey v. Arizona*,
   2019 U.S. Dist. LEXIS 219781 (D. Ariz. Dec. 23, 2019) ...............................................20

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
   429 U.S. 252 (1977) .........................................................................................................26

*Williams v. Kincaid*,
   45 F.4th 759 (4th Cir. 2022) ...........................................................................................19

*Yeager v. Bowlin,*
   693 F.3d 1076 (9th Cir. 2012).........................................................................................13

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - v
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

**STATUTES**

42 U.S.C. § 18116 ............................................................................................................... 1, 16

42 U.S.C. § 18116(a) ...................................................................................................14, 15, 26

RCW 48.30.010 ..........................................................................................................................4

RCW 48.43.0128 .......................................................................................................................8

**REGULATIONS**

45 C.F.R. § 92.207 ...................................................................................................................16

45 C.F.R. § 92.207(c) ..............................................................................................................26

**OTHER AUTHORITIES**

87 Fed. Reg. 47,865 .................................................................................................................26

87 Fed. Reg. 47,875 ...................................................................................................................1

89 Fed. Reg. 37,597 .................................................................................................................27

89 Fed. Reg. 37,602 ...................................................................................................................1

89 Fed. Reg. 37,627 .................................................................................................................16

Dai, D. et al., *Prevalence of Gender-Affirming Surgical Procedures Among Minors and Adults in the US,* JAMA Network Open, June 27, 2024 .................................................................................................................2

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - vi
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

## I.  INTRODUCTION / RELIEF REQUESTED

Defendant Premera Blue Cross ("Premera") may not discriminate on the basis of sex under the Affordable Care Act's anti-discrimination law, known as "Section 1557." *See* 42 U.S.C. § 18116.  Indeed, the literal terms of the Premera insurance contract promise that Premera will comply with Section 1557 and not engage in sex discrimination. Declaration of Eleanor Hamburger, *Exh. A,* pp. 1, 78.[1]  This promise extends to Premera's coverage of gender-affirming care, including Premera's promise to cover medically-necessary gender-affirming care "for all ages."  *Id.,* p. 20.

Nonetheless, when it comes to Premera's ***administration*** of coverage for gender-affirming medical care, implemented through its internal Medical Policy 7.01.557 Gender Transition/Affirmation Surgery and Related Services (hereinafter "GTAS Policy"), Premera discriminates based on sex by excluding all coverage of gender-affirming chest surgery for enrollees under the age of 18 ("Age-Exclusion"), when, at the same time, covering the same or similar surgery for minors with other conditions.[2]  *See Exh. B,* p. 3 of 41.  Under the plain language of Premera's GTAS Policy, minors are categorically excluded from gender-affirming chest surgery and ***no exceptions are allowed***.  *See id.*  To Plaintiffs and the Class, all of whom were denied coverage of gender-affirming chest surgery solely because they were under 18, Premera's GTAS Policy represents an absolute ban on gender-affirming chest surgery for transgender minors.

---

[1] All Exhibits cited in this Motion are to the Declaration of Eleanor Hamburger, unless otherwise noted.

[2] Premera also discriminates based on age when it recognizes that gender-affirming chest surgery is generally medically necessary but categorically excludes coverage based on chronological age.  *See e.g.,* 87 Fed. Reg. 47,875, n. 483; 89 Fed. Reg. 37,602, n. 182 (age exclusions imposed on clinically-effective treatment are presumptively discriminatory). Plaintiffs have alleged a claim for age discrimination under the ACA, but are not moving on it at this time.

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 1
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

At the same time, Premera covers mastectomies for cancer, excess breast tissue and other conditions for minors without an Age-Exclusion.[3] *See Exhs. D–E.* Put simply, Premera treats transgender minors differently than it does non-transgender minors who seek the same or similar surgery. This is the very definition of illegal sex discrimination. *See Bostock v. Clayton Cnty.*, 590 U.S. 644, 658 (2020). It is also facial discrimination, for which Premera cannot avoid liability by proffering a rationale for the discrimination. *See Latta v. Otter*, 771 F.3d 456 (9th Cir. 2014) ("[F]acial discrimination … does not depend on why a policy discriminates, but rather on the explicit terms of the discrimination").

The fix to Premera's illegal discrimination is simple: Premera can modify its GTAS Policy to allow coverage of gender-affirming chest surgery for minors when medically necessary based on a case-by-case review, just like its peer Washington insurers do. *See Exh. F.* Premera can still conduct an individualized medical necessity review to ensure all components of the GTAS Policy are met, but without the illegal Age-Exclusion. It can even add criteria to address any concerns it has about minors receiving this surgery, so long as it applies the same criteria to all minors with other conditions. What it may not do is apply special restrictions on coverage for transgender minors that are not applied to the same procedures delivered to minors with other conditions. That is "textbook discrimination." *Kadel v. Folwell*, 100 F.4th 122, 153 (4th Cir. 2024); *see also Exh. G* (California Department of Insurance: It is illegal discrimination for health insurers to deny coverage of gender-affirming chest surgery based solely on the enrollee's age).

---

[3] The prevalence of chest surgery for cisgender minors with gynecomastia and other conditions far outstrips that of chest surgery provided to transgender minors. *See e.g., Exh. BB,* Dai, D. et al., *Prevalence of Gender-Affirming Surgical Procedures Among Minors and Adults in the US,* JAMA Network Open, June 27, 2024 (In a study of chest surgeries performed to reduce breast size in minors in 2019, **97% were performed on behalf of cisgender males with gynecomastia, and only 3% were performed on transgender males for gender dysphoria**).

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 2
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

## II.   UNDISPUTED MATERIAL FACTS[4]

**A.    Premera Is a Covered Health Entity Under Section 1557 That Receives Federal Financial Assistance.**

Premera receives federal financial assistance in its individual insurance and Medicare Advantage programs.  *Exh. H,* p. 15:2–16.   Premera also receives federal funding for its participation in the Federal Employee Program.  *Id.,* 16:4–21.  As a condition of receiving such federal funds, Premera signed a document assuring the federal government that it complies with federal anti-discrimination law including Section 1557.  *Id.,* pp. 20:4–21:23; *Exh. I.*  And Premera's lines of business are all health-related—consisting of its insured programs, its TPA programs and its Medicare programs.  *Exh. H*, p. 24:21–24.

**B.    Premera Has a Standard Practice for Establishing Medical Policies.**

Premera establishes medical policies in order to define the medical necessity criteria for covered services.  *Exh. C,* p. 36:1–9; *Exh. Y,* p. 52:15–23 (Premera directs employees to follow its medical policies when performing medical reviews of requested care, as a standard practice).  Medical policies help ensure that coverage decisions occur "in a consistent fashion as much as possible."  *Exh. Z,* p. 44:15–23.  Medical policies also provide transparency to Premera enrollees "so members and providers know [Premera's] position on whatever drug or procedure is in the medical policy."  *Id.* pp. 44:24–45:6. Such transparency is not only a regulatory requirement, it is also important for enrollees to be able to "look at the policy [so] they can know what's likely to happen based on their situation."  *Id.,* p. 45:14–23.  Thus, the purpose of a medical policy is "to have a consistent standard to review requests for authorization of care and to have that documented and available for all to read."  *Exh. Y,* p. 31:6–9.  Transparency

---

[4] The facts described in Plaintiffs' Motion for Class Certification are not repeated, but rather incorporated herein by reference.

