The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| L.B. and M.B., on behalf of their minor child A.B., and on behalf of similarly situated others; L.B.; M.B., C.M. and A.H., on behalf of their minor child J.M., and on behalf of similarly situated others; C.M.; and A.H.,<br><br>          Plaintiffs,<br><br>   v.<br><br>PREMERA BLUE CROSS,<br><br>          Defendant. | NO. 2:23-cv-00953-TSZ<br><br>**PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY OF MICHAEL K. LAIDLAW, M.D.**<br><br><br>**Noted on Motion Calendar: March 14, 2025** |

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND .....................................................................................................1

III.    ARGUMENT...........................................................................................................1

        A.    Legal Standard ...........................................................................................1

        B.    Dr. Laidlaw Is Not Qualified. ...................................................................2

        C.    Dr. Laidlaw's Opinions and Testimony Are Neither Relevant nor
              Reliable. .....................................................................................................5

              1.    The opinions about treatment modalities are unreliable....................5

              2.    Laidlaw's opinions about surgery, including chest surgery,
                    are unreliable.....................................................................................6

              3.    Laidlaw's opinions about A.B.'s medical care are
                    unreliable. .........................................................................................7

              4.    Laidlaw's opinions about social transition and endocrine
                    treatments for gender dysphoria are irrelevant. ...............................8

              5.    Laidlaw's musings about the causes of gender dysphoria
                    are irrelevant and unreliable. ...........................................................8

              6.    Laidlaw's opinions about desistance are irrelevant and
                    unreliable. .........................................................................................8

              7.    Laidlaw's opinions about WPATH and the Standards of
                    Care are unreliable. ..........................................................................9

              8.    Laidlaw's opinions about treatment paradigms in other
                    countries are irrelevant and unreliable.............................................10

              9.    Laidlaw's opinions are unreliable because they are outside
                    the medical mainstream. ..................................................................11

              10.   Laidlaw's opinions are unreliable because they are biased. ............11

        D.    Dr. Laidlaw May Not Offer Any Opinions as to Plaintiff J.M. ..............12

        E.    Dr. Laidlaw's Opinions Lack Probative Value and Are Therefore
              Inadmissible. ............................................................................................13

IV.     CONCLUSION......................................................................................................13

PLAINTIFFS' MOTION TO EXCLUDE EXPERT
TESTIMONY OF MICHAEL K. LAIDLAW, M.D. – ii
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

# I.  INTRODUCTION

This Court should exercise its unwavering "gatekeeping obligation" to exclude the testimony of Michael K. Laidlaw, M.D., one of Premera's "expert" witnesses.  *United States v. Valencia-Lopez*, 971 F.3d 891, 898-899 (9th Cir. 2020) (citing *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 597 (1993)).  Dr. Laidlaw is unqualified to serve as an expert.  His opinions should be excluded under Federal Rule of Evidence 702, *Daubert* and its progeny, and Rule 403.

# II.  BACKGROUND

On May 15, 2024, Premera served Plaintiffs with expert witness disclosures for seven experts, including an expert report by Dr. Laidlaw.  In his report, Dr. Laidlaw provides opinions on the causes, diagnosis, and treatment of gender dysphoria, including the use of puberty-delaying medication, hormone treatment, and surgery.  *See generally* Laidlaw Report.[1]  Although he has never evaluated or treated Plaintiff A.B., Dr. Laidlaw also opines on the propriety of the treatment for A.B.'s gender dysphoria, including chest surgery, as well as on A.B.'s physical and mental health.  *Id.*, ¶¶131-77.  Premera did not disclose any supplemental and rebuttal opinions by Dr. Laidlaw.  On November 15, 2024, Plaintiffs took Dr. Laidlaw's deposition.

# III.  ARGUMENT

## A.    Legal Standard

"Before admitting expert testimony into evidence, the district court must perform a gatekeeping role of ensuring that the testimony is both relevant and reliable under Rule 702." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019) (cleaned up). "The proponents of expert testimony bear the burden of establishing its admissibility over the objections of the opposing party by a preponderance of the evidence."  *Qualey v. Pierce Cnty.*, 2025 WL 254810, at *3 (W.D. Wash. Jan. 21, 2025). "[E]xpert testimony is admissible only if: (1) the expert is qualified, (2) the testimony is relevant, and (3) the testimony is based on reliable scientific

---

[1]    Dr. Laidlaw's report is attached as Exhibit 13 to Premera's summary judgment motion. Dkt. 81-1. Unless otherwise specified, all other exhibits and transcripts cited herein are attached to the contemporaneously filed Declaration of Omar Gonzalez-Pagan.