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 3
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

is part of the duty of fairness that all Washington health insurers owe to their customers. *See id.*; RCW 48.30.010; *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 387, 715 P.2d 1133, 1137 (1986).

Usually, Premera relies upon existing policies developed by the Blue Cross Blue Shield Association or other entities. *Exh. Z,* pp. 48:18–49:5. It is rare that it develops its own medical policy, which generally does not happen more than once a year. *Id.* pp. 48:18–49:14. When Premera decides to develop its own medical policy, as it has done for gender-affirming care, its standard practice is to ask a Premera employee who has expertise in the subject matter to: (1) review the medical literature; (2) review any specialty society guidelines; (3) consider what other regional and national insurance companies are doing; (4) review any reversals of coverage decisions by external reviewers; and (5) review any related feedback about existing policies from practitioners. *Id.,* pp. 27:11–28:10; 29:11–23; 47:1–12; 47:20–48:17. Once the "homegrown" medical policy is written into the standard format as all other policies and reviewed, it goes before the Premera Medical Policy Committee for review and approval. *Id.,* p. 50:4–12.

## C.    Premera Did Not Follow Its Standard Practice When It Established the GTAS Policy.

Premera has three policies that relate to gender-affirming care: the GTAS Policy at issue here, a policy of use of gonadotropin-releasing hormones which includes a section on treatment of gender dysphoria, and a policy on speech therapy which also has a section on treatment of gender dysphoria. *Exh. C.,* pp. 28:16–29:3. Only the GTAS Policy is at issue here.

Premera first established the "homegrown" GTAS Policy on October 13, 2014. *See Exh. B,* p. 39 of 44; *Exh. Z*, pp. 23:18–24:22. The initial policy was drafted by Dr. Robert Small and Dr. Chelle Moat. *Exh. AA,* pp. 12:21–13:1; *Exh. C,* p. 41:4–7. Dr. Small's contribution to the initial policy was to draft the mental health criteria, while Dr. Moat

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 4
[Case No. 2:23-cv-00953-TSZ]

drafted the remaining criteria.  *Id.; Exh. AA,* p. 19:5–20 (Dr. Moat wrote most of the policy).  Dr. Small has drafted all of the amendments and changes to the policy.  *Exh. C,* p. 44:15–18.

Dr. Moat, an internist by training, has no training related to gender-affirming care or experience treating patients diagnosed with gender dysphoria.  *Exh. AA,* pp. 16:7–9; 16:23–17:9.

Dr. Small, a psychiatrist, has not engaged in any clinical practice since 2000.  *Exh. C,* pp. 13:21–14:5.  Dr. Small's only experience related to the provision of gender-affirming care was his mental health treatment of people diagnosed with a now-outdated diagnosis of "gender-identity disorder" from before 2000.  *Id.,* pp. 14:8–15.  Even then, Dr. Small did not specialize in treating "gender-identity disorder."  *Id.,* p. 16:3–6.  The only treatment he provided was therapy and prescription of psychiatric medications; he never prescribed hormone therapy or other gender-affirming treatment described in the GTAS Policy.  *See id.,* pp. 142:19–143:3.  Indeed, Premera must outsource appeals involving gender-affirming surgery to an external vendor because no one on staff—not even Dr. Small—has the "same specialty" experience required to conduct appeal reviews.  *See Exh. C,* pp. 19:15–20:11; 24:22–25:5; *Exh. Z,* p. 48:15–17.

Neither Dr. Small nor Dr. Moat consulted with a surgeon who delivers gender-affirming surgery when they drafted and amended the GTAS Policy.  *Exh. C,* p. 44:22–25; *Exh. AA,* p. 48:4–7.  Indeed, neither Dr. Small nor Dr. Moat consulted with any health provider with direct experience delivering the various treatments that are the subject of the GTAS Policy when drafting or revising it.  *See id.; Exh. NN,* Answer to Interrogatory No. 1, p. 4 (listing Dr. Small, Dr. Moat, Dr. Dobias, Dr. Kaneshiro and Dr. Reynoso as having any involvement in drafting or amending of the GTAS Policy); *Exh. GG,* p. 16:13–19 (Dr. Dobias has not treated adolescents or adults for gender dysphoria or for gender-affirming care); *Exh. Z,* pp. 18:2–20:4 (Dr. Kaneshiro has not provided gender-affirming

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 5
[Case No. 2:23-cv-00953-TSZ]

hormone treatment or referred patients for gender-affirming surgery); *Exh. Y,* pp. 12:24–13:12 (Dr. Reynoso has not prescribed any gender-affirming care to patients).

The GTAS Policy is the only surgical policy at Premera that is drafted and reviewed by a psychiatrist. *Exh. Y,* pp. 59:12–24; 63:1–8. It is the only surgical policy that Dr. Small, a psychiatrist, has ever drafted. *Exh. C,* p. 44:19–21. Other similar surgical policies used by Premera have **no input** from a Premera psychiatrist. *See Exhs D–E, Exh. Z,* pp. 67:9–70:19.

And, while Dr. Small testified that he has reviewed the clinical coverage policies of other insurers when drafting and amending the GTAS Policy, such as Regence, Kaiser, Aetna, and United, Dr. Small ignored that the Age-Exclusion in the GTAS Policy is an "outlier" in Washington state. *Exh. C,* p. 45:1–9; *Exh. F.* Washington insurers including Regence, Aetna, Kaiser and United, as well as Ambetter, Anthem, Cigna, and Moda, all permit coverage of chest surgery when medically necessary for people under the age of 18. *See Exh. F.* As Premera's Dr. Kaneshiro testified, if Premera is an outlier in its clinical criteria, that fact would merit further review of the existing policy. *Exh. Z,* p. 28:1–10 ("[W]e try not to be an outlier").