PLAINTIFFS' MOTION TO EXCLUDE EXPERT
TESTIMONY OF MICHAEL K. LAIDLAW, MD – 1
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

methodology." *Kadel v. Folwell*, 620 F.Supp.3d 339, 360 (M.D.N.C. 2022), *aff'd*, 100 F.4th 122, 158 (4th Cir. 2024) (*en banc*). "The Court must find these elements at the outset." *Id.* (cleaned up).

A witness can qualify as an expert on the basis of "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "Once a court makes the 'preliminary' determination … that a witness qualifies as an expert, the focus shifts to that witness' proffered testimony." *United States v. Cloud*, 576 F.Supp.3d 827, 837 (E.D. Wash. 2021). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry," *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) (quotation omitted), and "if the evidence will assist the trier of fact to understand or determine a fact in issue." *Cloud*, 576 F.Supp.3d at 837. "Expert opinion … is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Elosu*, 26 F.4th at 1024 (quotation omitted).

**B.    Dr. Laidlaw Is Not Qualified.**

When determining admissibility, "[t]he court … must always assure that the subject matter of the expert witness's testimony relates to the expertise the witness brings to the courtroom." *Nelson v. F/V N. Cape*, No. C05-346JLR, 2006 WL 5159249, at *1 (W.D. Wash. May 4, 2006). Courts must "constrain[] … experts to the specific technical areas in which they ha[ve] expertise." *Kadel*, 100 F.4th at 158; *see also Diviero v. Uniroyal Goodrich Tire Co.*, 919 F.Supp. 1353, 1357 (D. Ariz. 1996), *aff'd*, 114 F.3d 851 (9th Cir. 1997).

"[Q]ualifications alone do not suffice." *Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999). Even "[a] supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant under … *Daubert*." *Id.*, at 759 n.5. "[S]ome issues clearly require expertise in a particular field," *Diviero*, 919 F.Supp. at 1355. "[A]n expert's qualifications must be within the same technical area as the subject matter of the expert's testimony." *Martínez v. Sakurai Graphic Sys. Corp.*, 2007 WL 2570362, at *2 (N.D. Ill. Aug. 30, 2007).

PLAINTIFFS' MOTION TO EXCLUDE EXPERT
TESTIMONY OF MICHAEL K. LAIDLAW, MD – 2
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

This is particularly true in medicine where "no medical doctor is automatically an expert in every medical issue merely because he or she has graduated from medical school or has achieved certification in a medical specialty." *O'Conner v. Commonwealth Edison Co.*, 807 F.Supp. 1376, 1390 (C.D. Ill. 1992), *aff'd*, 13 F.3d 1090 (7th Cir. 1994); *see also Diviero*, 919 F.Supp. at 1355-56; *Krizek v. Queen's Med. Ctr.*, 2020 WL 5633848, at *6 (D. Haw. Sept. 21, 2020); *Cherry v. U.S.*, 2019 WL 1505862, at *4 (D. Ariz. Apr. 5, 2019). More to the point, the court should "reject[] expert testimony about the treatment of gender dysphoria from witnesses who, although medical professionals, did not demonstrate an expertise in treating gender dysphoria." *Kadel*, 100 F.4th at 158.