**D.      The GTAS Policy Contains a Unique Age-Exclusion.**

The GTAS Policy excluded coverage for people under the age of 18 when it was first adopted in 2014. *Exh. C,* p. 57:13–16. Initially, the GTAS Policy had no written justification for the Age-Exclusion. A justification was added in 2016 in response to concerns that without an articulable clinical reason, the policy would constitute illegal *age* discrimination in violation of Section 1557. *Exh. C,* pp. 57:22–58:18; *Exh. CC.* As part of Premera's Section 1557 compliance review, Premera asked its employees to ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Exh. CC; Exh. Z,* pp. 64:23–65:13; 66:7–15 (a clinical rationale is required for any age limitation to avoid claims of age discrimination). Dr. Small complied with the directive

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 6
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

to add "medical justification" for the Age-Exclusion, adding language to the GTAS Policy related to minors' purported incapacity to consent to gender-affirming surgical care. *See Exh. B,* pp. 34–35 of 41; *Exh. C,* pp. 58:25–59:24 (justifying the Age-Exclusion because the "maturing brain did not appear to be comparable to the adult brain until approximately age 25"); *Exh. AA,* p. 26:4–25. At the same time, there is no Age-Exclusion on the same procedure when offered to minors who require it due to other medical conditions.[5] *See e.g., Exhs. D–E, DD.* Indeed, Dr. Small testified that he has not added a medical justification related to "brain maturity" in the other medical policies that he has developed because "that has not been an issue." *Exh. C,* p. 99:14–22. When asked why Dr. Small considered minor "brain maturity" a concern meriting an Age-Exclusion for the GTAS Policy but not for other surgeries for minors, Dr. Small testified that "[i]t is an issue here because gender-affirming surgery is very different from most other medical treatments." *Id.,* pp. 99:23–100:1. Dr. Small takes the position that chest surgery to treat gender dysphoria in a minor has "profound *potential* psychological implications" that somehow are not present when the exact same surgery is provided to treat non-transgender minors. *See id.,* pp. 101:5–102:20.[6] Nonetheless, Dr. Small did not reference the "potential psychological effect" of gender-affirming chest surgery as a justification

---

[5] ***Since this lawsuit was filed***, Premera adopted a single medical policy that limits prophylactic mastectomy to enrollees over the age of 18. Hamburger Decl., *Exh. Z,* pp. 58:17–59:9; *Exh. DD* (Premera's "homegrown" policy contained no Age-Exclusion); *Exh. KK.* That is the only other surgical procedure, apart from the GTAS Policy, that includes an age limitation. *Exh. Z,* p. 59:10–13.

[6] Dr. Small testified that "regret" was one concern for applying the Age-Exclusion, while rejecting the conclusions of evidence-based studies that show that the rate of regret for gender-affirming surgery is less than 1%, claiming that the studies were "flawed." *Exh. C,* pp. 101:20–102:20; *but see Exh. Z,* p. 74:12–18 (On a population-wide basis, all surgical procedures involve some amount of "regret"); 75:11–14 (Premera's Rule 30(b)(6) witness was unaware of any complaints about "regret" from enrollees for whom Premera had covered their gender-affirming chest surgery).

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 7
[Case No. 2:23-cv-00953-TSZ]

for the Age-Exclusion in the GTAS Policy, only the "brain immaturity" of minors is referenced.[7] *Id., Exh. B*, pp. 34–35 of 41; *Exh. C*, pp. 99:23–101:4.

Premera's Dr. Kaneshiro offered another unwritten, post-litigation justification for why Premera covers chest surgery for transgender minors differently than minors with other conditions. Dr. Kaneshiro claimed that a "federal mandate" provided for reconstructive breast surgery, such that imposing an age limitation on mastectomies generally would be illegal. *Exh. Z*, pp. 76:12–77:8. Dr. Kaneshiro, however, ignored that Washington law mandates coverage of medically necessary gender-affirming surgical care—without any age limitation—in addition to Section 1557. *See* RCW 48.43.0128. Coming up with another *post hoc* justification, Dr. Kaneshiro testified that non-transgender patients who seek mastectomies and chest reconstruction "are having, typically, pain or a complication like back pain because their breasts are too large for their body. So we don't feel that that warrants an age limitation." *Exh. Z*, pp. 76:12–77:8. Premera reached this *post-hoc* conclusion without relying upon any evidence-based studies. *Id.* ("[W]e didn't think that physical impairment was age-related"). Nor did concerns about minor "brain maturity" and ability to consent to treatment affect the decision to allow chest surgery for other conditions for minors. *See id.* Finally, Premera's justification based upon the experience of cisgender minors' "physical pain" ignores and discounts the well-documented physical and emotional pain caused by prolonging a minor's gender dysphoria. *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 771 (9th Cir. 2019) ("Failure to follow an appropriate treatment plan can expose transgender individuals to a serious risk of psychological and physical harm"); *Kadel*, 100 F.4th at 136; *M.H. v.*

---

[7] Post-litigation, in October 2023–March 2024, Premera attempted to "beef up" the medical justification for the Age-Exclusion by adding verbiage and citations to support its Age-Exclusion, even though many of the documents referenced are not typically relied upon by Premera for clinical coverage determinations. *See Exh. C*, pp. 75:16–76:13; 76:25–82:2; *Exh. LL*, pp. 40–41.

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 8
[Case No. 2:23-cv-00953-TSZ]

*Jeppesen*, 677 F. Supp. 3d 1175, 1181 (D. Idaho 2023) ("Untreated gender dysphoria often intensifies with time; the longer a transgender individual goes without or is denied adequate treatment for gender dysphoria, the greater the risk of severe harm to the individual's health."); *Brandt v. Rutledge*, 551 F. Supp. 3d 882, 892 (E.D. Ark. 2021) ("Patient Plaintiffs will have to live with physical characteristics that do not conform to their gender identity, putting them at high risk of gender dysphoria and lifelong physical and emotional pain."), *aff'd*, 47 F.4th 661 (8th Cir. 2022).

**E.    Premera Does Not Apply the Age-Exclusion to Any Other Surgical Policy It Drafts.**

As noted above, when this lawsuit was filed, the Age-Exclusion was not applied to any other surgical policy. *Exhs. D–E,[8] DD*; *Exh. Z*, pp. 58:17–59:13. ***Since then,*** Premera adopted a single medical policy (applicable just to its individual health plans) that limits prophylactic mastectomy to enrollees over the age of 18. Hamburger Decl., *Exh. Z,* pp. 24:23–25:14, 58:17–59:9; *Exh. DD* (Premera's "homegrown" prophylactic mastectomy policy contained no Age-Exclusion); *Exh. KK.* That is the only other surgical procedure, apart from the GTAS Policy, that includes an age limitation, and it applies solely to Premera's individual health plan line of business. *Exh. Z,* pp. 58:17–59:13. The Interqual policy, however, contains no medical justification to support the age limitation referenced in the policy. *See Exh. KK.* Indeed, the newly adopted policy does not comply with Premera's own directive that such explanations are required to comply with Section 1557. *See Exh. CC.*

---

[8] No age limitation is imposed by Premera on chest surgery for cisgender minors for the treatment of gynecomastia, which is also considered to be "gender-affirming." *See Exh. BB*.