Dr. Laidlaw, an adult endocrinologist,[2] is not qualified to render any of the opinions he proffers:

(1) He has never conducted any original, peer-reviewed research concerning gender identity, transgender people, gender dysphoria, gender-affirming medical interventions, or chest surgery, Laidlaw *A.B.* Dep., 22:4-23:20, 119:16-23; *Voe* Tr., 33:19-34:9; *Loe* Tr., 27:7-20; *C.P.* Tr., 29:23-30:6; *Dekker* Tr., 10:15-11:13;

(2) He has not published any scientific, peer-reviewed literature on gender dysphoria or transgender people, *C.P.* Tr., 42:10-42:22;[3]

(3) He has never diagnosed a patient with gender dysphoria, *Voe* Tr., 33:7-11; *C.P.* Tr., 45:21-46:3; *Dekker* Tr., 11:19-11:21;

(4) He has never treated an *adolescent* for gender dysphoria and has only treated one *adult* patient with gender dysphoria as a fellow, providing a single prescription refill (over two decades ago), *Voe* Tr., 31:10-15; *Loe* Tr., 63:3-5; *C.P.* Tr., 43:11-43:17; *Dekker* Tr., 12:13-12:16;

---

[2] Fewer than 5% of Dr. Laidlaw's patients are under 18. *Voe* Tr., 31:4-9; *Loe* Tr., 59:9-11; *C.P.* Tr., 43:1-7.

[3] Dr. Laidlaw's only publications relating to gender dysphoria in medical journals are letters to the editor or commentary for which he cannot confirm they were subjected to peer-review, as opposed to merely editorial review. Laidlaw *A.B.* Dep., 14:21-15:15; *C.P.* Tr., 31:14-39:23; *Dekker* Tr., 9:21-11:18.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

(5) He is neither a psychiatrist, a psychologist, nor mental health care provider of any kind qualified to diagnose gender dysphoria or to opine on the reliability of the diagnosis, *Loe* Tr., 28:2-3; *C.P.* Tr., 47:16-47:17; *Dekker* Tr., 7:20-8:2; and

(6) He "is not a surgeon and has no experience with surgery for gender dysphoria and, therefore, is not qualified to testify to the risks associated with surgery or the standard of care used by surgeons for obtaining informed consent for surgery," *Kadel*, 620 F.Supp.3d at 364-65; *see also C.P.* Tr., 47:16-47:17; *Dekker* Tr., 87:8-87:9.

Nonetheless, Dr. Laidlaw opines in each of these areas. *See generally* Laidlaw Report. Similarly, though he is not a mental health care professional, Dr. Laidlaw opines on the mental health, assessments, and diagnosis of gender dysphoria of A.B. *Id.*, ¶¶131-77. He is not qualified to do so.

*Kadel* is most instructive here. There, a pediatric endocrinologist "offer[ed] a wide range of conclusions that fall into five main categories: mental healthcare, medical and surgical care, informed consent, criticism of medical associations, and political criticisms." *Kadel*, 620 F.Supp.3d at 363. The court excluded most of his proffered testimony, limiting it "to a discussion of the risks associated with prescribing hormone treatments to adolescents and adults," *id.* at 365, which is irrelevant here. This Court should do the same.

*C.P.* does not help Premera. *C.P.* involved exclusions that applied to all types of gender-affirming treatment including endocrinological interventions; while this case pertains to an exclusion that applies solely to gender-affirming chest surgery. And even in *C.P.*, whether Dr. Laidlaw was sufficiently qualified was "a close question." 2022 WL 17092846, at *4. Here, this case does not relate to Dr. Laidlaw's medical field, even loosely.

Finally, Dr. Laidlaw bases his opinions solely on his review of literature. *Dekker* Tr., 15:24-16:2, 18:20-18:25. But "[m]erely reading literature in a scientific field does not qualify a witness—even an educated witness—as an expert." *Kadel*, 620 F.Supp.3d at 364; *see also Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002).

PLAINTIFFS' MOTION TO EXCLUDE EXPERT
TESTIMONY OF MICHAEL K. LAIDLAW, MD – 4
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

Dr. Laidlaw only possesses the sort of "generalized knowledge of a particular subject" that courts have rejected as a qualification under Rule 702. *Lebron v. Sec. of Fla. Dept. of Children and Families*, 772 F.3d 1352, 1369 (11th Cir. 2014). He is "not qualified by background, training, or expertise to opine" about any of the issues in this case. *Id.*

**C.    Dr. Laidlaw's Opinions and Testimony Are Neither Relevant nor Reliable.**

Dr. Laidlaw's opinions fail any indicia of reliability, as they are based on nothing more than rank speculation, "untested" theories, uncorroborated anecdotes, and flawed assumptions.