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 9
[Case No. 2:23-cv-00953-TSZ]

**F.      Premera Concedes That Gender-Affirming Chest Surgery Can Be Medically Necessary for Minors When It Allows Exceptions to the GTAS Policy.**

When Premera's assistant/associate medical directors review and determine coverage of a request for gender-affirming surgery, they make a "medical necessity" determination. *Exh. Y,* p. 19:1–20; *Exh. Z,* p. 13:4–9. This includes when a medical director exercises their "clinical judgment" to make an exception to the GTAS Policy. *Exh. Y,* pp. 53:18–54:3. In other words, when Premera adjudicates a claim and decides to cover (pay for) it, Premera has made a "medical necessity determination." *Exh.* A, p. 16; *Exh. J,* p. 16 ("Covered service means medically necessary services") (*sic)*; *Exh. Z,* p. 46:11–14. *See also, Exh. C,* p. 36:1–9 (Premera does not cover services that are not medically necessary). [9]

Premera permits its assistant/associate medical directors to make exceptions to the existing medical policy, based on their "clinical judgment." *Exh. Z,* p. 52:9–16 (for every policy "there's going to be potential exceptions"); *Exh. Y,* p. 30:11–15 (clinical exceptions are permitted based on "unique clinical circumstances"). The ability to approve coverage, outside of the Premera medical policies, is an unwritten practice. It is not referenced in the Premera procedure for how medical directors conduct these reviews. *See Exh. Y,* pp. 39:3–40:1; *Exh. EE.* The ability to obtain exceptions is not noted in any medical policy. *See Exh. Y*, pp. 7:17–22; 39:3–40:1 (Premera's Medical Director, Dr. Reynoso, was unaware of any written statement that permits clinicians at Premera to make exceptions to medical policies). Premera never informs its members that exceptions to the medical policies are possible. *Id.,* pp. 41:20–43:9; 44:23–45:9 (If a

---

[9] Later in his deposition, Dr. Small sought to backtrack by offering testimony that conflicts with his earlier statement, that of Dr. Reynoso and Dr. Kaneshiro, his superiors at Premera, and the Premera contract. Dr. Small contended that when he authorized coverage of gender-affirming chest surgery for minors, it was not a decision regarding the medical necessity of the treatment but rather an exception to medical necessity. Hamburger Decl., *Exh. C,* p. 191:1–14. This is a distinction without a difference—when Premera covers services, it does so because there was a decision that the service was clinically appropriate and medically necessary. *See id., Exh. A*, p. 16 ("Covered services … must be medically necessary").

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 10
[Case No. 2:23-cv-00953-TSZ]

Premera medical director considers the criteria he uses for a clinical exception and finds that the enrollee does not meet those criteria, he is not required to put that specific reason for denial in the letter to the enrollee).  There is no exception noted in the actual GTAS Policy.  *Exh. C,* p. 119:1–3; *see generally Exh. B*.  There is no exception to "medical necessity" cited in the Premera contract.  *Exh. A,* p. 16. Premera even informed the Washington Office of the Insurance Commissioner that there are no exceptions to the GTAS Policy.  *Exh. FF,* p. 2.  ███████████████████████████████████

███████████████████████████████████████████████████

███████████████

While Premera informally permits exceptions, they are not expected to be common.  For example, Premera's Rule 30(b)(6) witness, Dr. Kaneshiro, testified that if exceptions were made a significant percentage of the time, "[i]t would be something to think about."  *Exh. Z,* p. 52:17–20.  When pressed, Dr. Kaneshiro admitted that if exceptions were occurring nearly half the time, it would raise the question of whether Premera should "fine-tune some of the criteria for which those exceptions are being made."  *Id.,* p. 52:17–25.  But as of the date of his deposition, Dr. Kaneshiro was unaware of the data demonstrating that nearly half of the time, Premera covered gender-affirming chest surgery, despite the Age-Exclusion in the GTAS Policy.  *Id.*  pp. 53:1–54:4.

Dr. Small authorized the exceptions to the GTAS Policy. *Exh. C,* p. 136:13–15; *Exh. GG,* pp. 25:17–26:4.  The process is as follows: claims for gender-affirming chest surgery are first reviewed by someone on Premera's clinical nurse team.  *Exh. C,* pp. 132:25–133:12.  If the criteria are met, then the request is approved.  *Id.*  If the criteria are not met, such as when a request/claim for coverage of gender-affirming chest surgery submitted on behalf of a minor, the request is forwarded to a medical director as a potential denial.  *Id.*  There are only two medical directors who would review these potentially denied requests—Dr. Small and Dr. Dobias.  *Id.,* p. 134:6–12.  Dr. Dobias

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 11
[Case No. 2:23-cv-00953-TSZ]

testified that she never applied an exception to the GTAS Policy. *Exh. GG*, pp. 25:17–26:4. Accordingly, Dr. Small is responsible for most of the gender-affirming chest surgery for minors that Premera covered and paid for. *Exh. C*, p. 136:13–15. The remaining exceptions occurred as a result of independent review organizations concluding that coverage was medically necessary. *See Exh. II.*

Dr. Small's criteria for exceptions are not published anywhere that enrollees and their providers can review them. *Exh. C*, pp. 135:1–2; 152:16–153:19. But his personal criteria were uncovered in Dr. Small's notes of his communication with A.B.'s surgeon. *See Exh. C.*, pp. 147:9–148:16. Dr. Small's criteria include (1) whether the enrollee is chest binding, and such binding is causing "rib injury/skeletal injury, respiratory compromise, significant skin wounds … or pain;" (2) if the enrollee is "experiencing suicidal ideation or intent or self-harm behaviors or severe functional impairment … due to breast-induced gender dysphoria;" or (3) if the enrollee is experiencing "severe gynocomastia" to the extent that binding is not feasible or the enrollee is "unable to adequately reduce visible breast size." *Id.* Dr. Small's personal exceptions are not based on the developmental maturity of any particular minor. *See id.; see also id.*, p. 155:6–13. Rather, most of the exceptions require that the enrollee demonstrate significant or extreme physical or emotional distress, in order to receive coverage. Given the very serious nature of gender dysphoria, it is sadly unsurprising that 35% of the requests/claims considered by Premera meet Dr. Small's criteria for exceptions.

In sum, Premera agrees that gender-affirming chest surgery can be medically necessary to treat gender dysphoria. *Exh. C*, pp. 35:24–36:9; 48:7–21; *Exh. Z*, pp. 46:11–14; *Exh. B.* The general medical necessity of this treatment is not at issue in this case.