**1.    The opinions about treatment modalities are unreliable.**

Dr. Laidlaw opines there are three approaches to treating gender dysphoria in minors: (1) "psychosocial treatment that helps the young person align their internal sense of gender with their physical sex"; (2) "watch and wait"; and (3) "gender affirmative therapy." Laidlaw Report, ¶45.

**One.** Dr. Laidlaw presents "reparative therapy" as if it were an accepted modality. Laidlaw Report, ¶45; *C.P.* Tr., 138:24-139:10.[4] It is not. "Reparative therapy" represents a fringe view within medical and scientific community, and the American Psychiatric Association and the American Psychological Association oppose it as unethical and harmful. *C.P.* Tr., 139:22-145:17; **Exhibit 7**. It is prohibited in Washington (and California). *See* RCW 18.130.180(27); *Tingley v. Ferguson*, 557 F.Supp.3d 1131 (W.D. Wash. 2021), *aff'd*, 47 F.4th 1055 (9th Cir. 2022).

**Two.** Dr. Laidlaw misrepresents the "watchful waiting" model adopted by the Dutch and the similar model adopted by Dr. Zucker's clinic in Canada. Both models provide medical treatment to minors whose gender dysphoria persists into adolescence. *C.P.* Tr., 129:1-135:10; **Exhibit 8**. When confronted, Dr. Laidlaw described a "watch and wait" model where medical

---

[4]    Dr. Laidlaw cavalierly compared transgender youth's gender identities to "think[ing] they're a butterfly for a while" or "the $6 million man for a little while." *C.P.* Tr., 145:7-145:12. Such opinion is offensive and unreliable. Dr. Laidlaw could not offer any peer-reviewed literature in support of his opinion and only claimed that "[i]t's just an observation that anyone would see, I think, with children." *Id.*, 145:14-145:17. "Generalized common sense does not rise to the level of expert opinion solely because it is offered by someone with an academic pedigree." *Fedor v. Freightliner, Inc.*, 193 F.Supp.2d 820, 832 (E.D. Pa. 2002); *cf. Nedeau v. Armstrong*, 2011 WL 849744, at *4 (E.D. Wash. Mar. 8, 2011).

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

interventions could only be considered "once … a person reaches the age of majority." *C.P.* Tr., 136:4-5. But when asked if there was "any peer-reviewed article, clinical guideline, anything in scientific literature that recommends and describes this model," Dr. Laidlaw admitted, it was simply his opinion. *C.P.* Tr., 137:5-137:9. "The trial court's gate-keeping function requires more than simply taking the expert's word for it." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("*Daubert II*"). To be sure, Dr. Laidlaw opposes gender-affirming medical interventions for anyone, regardless of age. *Voe* Tr., 86:25-87:10. And he even considers social transition to be harmful. *Id.*, 123:10-11.

Because Dr. Laidlaw's opinions about treatment modalities have no medical or scientific basis but rather are based on *ipse dixit*, they should be excluded as unreliable. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

### 2. Laidlaw's opinions about surgery, including chest surgery, are unreliable.

Dr. Laidlaw is not a surgeon, and he has conducted no research pertaining to gender-affirming surgery. Nonetheless, Dr. Laidlaw opines extensively about the evidentiary basis for gender-affirming chest surgery, the risks associated with such surgery, and the informed consent process for surgery, both generally and as to Plaintiff A.B. Laidlaw Report, ¶¶72-76, 115-22. But if an expert is not qualified, the expert's testimony is unreliable. *Reliastar Life Ins. Co. v. Laschkewitsch*, 2014 WL 1430729, at *1 (E.D.N.C. Apr. 14, 2014). Dr. Laidlaw "not qualified to testify to the risks associated with surgery or the standard of care used by surgeons for obtaining informed consent for surgery," *Kadel*, 620 F.Supp.3d at 364-65; *see also* §B, *supra*.