Premera also concedes that coverage of gender-affirming chest surgery for minors is frequently "clinically appropriate" such that it should be covered, since it covered the surgery in nearly half (44%) of the claims submitted during the Class period, either as

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 12
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303    FAX (206) 223-0246

exceptions or as a result of external review decisions.   *Exh. C,* pp. 135:24–136:12; *Exhs. HH, II, MM.*  Accordingly, there can be no genuine dispute between the parties that a categorical exclusion of all coverage for gender-affirming chest surgery for minors is not "clinically appropriate" because in nearly half of the claims/requests received, Premera covered the surgery.[10]  *Id.*

### III.  ARGUMENT

**A.     Section 1557's Legal Standard**

The Affordable Care Act "attempts to provide adequate health care to as many individuals as possible by requiring insurers to provide essential health benefits." *Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 955 (9th Cir. 2020).  More specifically, Section 1557 of the ACA requires, in relevant part, that "[a]n individual shall not, on the ground prohibited under … title IX of the Education Amendments of 1972 (20 U.S.C. 1681 *et seq.*) … be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance."  42 U.S.C. § 18116(a).  Stated differently, Section 1557 prohibits discrimination on the basis of sex in health programs or activities, any part of which receives federal funding.

---

[10] Premera retained seven (7) experts to opine that gender-affirming chest surgery is never medically necessary for people under the age of 18 and was not medically necessary for Plaintiff A.B., even apart from his chronological age.  Hamburger Decl., ¶11, *Exh. OO*.  Premera cannot use expert testimony to refute its own direct evidence and Rule 30(b)(6) testimony. *See Yeager v. Bowlin,* 693 F.3d 1076, 1080 (9th Cir. 2012) ("[A] party cannot create an issue of fact by an affidavit contradicting [its] prior deposition testimony"); *Munoz v. Giumarra Vineyards Corp.,* 2015 U.S. Dist. LEXIS 122450, at *14 (E.D. Cal. Sep. 11, 2015) ("Rule 30(b)(6) testimony can only be rebutted when there is an explanation for why the earlier testimony is mistaken.").  As noted above, Premera has repeatedly covered gender-affirming chest surgery for minors as "clinically appropriate" for nearly half of the requests made. *Exh. C,* pp. 135:24–136:12; *Exh. HH.*  Moreover, Premera conceded that Plaintiff A.B. met the Premera standards for coverage under the GTAS Policy, apart from his chronological age.  *Exh. C,* pp. 141:23–142:3. Premera cannot manufacture an issue of material fact using its "hired-gun" experts.

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 13
[Case No. 2:23-cv-00953-TSZ]

It imposes "an affirmative obligation not to discriminate in the provision of health care" on covered health entities. *Schmitt*, 965 F.3d at 955.

To succeed on a Section 1557 claim, Plaintiffs and the proposed Class must demonstrate that (1) the defendant is a health program or activity, any part of which receives federal funding; (2) the plaintiff was excluded from participation in, denied the benefits of, or subjected to discrimination under any a health program or activity; and (3) the latter occurred on the basis of sex. *C.P. v. Blue Cross Blue Shield of Ill.*, 536 F. Supp. 3d 791, 796 (W.D. Wash. 2021); *see also Fain v. Crouch*, 2022 U.S. Dist. LEXIS 137084, at *35 (S.D.W. Va. Aug. 2, 2022); *Kadel v. Folwell*, 446 F. Supp. 3d 1, 12–13 (M.D.N.C. 2020), *aff'd sub nom Kadel v. N.C. State Health Plan Teachers & State Emp.*, 12 F.4th 422 (4th Cir. 2021), as amended (Dec. 2, 2021), *cert. denied*, 142 S. Ct. 861 (2022); *cf. Doe v. Snyder*, 28 F.4th 103, 114 (9th Cir. 2022) (applying the legal grounds from Title VII and Title IX to a Section 1557 claim for sex discrimination); *Grabowski v. Ariz. Bd. of Regents*, 69 F.4th 1110, 1117 (9th Cir. 2023) (articulating the grounds for a claim under Title IX).

Based on the undisputed facts, and without need for further discovery, including expert testimony, Plaintiffs demonstrate below that (1) Premera is a covered health entity subject to the ACA's anti-discrimination law; (2) as a result of Premera's application of the categorical age-based exclusion in GTAS Policy, Plaintiffs and the proposed Class were subjected to discrimination by Premera; and (3) such discrimination occurred on the basis of sex.

**B.     Premera Is a Covered Health Entity That Must Comply With the ACA's Anti-Discrimination Law in All Activities.**

Premera concedes that it is a "health program or activity" subject to Section 1557 but only in the programs for which it receives federal financial assistance. *Exh. H*, pp. 15:2–12.  But Section 1557's requirements are far broader.

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 14
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

If an entity is a "health program or activity" that receives federal financial assistance, then *all* of its operations are subject to Section 1557. 42 U.S.C. § 18116(a); *T.S. v. Heart of Cardon, LLC,* 43 F.4th 737, 743 (7th Cir. 2022). As the Seventh Circuit concluded "[t]he phrase 'health program or activity' in section 1557 plainly includes all the operations of a business principally engaged in providing healthcare, and CarDon concedes that it is such an entity. That ends the inquiry." *Id.*; *Fain v. Crouch*, 545 F. Supp. 3d 338, 343 (S.D.W. Va. 2021) ("[B]y virtue of its acceptance of federal assistance under its Medicare Advantage program, The Health Plan must comply with Section 1557 under its entire portfolio") (emphasis added). Here Premera admits it receives the federal financial assistance that subjects it to Section 1557 in "all operations." 42 U.S.C. § 18116. *Accord, Doe v. CVS Pharm., Inc.,* 2022 U.S. Dist. LEXIS 139684, at *27 (N.D. Cal. Aug. 5, 2022) (the term "all operations" in Section 1557 should be interpreted broadly, including beyond corporate entity lines); *C.P. v. Blue Cross Blue Shield*, 2022 U.S. Dist. LEXIS 227832, at *15 (W.D. Wash. Dec. 19, 2022) (health entity's third-party administrator line of business is subject to Section 1557); *Fain*, 545 F. Supp. 3d at 343 ("[I]ndividual plans are not programs with 'parts' that receive federal financial assistance; health plans are the 'parts' that receive assistance within programs."). All of Premera is subject to Section 1557. *See also* 45 C.F.R. § 92.207; 89 Fed. Reg. 37,627.

## C. Premera's Age Exclusion Treats Transgender Minors Differently Based on Sex.

Premera's Age-Exclusion facially discriminates based on sex because it treats transgender minors differently from other minors. Discrimination means "[t]o make a difference in treatment or favor (of one as compared with others)." *Bostock*, 590 U.S. at 657. "To 'discriminate against' a person, then, would seem to mean treating that individual worse than others who are similarly situated." *Id.* In case after case across the country, courts have held that that categorical exclusions of coverage for gender-

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 15
[Case No. 2:23-cv-00953-TSZ]

affirming health care illegally discriminate on the basis of sex.  *See Kadel*, 100 F.4th at 164; *Lange v. Houston Cnty.*, 101 F.4th 793, 798–99 (11th Cir. 2024); *Dekker v. Weida*, 679 F. Supp. 3d 1271, 1289–91 (N.D. Fla. 2023); *Hammons v. Univ. of Md. Med. Sys. Corp.*, 649 F. Supp. 3d 104, 115 (D. Md. 2023); *Fletcher v. Alaska*, 443 F. Supp. 3d 1024, 1027, 1030 (D. Alaska 2020); *Flack v. Wisconsin Dep't of Health* Servs., 395 F. Supp. 3d 1001, 1019–22 (W.D. Wis. 2019); *Boyden v. Conlin*, 341 F. Supp. 3d 979, 1002–03 (W.D. Wis. 2018). When the same or similar surgical treatment is available to people without a diagnosis of gender dysphoria, but an exclusion applies to eliminate such coverage for people with gender dysphoria, the practice is illegal sex discrimination.  This is so because the exclusion "necessarily and intentionally appl[y] sex-based rules."  *Bostock*, 590 U.S. at 667 (an entity that discriminates based on transgender status "inescapably ***intends*** to rely on sex in its decisionmaking"). The same is true for Premera's Age-Exclusion.