Furthermore, Dr. Laidlaw's opinions relating to surgery are misleading and unreliable. For example, purporting to evaluate the evidence base for gender-affirming chest for adolescents, Dr. Laidlaw discusses two studies. Laidlaw Report, ¶¶117-21 (discussing Olson-Kennedy and Mehringer studies). He omits numerous other studies that have looked at such procedures as well as vast swaths of the literature pertaining to adults. *Contrast with* Olson-Kennedy Report, ¶¶52-60, and Schechter Report, ¶¶49-56 (discussing the following studies, *inter alia*, in addition thereto:

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

Diaddigo, et al. 2024, Boskey, et al. 2023, Skorochod, et al., 2023, Ascha, et al. 2022, Tang, et al. 2022, and Sood, et al., 2021). The fact that Dr. Laidlaw ignores significant portions of relevant peer-reviewed literature evinces at best a lack of familiarity with these procedures and the unreliability of his methodology and opinions. *See In re Incretin-Based Therapies Prods. Liab. Litig.*, 524 F.Supp.3d 1007, 1046 (S.D. Cal. 2021) (expert's report was "not founded on reliable scientific reasoning" because he "conducted an incomplete review of the relevant evidence"), *aff'd*, 2022 WL 898595 (9th Cir. Mar. 28, 2022); *In re Rezulin Prods. Liab. Litig.*, 369 F.Supp.2d 398, 425 (S.D.N.Y. 2005) ("[I]f the relevant scientific literature contains evidence tending to refute the expert's theory and the expert does not acknowledge or account for that evidence, the expert's opinion is unreliable.").

Dr. Laidlaw's discussion of certain sources is also misleading and erroneous. Dr. Laidlaw relies on a 2016 national coverage determination (NCD) by the Centers for Medicare and Medicaid (CMS) pertaining to gender-affirming surgeries but fails to disclose that it concerned solely the "Medicare population." Laidlaw Report, ¶122; Laidlaw *A.B.* Dep., 41:4-42:11, 43:18-45:16. He also falsely testified that Medicare does not cover gender-affirming surgeries. Laidlaw *A.B.* Dep., 46:22-47:1. But the 2016 NCD explicitly states that "[i]n the absence of a NCD, coverage determinations for gender reassignment surgery … will continue to be made by the local MACs on a case-by-case basis … the result of this decision is not national non-coverage." CMS Final Decision Memorandum on Gender Reassignment Surgery for Medicare Beneficiaries with Gender Dysphoria (Aug. 30, 2016), https://tinyurl.com/2j9mprtc. Several local Medicare Administrative Contractors (MACs) explicitly cover gender-affirming surgeries under Medicare pursuant to Local Coverage Determinations (LCDs), citing to WPATH Standards of Care. *E.g.*, **Exhibits 8** and **9**.

### 3.    Laidlaw's opinions about A.B.'s medical care are unreliable.

Dr. Laidlaw is not qualified to offer opinions about A.B.'s treatment for gender dysphoria, which renders his opinions unreliable. His opinions as to A.B. are also unreliable because he has never met with, spoken with, treated, or evaluated A.B., or met with his parents. Laidlaw *A.B.*

PLAINTIFFS' MOTION TO EXCLUDE EXPERT
TESTIMONY OF MICHAEL K. LAIDLAW, MD – 7
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

Dep., 118:5-16.  Nonetheless he opines as to A.B.'s mental health and medical condition (Laidlaw Report, ¶¶131-77) and affirmatively makes a diagnosis of hyperandrogenism (Laidlaw *A.B.* Dep., 90:3-5).  This is not only unreliable but likely unethical.  The Code of Medical Ethics states that "[p]hysicians should … [r]efrain from making clinical diagnoses about individuals … they have not had the opportunity to personally examine." **Exhibit 10**

4.    **Laidlaw's opinions about social transition and endocrine treatments for gender dysphoria are irrelevant.**

Dr. Laidlaw's lengthy discussion of the risks of social transition and hormone treatments are not relevant to this case; they will not help the "the trier of fact in understanding evidence or in determining a fact in issue."  *Easton v. Asplundh Tree Experts, Co.*, 2017 WL 4005833, at *3 (W.D. Wash. Sept. 12, 2017).  His opinions do not "fit" this case.  This case pertains to the legality of Premera's Age Exclusion for gender-affirming chest surgery only.  It does not address coverage of puberty blockers or any aspect of social transition (which is not a medical intervention). These opinions are irrelevant.