A transgender person, by definition, is someone whose sex assigned at birth is different from their gender identity.  *Exh. B*, p. 31 of 41 ("Transgender:  People who have a gender identity that is discordant with the anatomical sex"); *Boyden*, 341 F. Supp. 3d at 986. As the Supreme Court held, "it is impossible to discriminate against a person for being … transgender without discriminating against that individual based on sex." *Bostock*, 590 U.S. at 660.  Taking adverse action against "a transgender person who was identified as a male at birth but who now identifies as a female," while not taking such action against "an otherwise identical [person] who was identified as female at birth," "intentionally penalizes" the transgender person based on their sex assigned at birth.  *Id*. This analytical framework applies equally to Section 1557.  *See Doe v. Snyder*, 28 F.4th at 114 ("We construe Title IX's protections consistently with those of Title VII."); *see also Grabowski v. Ariz. Bd. of Regents*, 69 F.4th 1110, 1116 (9th Cir. 2023).

Discrimination based on gender transition is also necessarily facial discrimination based on sex.  *See Schroer v. Billington*, 577 F. Supp. 2d 293, 306–08 (D.D.C. 2008) (refusal

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 16
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

to hire person who "planned to … undergo[] sex reassignment surgery was literally discrimination because of … sex"); *Fabian v. Hosp. of Cent. Conn.*, 172 F. Supp. 3d 509, 527 (D. Conn. 2016). As the *Flack* court concluded, discrimination "on the basis that an individual was going to, had, or was in the process of changing their sex … is still discrimination based on sex." *Flack v. Wisconsin Dep't of Health Servs*, 328 F. Supp. 3d 931, 949 (W.D. Wis. July 25, 2018). Singling out "sex reassignment" for differential treatment from other medical procedures should be understood as treating transgender people differently "as a class." *Williams v. Kincaid*, 45 F.4th 759, 772 (4th Cir. 2022).

As a practical matter, Premera cannot administer its GTAS Policy without considering a person's sex assigned at birth. As Premera's Rule 30(b)(6) witness testified, it is the diagnostic code for gender dysphoria that triggers the application of the GTAS Policy. *Exh. C,* p. 133:13–23. Determining whether Plaintiffs' requested chest surgery is subject to the GTAS Policy, and therefore the Age-Exclusion "is impossible—literally cannot be done—without inquiring into [Plaintiffs'] sex assigned at birth and comparing it to [their] gender identity." *Kadel*, 100 F.4th at 147. The diagnostic code for gender dysphoria directs Premera employees to apply the GTAS Policy, which, in turn, necessitates consideration of the enrollees' sex assigned at birth. "If one must know the sex of a person to know whether or how a provision applies to the person, the provision draws a line based on sex." *Dekker*, 679 F. Supp. 3d at 1289–90. In other words, if the minor enrollee's request/claim for chest surgery is accompanied by the diagnostic code for gender dysphoria, the diagnostic code triggers the application of the GTAS Policy and the Age-Exclusion. If, on the other hand, the minor enrollees request/claim is accompanied by a different diagnostic code, *no categorical Age-Exclusion is triggered*.

The GTAS Policy, including its Age-Exclusion, directly targets transgender people because only transgender people experience and seek care for gender dysphoria. *See Lange*, 101 F.4th at 799 ("Lange's sex is inextricably tied to the denial of coverage for

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 17
[Case No. 2:23-cv-00953-TSZ]

gender-affirming surgery."); *Fain v. Crouch*, 618 F. Supp. 3d 313, 324–25 (S.D.W.V. 2022) ("[I]nherent in a gender dysphoria diagnosis is a person's identity as transgender. In other words, a person cannot suffer from gender dysphoria without identifying as transgender."), *aff'd sub nom Kadel*, 100 F.4th 122; *Toomey v. Arizona*, 2019 U.S. Dist. LEXIS 219781, at *18 (D. Ariz. Dec. 23, 2019) ("[T]ransgender individuals are the only people who would ever seek gender reassignment surgery.")

**D.      Premera Does Not Impose an Age Exclusion on the Same or Similar Chest Surgery for Other Conditions, Nor for Nearly All Other Surgeries for Minors.**

Since Premera covers the same or similar surgery for other conditions without an Age-Exclusion, and Premera concedes that the surgery can be medically necessary for minors, the categorical Age-Exclusion in the GTAS Policy is discriminatory.  It is undisputed that Premera covers mastectomy for minors with cancer, to reduce excess breast tissue in cisgender minors, and even after this lawsuit was filed, prophylactically. *Exhs. D, E, DD*.  This is facial discrimination.  *See Kadel,* 100 F.4th at 153.  As the Fourth Circuit explained:

> [W]hen the purpose of the surgery is to align a patient's gender presentation with their sex assigned at birth, the surgery is covered. When the purpose is to align a patient's gender presentation with a gender identity that does not match their sex assigned at birth, the surgery is not covered.
>
> ***This is textbook sex discrimination,*** for two reasons. For one, we can determine whether some patients will be eliminated from candidacy for these surgeries solely from knowing their sex assigned at birth. And two, conditioning access to these surgeries based on a patient's sex assigned at birth stems from gender stereotypes about how men or women should present.

*Id.*  (emphasis added). *See also, Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002) (State Medicaid program discriminates on the basis of disability when it used a protected trait as the basis for the denial of benefits).  Here too, under Premera's GTAS Policy,

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 18
[Case No. 2:23-cv-00953-TSZ]

transgender minors cannot have coverage for chest surgery as treatment for their gender dysphoria, while minors with other health conditions can. Nothing more is needed to demonstrate illegal sex discrimination.