5.    **Laidlaw's musings about the causes of gender dysphoria are irrelevant and unreliable.**

Dr. Laidlaw opines that gender dysphoria *may be* caused by social pressures.  Laidlaw Report, ¶113.  This claim is both wholly unsupported and irrelevant to the case at hand.  Gender dysphoria is a recognized medical condition that necessitates medical treatment – even Premera recognizes that.  *See*, *e.g.*, *C.P.* Tr., 87:11-87:21; *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019).

6.    **Laidlaw's opinions about desistance are irrelevant and unreliable.**

Dr. Laidlaw builds his opinions on antiquated studies showing that a majority of *preadolescent* children with *gender identity disorder*—an outmoded diagnosis *distinct from gender dysphoria*—"desisted" from their gender nonconformity or cross-gender behavior.  Laidlaw Report, ¶¶44-45, 77.  These opinions are irrelevant because "a discussion of risks to

PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY OF MICHAEL K. LAIDLAW, MD – 8 [Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

prepubescent children is irrelevant to this case and would likely serve only to confuse." *Kadel*, 620 F.Supp.3d at 364. They are also based on faulty propositions.

Dr. Laidlaw admits that the "desistance" studies on which he relies speak only to preadolescent youth who were diagnosed with *gender identity disorder* under the DSM-III or the DSM-IV, and do not pertain to "desistance" of youth diagnosed with *gender dysphoria* under the DSM-5. *C.P.* Tr., 103:4-104:4; *Voe* Tr., 76:2-78:10; **Exhibit 11**, at 904-05. And though he failed to disclose it in his report, the desistance studies upon which he relied looked at subjects who were evaluated under a distinct and looser set of diagnostic criteria for gender identity disorder that many of the subjects in those studies did not even meet. *Voe* Tr., 73:20-74:2; *see also* **Exhibit 12**, at 3 (Table 1).

In any event, Dr. Laidlaw does not know of any studies documenting "desistance" among adolescents or adults. *C.P.* Tr., 109:2-109:14. The Court should find Dr. Laidlaw "is not qualified, however, to offer expert opinions on the rates of desistance and 'de-transitioning' among gender dysphoric patients." *Kadel*, 620 F.Supp.3d at 369. And "anecdotal testimony concerning 'de-transitioning' … is not a reliable basis for any broader opinion about the rates of desistance, the likelihood that gender dysphoric patients will later 'de-transition,' or the general efficacy of surgical treatment for gender dysphoria." *Id.* Indeed, "reliance on anecdotal evidence" is a "red flag[] that caution[s] against certifying an expert." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012).

### 7. Laidlaw's opinions about WPATH and the Standards of Care are unreliable.

Dr. Laidlaw opines about the development of the *Standards of Care for the Health of Transgender and Gender Diverse People, Version 8* ("SOC8"), published by the World Professional Association for Transgender Health ("WPATH"). Laidlaw Report, ¶¶79-90. But Dr. Laidlaw has never participated in the development or promulgation of any clinical practice guideline, nor has he ever conducted a systematic review or original study pertaining to the development or quality of clinical practice guidelines. *Voe* Tr., 93:15-17, 94:13-16. He is also not

PLAINTIFFS' MOTION TO EXCLUDE EXPERT
TESTIMONY OF MICHAEL K. LAIDLAW, MD – 9
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

a member of WPATH and did not participate in the development of SOC8. *Id.*, 93:9-14. Here again, Dr. Laidlaw's opinion is based solely on his mere say-so and speculation. Opinions based on "subjective belief or unsupported speculation not validated by any known facts or inferences presented to the court and are [] unreliable and inadmissible under the *Daubert* standard." *Trail v. Civ. Eng'r Corps., U.S. Navy, Naval Facilities Eng'g Command*, 849 F.Supp. 766, 768 (W.D. Wash. 1994); *cf. Kadel*, 620 F.Supp.3d at 369-70. Because he has no "experience with … WPATH … upon which to base his criticisms," "[h]e is therefore not qualified to testify about the credibility of th[at] organization[]." *Kadel*, 620 F.Supp.3d at 365.