Premera may argue that no discrimination occurs because (1) it now applies an Age-Exclusion to the same surgery when sought by cisgender minors "prophylactically" (a form of "over-discrimination"); (2) it has covered gender-affirming chest surgery for approximately half of the requests/claims submitted (a form of "under-discrimination"); and (3) its justification based upon minor "brain maturity" is a legitimate clinical justification. ***None of these defenses immunize Premera from liability***. Under controlling Ninth Circuit anti-discrimination law, Premera's discrimination is not excused if it results in either over- or under-discrimination. And, since the Age-Exclusion is a form of ***facial discrimination***, Premera cannot evade liability by proffering a belated justification. *See Int'l Union v. Johnson Controls*, 499 U.S. 187, 199 (1991) (for facial discrimination, courts consider the explicit terms of the discrimination, not why it is allegedly justified). Moreover, Premera's "brain maturity" justification is a pretext, because, if it were a legitimate, non-discriminatory justification, Premera would apply it equally to all minors, which it does not.

### 1.    Over-Discrimination Is Illegal.

The fact that Premera now claims to apply a similar Age-Exclusion to a single similar surgery, prophylactic mastectomy, does not "cure" the discrimination:

> Discriminatory laws, policies, or actions will often have negative effects (whether intended or not) on individuals who do not belong to the disfavored group, yet such laws, policies, or actions are discriminatory when they are undertaken for the purpose of harming protected individuals.

*Schmitt*, 965 F.3d at 958. Such "over-discrimination" still violates Section 1557. *Id.* Where, as here, the Age Exclusion is imposed only on the GTAS Policy in order to avoid

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 19
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

covering such treatment for minors—even when the parents and treating team of the minor agree it is appropriate, and when the minor has demonstrated all of Premera's remaining criteria for coverage—it is intentional discrimination. Premera's discrimination is not eliminated by its post-litigation decision to expand its discriminatory practices to include minors who seek coverage for prophylactic mastectomies. If a defendant could avoid discrimination in this manner, it could "openly admit[ ] its intent to discriminate, so long as the defendant (a) relies on a facially neutral law or policy and (b) is willing to 'over discriminate' by enforcing the facially neutral law or policy even against similarly-situated individuals who are not members of the disfavored group." *Pac. Shores Props., Ltd. Liab. Co. v. City of Newport Beach*, 730 F.3d 1142, 1159 (9th Cir. 2013). The Ninth Circuit has consistently rejected this "grotesque scenario" in which a defendant could "effectively immunize itself from suit" if it also victimizes similarly situated others. *Id.* Such actions do not "cleanse the taint of discrimination; it simply underscores the depth of the defendant's animus." *Id. See also, Children's All. v. City of Bellevue*, 950 F. Supp. 1491, 1496 n.8 (W.D. Wash. 1997) ("[A]n ordinance [that] also discriminates against individuals unprotected by [anti-discrimination law] does not eliminate a [discriminatory] violation.").

**2.    Covering gender-affirming chest surgery for some minors using hidden, arbitrary criteria does not neutralize Premera's discrimination.**

Similarly, Premera's *ad-hoc* coverage of gender-affirming chest surgery for minors in a sizable minority of the claims/requests submitted, a form of "under-discrimination" does not nullify the discrimination experienced by Plaintiffs and proposed Class members. *See Lovell*, 303 F. 3d at 1054. In *Lovell*, Hawaii's Medicaid program established a special managed care program for Medicaid enrollees, but excluded all persons who qualified as "aged, blind or disabled" from participation. *Id.* at 1045. Hawaii justified

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 20
[Case No. 2:23-cv-00953-TSZ]

its exclusion by offering a different program for some, but not all, affected disabled enrollees. *Id.* at 1054. As the Ninth Circuit explained, "[t]he State's appropriate treatment of some disabled persons does not permit it to discriminate against other disabled people." *Id. See also, Rice v. Cayetano*, 528 U.S. 495, 516–17 (2000) ("Simply because a class … does not include all members of [a] race does not suffice to make the classification race neutral."); *Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 579 (7th Cir. 2014) ("That the policy is not universally applied to boys does not negate the fact that it is based on sex: Again, boys wishing to play basketball (or baseball) are subject to a requirement that girls are not. The fact that other boys playing other sports are not burdened by that requirement is neither here nor there."). Similarly, here, Premera's selection of some transgender minors for appropriate treatment does not authorize it to discriminate against Plaintiffs and the proposed Class through its facially discriminatory exclusion.

**3.      Premera's Age-Exclusion Is Facial Discrimination, such that any proffered "justifications" are irrelevant.**

Premera's GTAS Policy is facially discriminatory, such that there can be no "legitimate" justifications that could avoid Premera's liability. On the face of its GTAS Policy and the corresponding similar policies affecting minors with diagnosed medical conditions seeking chest surgery, only the GTAS Policy has a categorical exclusion based on an enrollee's age. As Dr. Small, Premera's Rule 30(b)(6) witness, admitted, the diagnosis of gender dysphoria triggers the application of the GTAS Policy including its Age-Exclusion. *Exh. C,* p. 133:13–23. At the same time, minors diagnosed with other medical conditions are not subject to an Age-Exclusion. *See Exhs. D, E, DD.* This is facial

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 21
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

proxy discrimination.[11] *See Cmty. House, Inc. v. City of Boise,* 490 F.3d 1041, 1048 (9th Cir. 2007) ("A facially discriminatory policy is one which on its face applies less favorably to a protected group."); *Kadel,* 100 F.4th at 150 ("[I]t is enough to know that gender dysphoria, and therefore treatment for gender dysphoria, is unique to transgender individuals in order to conclude that the exclusions use gender dysphoria as a proxy for transgender identity.").

Justifications offered by Premera for the facially-discriminatory Age-Exclusion are irrelevant. "Whether [a defendant's] practice involves disparate treatment through explicit facial discrimination does not depend on why the [defendant] discriminates but rather on the explicit terms of the discrimination." *Johnson Controls,* 499 U.S. at 199; *Latta,* 771 F.3d at 468 (An alleged justification for sex discrimination does not overcome facial discrimination); *Gerdom v. Cont'l Airlines,* 692 F.2d 602, 608 (9th Cir. 1982) ("Where a claim of discriminatory treatment is based upon a policy which on its face applies less favorably [based on] gender, this court has held that the plaintiff need not otherwise establish the presence of discriminatory intent."); *Erie Cnty. Retirees Ass'n v. Cnty. of Erie, Pa.,* 220 F.3d 193, 212 (3d Cir. 2000) ("The Supreme Court has indicated that a policy explicitly based on a prohibited factor — such as sex or age — is illegal regardless of the underlying motive"). "The beneficence of [a defendant]'s purpose does not undermine the conclusion that an explicit gender-based policy is sex discrimination." *Johnson Controls,* 499 U.S. at 200.