Dr. Laidlaw's opinions about WPATH's SOC8 are also unreliable because he applies inconsistent standards and methodologies when evaluating the recommendations made about treatment of gender dysphoria in minors, depending on the source. Dr. Laidlaw faults WPATH for not grading SOC8's recommendations.[5] However, Dr. Laidlaw relies on and cites to the Cass Report in England, the guidelines published by an entity in Sweden, and the recommendations made by an entity in Finland, each of which make recommendations regarding gender-affirming medical care for minors. Laidlaw Report, ¶¶123-29. However, none of these documents graded the quality of the evidence as to their recommendations. *Voe* Tr., 96:12-22, 99:24-100:1, 100:24-101:3. Dr. Laidlaw also fails to disclose or even discuss that it is not uncommon for clinical practice guidelines to deviate from the GRADE standards. *Voe* Tr., 104:22-105:2.

### 8.  Laidlaw's opinions about treatment paradigms in other countries are irrelevant and unreliable.

Dr. Laidlaw's opinions about the treatment of gender dysphoria in other countries are both misleading and wholly irrelevant. Laidlaw Report, ¶¶123-29. Not only do each of these countries *provide and cover* gender-affirming medical treatment for gender dysphoria for adolescents in appropriate circumstances, but how care is provided and covered in countries with nationalized

---

[5]  WPATH transparently stated that "[o]nce the statements passed the Delphi process, chapter members graded each statement using a process adapted from the Grading of Recommendations, Assessment, Development and Evaluations (GRADE) framework." **Exhibit 13**, at S250.

PLAINTIFFS' MOTION TO EXCLUDE EXPERT
TESTIMONY OF MICHAEL K. LAIDLAW, MD – 10
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

health care systems is not relevant to whether Premera's decision not to cover gender-affirming chest surgery is discriminatory.  Dr. Laidlaw agreed, when asked about care in the United Kingdom:

> Well, that's a different question. Now we're talking about United Kingdom, socialized health system, which, by nature, they have their own set of data and things that they're looking at.

*Voe* Tr., 127:20-128:4.  Moreover, Dr. Laidlaw fails to discuss other countries where such care is available, like Australia, Belgium, Denmark, Netherlands, and Spain.  **Exhibit 14.**

### 9.    Laidlaw's opinions are unreliable because they are outside the medical mainstream.

General acceptance in the relevant scientific community is an important element to the reliability inquiry.  *See Carnegie Mellon Univ. v. Hoffmann-LaRoche, Inc.*, 55 F.Supp.2d 1024, 1031–32 (N.D. Cal. 1999).  Not only is widespread acceptance an important factor in assessing the reliability of an expert's opinions, but the fact that a known theory "has been able to attract only minimal support within the community may properly be viewed with skepticism."  *Daubert*, 509 U.S. at 594.  Here, Dr. Laidlaw's opinions are outside the mainstream of medical and scientific opinion and have been explicitly rejected by these relevant communities.  Even Dr. Laidlaw acknowledges that his "opposition to gender-affirming care for the treatment of gender dysphoria in youth and adults is contrary to the vast majority of medical associations' recommendations." *Dekker* Tr., 25:22-26:1, 29:16-36:18; *see also Edmo*, 935 F.3d at 769; Nat'l Acad. of Sciences, Engineering, and Medicine, *Understanding the Well-Being of LGBTQI+ Populations* (2020), at 361, https://bit.ly/3zf0slx.

### 10.    Laidlaw's opinions are unreliable because they are biased.

Dr. Laidlaw's testimony appears to be motivated by his personal views regarding transgender people.  And while Plaintiffs do not seek to impugn or malign whatever moral or personal views Dr. Laidlaw may hold, to the extent these views have influenced his purported expert opinions—and they seem to be the motivating factor—that is something the Court must consider.  *See State v. Heinz*, 485 A.2d 1321, 1328 (Conn. App. 1984).