---

[11] Proxy discrimination is a type of facial discrimination because it is based on "seemingly neutral criteria that are so closely associated with the disfavored group that discrimination on the basis of such criteria is, constructively, facial discrimination against the disfavored group." *Davis v. Guam,* 932 F.3d 822, 837 (9th Cir. 2019) (cleaned up). *See also Rice,* 528 U.S. at 514–15; (law based on "ancestry [was] a proxy for race"); *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 270 (1993) ("[a] tax on wearing yarmulkes is a tax on Jews,"); *Castaneda v. Partida,* 430 U.S. 482, 495 (1977) (exclusion of "Spanish surnames" was proxy for national origin discrimination); *Pac. Shores Props., LLC,* 730 F.3d at 1160 n.23 (gray hair as proxy for age discrimination); *E.S. v. Blueshield,* No. C17-1609-RAJ, 2024 U.S. Dist. LEXIS 48611, at *8 (W.D. Wash. Mar. 19, 2024) (hearing aid exclusion constitutes a plausible proxy for hearing disability in Section 1557 case).

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 22
[Case No. 2:23-cv-00953-TSZ]

Section 1557 "targets only certain classifications"—those based on race, color, national origin, sex, age, or disability. *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 309 (2023) (Gorsuch, J., concurring). It "does not direct courts to subject these classifications to one degree of scrutiny or another. Instead, … its rule is as uncomplicated as it is momentous." *Id.* As Justice Gorsuch explained in the context of Title VI,[12] "it is always unlawful to discriminate among persons even in part" based on any of the grounds protected by Section 1557. *Id. See also, McMahon v. World Vision, Inc.*, 2023 U.S. Dist. LEXIS 127071, at *11 (W.D. Wash. July 24, 2023) (Plaintiffs are "not required to establish pretext or otherwise establish the presence of discriminatory intent because '[w]here a claim of discriminatory treatment is based upon a policy which on its face applies less favorably [based on] gender,' the [defendant's] use of the policy is per se intentional discrimination."). Only if the Court concludes that the Age-Exclusion is ***not*** facially discriminatory but is instead a form of disparate impact discrimination, does consideration of Premera's justifications for the Age-Exclusion come into play. Here, however, the discrimination is facial.

**4.    In Any Event, Premera's Justifications Are Pretextual.**

Even if the Court were to consider Premera's justifications for the Age-Exclusion—and it should not since the discrimination is facial—Premera's reasons are pretextual based on the undisputed evidence as a whole. *See* 45 C.F.R. § 92.207(c); 87 Fed. Reg. 47,865 (OCR will take various circumstantial evidence into account that collectively may demonstrate "that the covered entity acted, at least in part, because of a protected basis" *citing to Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252,

---

[12] Section 1557 incorporated the grounds and enforcement mechanisms of Title VI, just as it does with Title IX. *See* 42 U.S.C. § 18116(a).

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 23
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

266 (1977)); 89 Fed. Reg. 37,597 (same).  Reviewing the undisputed evidence as a whole, Premera has no legitimate justification for the Age-Exclusion:

- Six years after the Age-Exclusion was first imposed, Premera retroactively came up with a medical justification solely to ensure compliance with Section 1557. *Exh. CC*; *Exh. Z*, pp. 64:23–65:13; 66:7–15; *Exh. B*, pp. 34–35 of 41.  Premera then tried to boost its justification, post-litigation.  *See Exh. C,* pp. 75:16–76:13; 76:25–82:2; *Exh. LL,* pp. 40–41.

- Premera's "brain maturity" justification is not applied to the same or similar surgeries for minors with other conditions.  *Exhs. D–E, DD.*  Indeed, it is not applied to any other surgeries.  *Exh. Z,* pp. 58:17–59:13;[13]  *Exh. C,* p. 99:14–22 ("developmental maturity" has not been an issue for other policies that Dr. Small has developed).

- When Premera covers chest surgery for gender dysphoria sought by transgender minors (which it does for 35% of the requests/claims it receives), it makes no inquiry into the "brain maturity" of those minors.  Rather Premera approves coverage based on wholly unrelated criteria. *See Exh. C.,* pp. 147:9–148:16; 155:6–13.

- Premera's Age-Exclusion was developed and maintained (a) by a staff psychiatrist and internist who had no experience delivering the care described in the GTAS Policy; *see Exh. C,* pp. 41:4–7; 44:15–18.  *Exh. AA,* pp. 12:21–13:1; (b) without consulting any gender-affirming care specialists who are currently treating patients or any surgeons who practice in this area; *Exh. AA,* pp. 16:7–17:9;  *Exh. C,* p. 44:22–25; and (c) despite the GTAS

---

[13] Dr. Kaneshiro notes that only one other Premera policy has an Age-Exclusion, the Interqual criteria for prophylactic mastectomy which Premera adopted recently.  *Exh. Z, 58:17–23; See Exh. KK.*  However, the prophylactic mastectomy policy does not contain a justification for the Age-Exclusion.  *See id.*

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 24
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

Policy being an "outlier" among Washington insurers because of its application of the Age-Exclusion; *see Exh. Z*, p. 28:1–10; *Exh. F.*

- Cruelly, most of Dr. Small's unwritten and hidden criteria require transgender minors to be in extraordinary physical and emotional pain before Premera will cover the treatment. *See Exh. C.,* pp. 147:9–148:16 (minors must experience physical pain or risk suicide before Dr. Small's exceptions apply). At the same time, non-transgender minors who seek the same surgery need not experience such extreme pain and emotional distress to receive coverage for the surgery recommended by their treating providers. *Exhs. D–E.*

Put simply, the undisputed facts show that Premera's justifications for the Age-Exclusion in the GTAS Policy are inconsistently applied across the same or similar surgical procedures, and therefore are unbelievable pretext. *See Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1127 (9th Cir. 2000).

## IV. CONCLUSION

Plaintiffs respectfully request that the Court grant them and the Class partial summary judgment on their Affordable Care Act claim by declaring that the Age-Exclusion unlawfully discriminates on the basis of sex in violation of Section 1557 of the Affordable Care Act.

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 25
[Case No. 2:23-cv-00953-TSZ]

DATED:  July 22, 2024.

*I certify that the foregoing contains 8,324 words, in compliance with the Local Civil Rules.*

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC

 /s/ Eleanor Hamburger
Eleanor Hamburger (WSBA #26478)
Email:  ehamburger@sylaw.com

 /s/ Daniel S. Gross
Daniel S. Gross (WSBA #23992)
Email:  dgross@sylaw.com
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303; Fax (206) 223-0246


LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.

 /s/ Omar Gonzalez-Pagan
Omar Gonzalez-Pagan
*(Admitted Pro Hac Vice)*
Email:  ogonzalez-pagan@lambdalegal.org
120 Wall Street, 19th Floor
New York, NY 10005
Tel. (646) 307-7406; Fax (212) 658-9721


Q LAW FOUNDATION OF WASHINGTON

 /s/ J. Denise Diskin
J. Denise Diskin (WSBA #41425)
Email:  denise@qlawfoundation.org
400 East Pine Street, Suite 225
Seattle, WA 98122
Tel. (206) 483-2725

*Attorneys for Plaintiffs*

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 26
[Case No. 2:23-cv-00953-TSZ]