PLAINTIFFS' MOTION TO EXCLUDE EXPERT
TESTIMONY OF MICHAEL K. LAIDLAW, MD – 11
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

Not only does Dr. Laidlaw oppose affirmation of a transgender person's identity in any circumstances (*Dekker* Tr., 39:22-40:19, 87:15-87:21) and has repeatedly misgendered transgender litigants (*e.g.*, *C.P.* Tr., 13:19-14:6, 186:1-187:10), he has also made the following statements:

- Speaking of the "very troubling life of transgenderism," **Exhibit 15**;
- Referring to gender-affirming medical care provided by Dr. Olson-Kennedy as "child transing experiments," **Exhibit 16**;
- Stating that: "The physician who blocks normal puberty and places the child on a pathway to sterility - which is what happens in the majority of cases - is a criminal," **Exhibit 17**;
- Referring to gender-affirming medical care as "insanity," **Exhibit 18**;
- Titling one of his publications "The gender identity phantom," Exhibit B to Laidlaw Report.

These statements show that Dr. Laidlaw's opinions are so permeated by negative attitudes at best, and bias and prejudice at worst, as to render them unreliable. They also illustrate how Dr. Laidlaw's opinions have "a greater potential to mislead than to enlighten" and thus "should be excluded." *In re Lipitor*, 892 F.3d at 632. Indeed, Dr. Laidlaw is a bounteous advocate against gender-affirming medical care. *See Voe* Tr., 147:20-149:1.

**D.    Dr. Laidlaw May Not Offer Any Opinions as to Plaintiff J.M.**

Dr. Laidlaw did not submit any supplemental or rebuttal reports and did not offer any opinions as to Plaintiff J.M. in his expert report. Laidlaw *A.B.* Dep., 117:16-118:4. Accordingly, he should be precluded from offering any opinions as to Plaintiff J.M., as required by Federal Rule of Civil Procedure 37(c)(1). *See Jennings-Moline v. DePuy Orthopaedics, Inc.*, 2024 WL 249168, at *2 (D. Idaho Jan. 23, 2024); *see also Ford v. I.Q. Data Int'l, Inc.*, 2024 WL 4069177, at *1 (W.D. Wash. Sept. 5, 2024) (Zilly, J.) (excluding testimony regarding topics not set forth in either expert report or deposition testimony).

PLAINTIFFS' MOTION TO EXCLUDE EXPERT
TESTIMONY OF MICHAEL K. LAIDLAW, MD – 12
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

**E.    Dr. Laidlaw's Opinions Lack Probative Value and Are Therefore Inadmissible.**

The Court should exclude Dr. Laidlaw's testimony because its introduction will result in unfair prejudice, confusion of the issues, or in misleading testimony.  Fed. R. Evid. 403.  Dr. Laidlaw offers opinions irrelevant to the issues in this case, speculative, and unreliable.  His testimony would thus result in prejudice, as it seeks to sow confusion through misleading and biased opinions.

## IV.  CONCLUSION

For the foregoing reasons, the Court should exclude Dr. Laidlaw's report, opinions, and testimony.

DATED:  January 29, 2025

*I certify that the foregoing contains 4,180 words, in compliance with the Local Civil Rules.*

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC

    */s/ Eleanor Hamburger*
Eleanor Hamburger (WSBA #26478)
Daniel S. Gross (WSBA #23992)
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303; Fax (206) 223-0246
Email:  ehamburger@sylaw.com
          dgross@sylaw.com

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.

 */s/Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan, *pro hac vice*
120 Wall Street, 19th Floor
New York, NY 10005
Tel. (212) 809-8585; Fax (212) 809-0055
Email: ogonzalez-pagan@lambdalegal.org

PLAINTIFFS' MOTION TO EXCLUDE EXPERT
TESTIMONY OF MICHAEL K. LAIDLAW, MD – 13
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
Kell L. Olson (Admitted Pro Hac Vice)
3849 E Broadway Blvd #136
Tucson, AZ 85716
Tel. (323) 370-6915
Email:  kolson@lambdalegal.org

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
Sasha Buchert (Admitted Pro Hac Vice)
111 K Street NE, 7th Floor
Washington DC 20002
Tel. 503-688-8071
Email: sbuchert@lambdalegal.org

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
Nicholas Hite (Admitted Pro Hac Vice)
3500 Oak Lawn Ave., Suite 500
Dallas, TX 75219-6722
Tel. (214) 219-8585
Email: nhite@lambalegal.org

*Attorneys for Plaintiffs*

PLAINTIFFS' MOTION TO EXCLUDE EXPERT
TESTIMONY OF MICHAEL K. LAIDLAW, MD – 14
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246