UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| L.B. and M.B., on behalf of their minor child A.B., and on behalf of similarly situated others; L.B.; M.B., C.M. and A.H., on behalf of their minor child J.M., and on behalf of similarly situated others; C.M.; and A.H.,<br><br>Plaintiffs,<br><br>v.<br><br>PREMERA BLUE CROSS,<br><br>Defendant. | NO. 2:23-cv-00953-TSZ<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DAN H. KARASIC, M.D.**<br><br>**Noted on Motion Calendar: March 14, 2025** |

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO EXCLUDE TESTIMONY OF DAN H. KARASIC, M.D.
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................1

II. ARGUMENT .........................................................................................................1

    A. Legal Standard. ...........................................................................................1

    B. Dr. Karasic Is Highly Qualified. ..................................................................2

    C. Dr. Karasic's Opinions Are Based on Generally Accepted
       Medical Evidence..........................................................................................3

    D. Dr. Karasic's Methodology Is Reliable and Helpful to the Trier
       of Fact. .........................................................................................................5

    E. Dr. Karasic's Opinions Are Supported by the Literature. ............................8

    F. Dr. Karasic's Opinions on Medical Necessity of A.B. and J.M.'s
       Treatment Are Reliable...............................................................................10

    G. Dr. Karasic's Opinions Are Not Limited to Rebuttal Testimony ...............11

III. CONCLUSION....................................................................................................12

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO EXCLUDE TESTIMONY OF DAN H. KARASIC, M.D. – ii
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

## I. INTRODUCTION

Premera moves to exclude the testimony of Plaintiffs' expert, Dan H. Karasic, M.D., a psychiatrist, as "unreliable" and not meeting the requirements of admissibility. Dkt. 104, p. 1. Premera is wrong. Dr. Karasic's testimony is relevant, reliable and therefore admissible as found and credited by numerous courts. *See C.P. v. Blue Cross Blue Shield of Ill.*, No. 3:20-cv-06145-RJB, 2022 U.S. Dist. LEXIS 210769, at *5 (W.D. Wash. Nov. 21, 2022); *Brandt v. Rutledge,* 677 F.Supp.3d 877, 886 (E.D. Ark. 2023); *K.C. v. Individual Members of the Med. Licensing Bd. of Ind.*, 677 F.Supp.3d 802, 817 n.4 (S.D. Ind. 2023); *Dekker v. Weida,* 679 F.Supp.3d 1271, 1286 (N.D. Fla. 2023); *Doe v. Ladapo*, 737 F.Supp.3d 1240, 1275 n.117 (N.D. Fla. 2024), among others. He will offer primary and rebuttal testimony about the recommended treatment guidelines for gender dysphoria and the necessity, safety, and efficacy of gender-affirming care, namely, chest surgery, in general, as well as for A.B. and J.M.

Dr. Karasic is qualified, and his testimony is relevant and reliable, such that the Court should deny Premera's motion to exclude his testimony.

## II. ARGUMENT

### A. Legal Standard.

"Federal Rule of Evidence 702 governs the admission of expert opinion testimony." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006). To determine admissibility, "a court must determine that the experts are qualified, that their opinions are reliable, and that their testimony fits the case." *Allen v. Am. Cap. Ltd.*, 287 F.Supp.3d 763, 776 (D. Ariz. 2017). This is a flexible analysis. *Id.* The purpose is not to assess the "correctness of the expert's conclusions but the soundness of [their] methodology." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995).

"When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the [factfinder] decides how much weight to give that testimony." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). "Reliable expert testimony need only be relevant, and

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO EXCLUDE TESTIMONY OF DAN H. KARASIC, M.D. – 1
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

need not establish every element that the plaintiff must prove, in order to be admissible." *Id.* "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Sandoval-Mendoza*, 472 F.3d at 654 (cleaned up). "A trial court should admit medical expert testimony if physicians would accept it as useful and reliable." *Id.* at 655. "Shaky but admissible evidence is to be attacked by vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof, not exclusion." *Bluetooth SIG, Inc. v. FCA US LLC*, 468 F.Supp.3d 1342, 1345 (W.D. Wash. 2020) (cleaned up).

**B.    Dr. Karasic Is Highly Qualified.**

Dr. Dan H. Karasic is a board-certified psychiatrist with over 30 years of experience working with patients with gender dysphoria. Dkt. 100-15, ¶¶3–6, *Exh. A*. Over the past 30 years, Dr. Karasic has diagnosed and provided care to thousands of transgender patients including many who were, at the time of treatment, under age 18. Dkt. 100-15, ¶6; *see also C.P.*, 2022 U.S. Dist. LEXIS 210769, at *5. In addition, Dr. Karasic was the co-lead and co-founder of the UCSF Alliance Health Project's transgender health practice in 2011, and the psychiatrist for the Dimensions Clinic for transgender youth in San Francisco for 17 years. Dkt. 100-15, ¶¶6, 11; *Exh. A,* at 2.

Dr. Karasic is a co-author of Versions 7 and 8 of the WPATH *Standards of Care*, including as co-lead author of Version 8's chapter on Mental Health. Dkt. 100-15, ¶7. Dr. Karasic also co-authored the mental health section for both editions of the *Guidelines for the Primary and Gender-Affirming Care of Transgender and Gender Nonbinary People* published by UCSF, and edited the book *Sexual and Gender Diagnoses of the Diagnostic and Statistical Manual (DSM): A Reevaluation*. Dkt. 100-15, ¶¶12–13. Finally, Dr. Karasic has published over a dozen peer-reviewed articles, including multiple focused on the diagnosis and treatment of gender dysphoria and on gender dysphoric adolescents. *Id., Exh. A* at 16–17.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO EXCLUDE TESTIMONY OF DAN H. KARASIC, M.D. – 2
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

In addition to *C.P.*, *Brandt*, *K.C.*, *Dekker* and *Doe v. Ladapo*, multiple other courts have specifically credited and cited Dr. Karasic's expert testimony. *See*, *e.g.*, *Kadel v. Folwell*, 620 F.Supp.3d 339 (M.D.N.C. 2022), *aff'd*, 100 F.4th 122 (4th Cir. 2024); *Fain v. Crouch*, 618 F.Supp.3d 313, 322 (S.D.W. Va. 2022), *aff'd sub nom. Kadel*, 100 F.4th 122. (4th Cir. 2024). Premera does not challenge Dr. Karasic based upon his qualifications. *See* Dkt. 104.

### C. Dr. Karasic's Opinions Are Based on Generally Accepted Medical Evidence.

Premera argues that Dr. Karasic's opinions should be excluded because the medical and scientific studies he relies on are purportedly of "low quality," without citation to any authority supporting their argument for exclusion. Dkt. 104, pp. 3–4. But as Dr. Karasic explains, "[t]his argument is misleading at best and highly facetious." Dkt. 100-16, ¶25.

In its argument, Premera alludes to the grading of evidence *based on study design*, presumably based on the GRADE system or the ASPS's own scale. But under either scale, "high quality" refers to randomized clinical controlled trials. Dkt. 100-15, ¶93; Dkt. 100-18, ¶35; Hamburger Decl., *Exh. 20*. Under these grading systems, "a 'low-quality' grade in medical care does not equate to poor or unreliable evidence in the colloquial sense." Dkt. 100-18, ¶36; Dkt. 100-15, ¶¶93–94.

True, "[t]here are no randomized controlled clinical trials evaluating the efficacy of gender-affirming medical care for adolescents." *Brandt v. Rutledge*, 677 F.Supp.3d 877, 901 (E.D. Ark. 2023). Randomized controlled clinical trials are "not possible because it would not be ethical or feasible to have a study in which a control group is not provided treatment that is known from clinical experience and research to benefit patients," and it "would not be possible to blind the studies to researchers and participants given the obvious physical effects of the treatments." *Id.* at 902; *see also* Dkt. 100-15, ¶¶93–94; Dkt. 100-19, ¶¶74–76; Dkt. 100-18, ¶¶37–39. "Indeed, the body of evidence in the scientific and medical literature, as well as the decades of clinical experience with this medical care, demonstrates that gender-affirming medical care, including gender affirming surgeries for adolescents, is well-established, safe, and effective, and is as robust

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO EXCLUDE TESTIMONY OF DAN H. KARASIC, M.D. – 3
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

if not more so than the body of evidence supporting common treatments for other medical conditions." Dkt. 100-15, ¶94; *see also* Hamburger Decl., *Exh. 1*, 184:14–185:3.

> [T]he fact that research-generated evidence supporting these treatments gets classified as "low" or "very low" quality on the GRADE scale does not mean the evidence is not persuasive, or that it is not the best available research-generated evidence on the question of how to treat gender dysphoria, or that medical treatments should not be provided consistent with the research results and clinical evidence.

*Dekker v. Weida*, 679 F.Supp.3d 1271, 1293 (N.D. Fla. 2023). Indeed, "[i]t is common for clinical practice guidelines in medicine to make recommendations based on low or very low-quality evidence such as cross-sectional and longitudinal studies." *Brandt*, 677 F.Supp.3d at 902; *see also Koe v. Noggle*, 688 F.Supp.3d 1321, 1353 (N.D. Ga. 2023); Dkt. 100-19, at ¶ 75.

"Challenges with certainty of evidence are not unique to interventions for gender dysphoria." Hamburger Decl., *Exh.* 4, at 33. "[L]ess than 15 percent of medical treatments are supported by 'high-quality evidence,' or in other words that 85 percent of evidence that guides clinical care, across all areas of medicine, would be classified as 'low-quality,'" if Premera's argument were accepted. *Koe*, 688 F.Supp.3d at 1353; *see also Dekker*, 679 F.Supp.3d at 1293; Dkt. 100-16, at ¶¶26–28. Accordingly, "GRADE recommendations do not require high-certainty evidence." Hamburger Decl., *Exh. 4*, at 33. Rather, recommendations can be made even when "only evidence with very low certainty is available," because clinical expertise "can supplement gaps in the evidence." *Id.* "[D]ecision-makers must still act" even when the graded quality of evidence is low. *Id.*

Premera relies on similar "low quality evidence" to justify coverage of chest surgeries for non-transgender minors with gynecomastia. *See* Dkt. 46-5, p. 9 of 15 (Premera acknowledges that "[n]one of the studies [on the treatment of gynecomastia] were randomized, all were judged to be at high risk of bias, and the body of evidence was determined to be of very low quality by GRADE … evaluation."). The notion that gender-affirming chest surgery should not be covered or that Dr. Karasic's opinions should be excluded because he relies on longitudinal and cross-sectional research studies, along with clinical experience, and "the supporting research's GRADE score is a

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO EXCLUDE TESTIMONY OF DAN H. KARASIC, M.D. – 4
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

misuse of the GRADE system." *Dekker*, 679 F.Supp.3d at 1293–94 (such clinical evidence is persuasive, even if the research is graded only as "low" or "very low" under GRADE).

Ultimately, Premera's arguments go to weight of Dr. Karasic's opinions and not to their admissibility.

### D. Dr. Karasic's Methodology Is Reliable and Helpful to the Trier of Fact.

Dr. Karasic's opinions rely on his more than 30 years of clinical experience caring for transgender patients; his review and familiarity with relevant peer-reviewed literature, including his own, regarding gender confirming surgeries, which reflects the clinical advancements in these procedures and the corresponding growth in research related to the safety and effectiveness of these procedures in treating gender dysphoria; and his discussions with colleagues and other experts in the field, including attendance and participation in various educational conferences both nationally and internationally. Dkt. 100-15, ¶¶5–15, 20–21.

Dr. Karasic properly relies on clinical practice guidelines published by WPATH and the Endocrine Society pertaining to the treatment of gender dysphoria in adolescents and adults. *Id.* at ¶¶31–33. These guidelines, which are peer-reviewed, are widely accepted and considered authoritative by the major medical organizations in the United States. *Id.* at ¶34; *see also Edmo v. Corizon, Inc.*, 935 F.3d 757, 769, 788, n.16, 795 (9th Cir. 2019) (WPATH is "the gold standard on this issue"); *Kadel v. N. Carolina State Health Plan for Tchrs. & State Emps.*, 12 F.4th 422, 427–28 (4th Cir. 2021), as amended (Dec. 2, 2021), *cert. denied*, 142 S. Ct. 861 (2022); *Dekker*, 679 F.Supp.3d at 1284; *C.P.*, 2022 U.S. Dist. LEXIS 210769, at *5 n.1. Even ASPS, relied upon by Premera, agrees. Dkt. 100-19, ¶¶18–19 (WPATH guidelines described as "high standards"). Premera, at least prior to this litigation, did as well. Dkt. 46-2. So do most other Washington insurers. Dkt. 46-6.

Furthermore, Dr. Karasic reviews at length the scientific literature pertaining to gender-affirming chest surgery for transgender adolescents. *See, e.g.*, Dkt. 100-15, ¶¶54–84. Premera argues that because each study has limitations, Dr. Karasic's opinions should be excluded. But

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO EXCLUDE TESTIMONY OF DAN H. KARASIC, M.D. – 5
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

every study has limitations – that does not make the research unreliable. As Plaintiffs' experts have explained, "[w]hile every study has limitations, we must consider the body of literature as a whole." Dkt. 100-19, ¶72. "Not only do we consider the literature *en masse*, but we must also account for our own clinical experience and that of our colleagues, as well as our patients' experiences and input." *Id.*; *see also* Dkt. 100-17, ¶74.

In any event, Premera's critique is unfounded. The RAND Systematic Review, the most recent, comprehensive, and rigorous evaluation of treatment for gender dysphoria for adolescents, confirmed the reliability of the evidence:

> The evidence for mastectomy represented a larger number of studies, with minimal imprecision or inconsistency and lower risk of bias …; mastectomy was also the only gender dysphoria outcome for this intervention category [*i.e.*, gender-affirming surgeries] with a clear evidence base for adolescents.

Hamburger Decl., *Exh. 4,* p. 26. Indeed, the studies upon which Dr. Karasic relies are the same kinds of studies upon which Premera, other insurers, or other clinical practice guidelines rely.

Premera criticizes Dr. Karasic for relying on the Olson-Kennedy et al. (2018) study because it used a novel scale to measure chest-related gender dysphoria which was developed for that study. But face validity (the degree to which a test measures what it intends to) for that scale had been confirmed. Hamburger Decl., *Exh. 5,* 143:4–8; Dkt. 111-20, at 433. And since the Olson-Kennedy study was published, multiple other studies have utilized the same scale, further validating it through replication. *See* Dkt. 100-18, ¶¶68–69; Hamburger Decl., *Exhs. 6–7*. Indeed, the Olson-Kennedy study is a seminal study in this area and was included within the Miroshnychenko et al. review[1] upon which Premera relies. Dkt. 81-3, Exh. 24.[2]

Premera also argues that the studies are not good enough because of small sample size. But given how small the transgender population is, small sample size will always be a limitation

---

[1] Premera refers to it as the McMaster University review.

[2] The study was not included within the Hayes Review, which only looked at *three* studies and excluded all others. Dkt. 81-2, Exh. 21. By contrast, the RAND and the Miroshnychenko reviews looked at significantly more studies, including the Olson-Kennedy study.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO EXCLUDE TESTIMONY OF DAN H. KARASIC, M.D. – 6
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

when considering the effectiveness of treatment for gender dysphoria.[3]  *See* Dkt. 100-18, ¶45. Concerns about sample size are relevant only if it prevents a study from being sufficiently powered to conduct statistical analyses, and in each of the quantitative studies here, the sample sizes were sufficient to make statistically significant findings. Hamburger Decl., *Exh. 9,* 106:1–19.[4]

Premera complains about the length of follow-up periods in some studies. But the length of follow-up in these studies is comparable to those for these surgeries in cisgender adolescents. *See* Dkt. 46-5, pp. 11–12 of 15. And, the follow-up periods (which range from several months to several years in the studies critiqued by Premera, Dkt. 106, p. 6) are sufficient to gauge both the physical effects as well as regret. Hamburger Decl., *Exh. 5,* 147:12–24, 153:12–154:3. Moreover, Premera omits that the Olson-Kennedy study included several subjects for which the follow-up ranged from two to five years. Dkt. 111-20. Dr. Karasic also relies on his clinical experience, in which he has found a dramatic decrease in chest dysphoria after gender-affirming chest surgery. *Id., Exh. 11,* 44:24–45:10.

Finally, Premera criticizes Dr. Karasic for considering studies that included minor adolescents and young adults. A study's validity is not undermined when considers both adolescents and young adults. ***First,*** the diagnosis here is "Gender Dysphoria in Adolescents and Adults;" it makes no distinction based on age. Dkt. 100-15, ¶35; Dkt. 100-21, ¶23. ***Second***, the age of 18 has no medical relevance. *See* Hamburger Decl., *Exh. 5,* 71:21–72:12, 103:6–104:8; *Exh. 8,* 120:21–121:3; *Exh. 9,* 113:22–114:14; *Exh. 11,* 173:9–14. Age does not affect the efficacy of gender-affirming chest surgery; if anything, "[p]atients aged 18 or younger opting for chest masculinization surgery experience fewer complications and revision procedures while having higher satisfaction rates with the surgical outcome." Hamburger Decl., *Exh. 10,* p. 1 ; Dkt. 100-17, ¶¶56–58; Dkt. 100-18, ¶72. Even Defendants' experts concede that there is no relevant medical

---

[3] Use of systematic reviews and meta-analyses can account for this challenge. *See* Hamburger Decl*., Exh. 4*, pp. v–vi, 26.

[4] Sample size is not a matter of concern for *qualitative* studies like Mehringer et al. Hamburger Decl., *Exh. 8,* 145:23–146:1.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO EXCLUDE TESTIMONY OF DAN H. KARASIC, M.D. – 7
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

difference between someone who is 17 and someone who is 18; care depends instead on patients' individualized circumstances. *See*, *e.g.*, *Id., Exh. 12,* 171:12–16; *Exh. 13,* 115:11–15; *Exh. 14,* 60:9–61:9.

Premera's arguments reveal the disparate way that it treats transgender patients. Premera's policy on gynecomastia looks at studies with similarly small sample sizes, comparable follow-up periods, and that equally included adults. *See* Dkt. 46-5, pp. 8–9 of 15; *see also* Hamburger Decl., ¶2; *Exhs. 15–19*. Despite considering studies of adolescents and adults, with similar follow up periods, and small sample size, Premera reached a conclusion that similar chest surgery was appropriate for cisgender male adolescents. *See id.* Yet, Premera argues that the same approach is impermissible when applied to treatment for transgender minors. Premera's arguments here are pure pretext.

Dr. Karasic relies on the whole of the medical literature (and not any individual study), as well as his vast clinical experience as a surgeon. These "form an appropriate scientific basis for [an expert's] opinions." *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1198 (9th Cir. 2014); *see C.P.*, 2022 U.S. Dist. LEXIS 210769, at *5.

E.  **Dr. Karasic's Opinions Are Supported by the Literature.**

Premera argues that Dr. Karasic's opinions are not supported by the literature because he cites to WPATH SOC-8 and ignores decisions by European systems or organizations. Dkt. 104, p. 8. But decisions by European national health systems are irrelevant here. Under Premera's definition of "medical necessity" the insurer looks to "generally accepted standards of medical practice"[5] and, as Premera's experts admit, WPATH is the prevailing medical guideline for gender affirming care utilized by providers and insurance companies across the United States. Dkt. 100-2, pp. 79:25–80:23; Dkt. 100-3, p. 55:6–9; Dkt. 100-1, pp. 90:4–91:7; Dkt. 100-4, pp. 77:9–78:22; Dkt. 100–7, pp. 75:4-76:2. Dr. Karasic's opinions based on standard practice in the United States, including the WPATH guidelines, are fully supported.

---

[5] Dkt. 81-1, *Exh. 3,* p. 187 of 738.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO EXCLUDE TESTIMONY OF DAN H. KARASIC, M.D. – 8
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

Premera also claims that Dr. Karasic's opinion should be excluded because it does not expressly address (a) the Cass Review; (b) the ASPS August 2024 press statement; (c) the Hayes Review commissioned by Premera; and (d) the Miroshnychenko review. *Id.,* p. 8. Not only does "whether Plaintiffs' experts ignored contrary evidence or opinions do not necessarily make them unreliable – those issues are best left for the fact finder," *C.P.,* 2022 U.S. Dist. LEXIS 210769, at *5, but Premera is wrong on every count.

**First,** Premera misleads as to the Hayes and Cass reviews. Dr. Karasic considered the Hayes Review in his initial report, but it did not impact his opinions. Dkt. 100-15, ¶22. Indeed, he discusses some of the very same studies addressed by the Hayes Review. *Compare* Dkt. 81-2, Exh. 21, pp. 9–13 of 25, *with* Dkt. 100-15, ¶¶68, 71, 80; Dkt. 100-16, ¶24 (discussing Tang, et al. (2022) and Mehringer, et al. (2021)). He also addressed the Cass Review in his rebuttal, noting that it had been broadly criticized as using unreliable methodology. Dkt. 100-17, ¶¶29, 34–35. At the time of Dr. Karasic's initial report, neither the Miroshnychenko review, nor the ASPS press statement had been published. Hamburger Decl., *Exh. 11,* 141:2–25. At his deposition, Dr. Karasic questioned the independence of Miroshnychenko review, since it was funded by an organization intent on banning gender-affirming treatment for minors. *Id., Exh. 11,* 145:3–148:5.

Moreover, Premera misses the mark relying on the Hayes Review. Not only did "the Hayes Review commissioned by Premera pertaining to masculinizing chest surgery for adolescents with gender dysphoria found that the literature ***supports*** its use, noting that all the studies it looked at found positive results for patient satisfaction, low complication and revision rates, and that adverse effects were minimally mild," but also Hayes states that the review is "'not intended to be used as the sole basis for determining coverage policy,' or 'as the sole basis for defining treatment protocols, or medical modalities.'" Dkt. 100-19, ¶¶73–74.

**Second,** none of these documents were relied upon by Premera when it imposed the Age-Exclusion in 2016 or at any time before the filing of this litigation. *See* Dkt. 46-2.

**Third,** all of Premera's preferred documents are not "contrary original research" nor are they "contrary evidence." Rather, Cass, Hayes and Miroshnychenko are reviews of existing

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO EXCLUDE TESTIMONY OF DAN H. KARASIC, M.D. – 9
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

literature based on the same body of research that Dr. Karasic and Plaintiffs' other medical experts consider. *See C.P.,* 2022 U.S. Dist. LEXIS 210769, at *5. Since none are original research, there is no reason why Dr. Karasic should have cited them.

***Fourth,*** neither the Cass Review nor the ASPS press statement are the type of peer-reviewed scientific literature relied upon by experts in this field. As Premera's experts concede, the Cass Review has not been subject to peer-review. Dkt. 126-1, pp. 74:23–75:1; *see C.P.,* 2022 U.S. Dist. LEXIS 210769, at *5 (expert opinions are not rendered unreliable if they do not consider documents that are not peer-reviewed, or original research). And the ASPS statement is a ***press statement***, not a study or peer-reviewed publication. Dkt. 100-20, ¶¶18–19.

***Fifth,*** the Cass Review is irrelevant to this case. It does not address gender-affirming chest surgery at all – it does not explore the literature related to chest surgery or make any recommendations regarding it. Hamburger Decl., *Exh. 5,* 125:7–14, 126:2–3; *Exh. 11,* 94:1–5. Premera's experts agree that: (1) it does not address surgery; (2) its application is limited to the United Kingdom, and (3) it is not a medical standard of care and "was never intended to be utilized in that way." Dkt. 116-1, 94:25–95:1, 107:18–24; *see also* Dkt. 118-2, 114:10–12; Dkt. 122-1, 166:23–167:2, 167:7–9; Dkt. 126-1, 73:14–23.

### F.  Dr. Karasic's Opinions on Medical Necessity of A.B. and J.M.'s Treatment Are Reliable.

Premera argues that Dr. Karasic's opinions regarding the medical necessity of gender-affirming chest surgery for A.B. and J.M. are unreliable because they did not take into account "pre-existing medical and mental health conditions" and did not consider "J.M.'s ambivalence." Dkt. 104, pp. 10–12. This is a litigation-driven position that has been rejected by Premera itself. It also goes to the weight of Dr. Schechter's opinions, not their admissibility.

***First***, Premera agrees that, but for the named plaintiffs' chronological age, both met all of the clinical standards for coverage of their gender affirming chest surgery. Dkt. 46-3, pp. 141:23–142:3; Dkt. 100-9. Premera's experts agree. Dkt. 100-4, pp. 68:13–25, 113:1–9; Dkt. 100-5, p. 54:12–24; *cf.* Dkt. 100-7, p. 184:17–21. J.M. had no genuine ambivalence regarding accessing

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO EXCLUDE TESTIMONY OF DAN H. KARASIC, M.D. – 10
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

gender-affirming chest surgery, as reflected by his participation in this case and the surgery he received shortly after turning 18. *See* Dkt. 100-9. While Premera's litigation experts articulate many(baseless) objections to the surgeries, none were the basis for the denials by Premera. Premera denied only based on plaintiffs' chronological age – nothing else. *See* Dkt. Nos. 46-3, pp. 141:23–142:3; 46-19; 46-20; 46-22; 46-23. Premera's claims to the contrary are baseless.

**Second,** any purported omission of these issues does not render Dr. Karasic's testimony unreliable. "The reliability test is not the correctness of the expert's conclusions but the soundness of [their] methodology." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1189 (9th Cir. 2019). Ultimately, the factfinder decides how much weight to accord the testimony. *Id.*

**Third,** Dr. Karasic, who actually met with A.B., addressed these issues in his reports. *See* Dkt. 100-15, ¶¶113–114, 131; Dkt. 100-16, ¶¶36–40; Hamburger Decl., *Exh. 3*, ¶¶19, 28. Nothing in the generally accepted standard of care (nor Premera's own guidelines) limits gender affirming care when mental health conditions like ADHD or anxiety are present. *Id.*

## G. Dr. Karasic's Opinions Are Not Limited to Rebuttal Testimony

Premera argues that Dr. Karasic's opinions must be limited to rebuttal testimony only, even though his report was timely and properly disclosed as primary expert testimony. Dkt. 104, p. 13.

It is correct that the Court does not need expert testimony to determine whether Premera's Age-Exclusion is a form of facial *sex* discrimination. *Id.* If the Court concludes that is the case, then no expert testimony – from either party – is needed.

But expert testimony is required to address whether or not Premera's Age-Exclusion is illegal age-discrimination. There can be no doubt that the Age-Exclusion is facial discrimination based on age – based on the express language of the Exclusion – coverage is allowed for people over 18 but excluded for people under 18. But under federal law, facial age discrimination can be permitted in a very narrow exception: the four-part test for legitimate facial age discrimination. *See* 42 U.S.C. § 6103(b)(1); 45 C.F.R. § 91.13.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO EXCLUDE TESTIMONY OF DAN H. KARASIC, M.D. – 11
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

Plaintiffs' expert report from Dr. Karasic offers primary testimony to explain and contextualize the prevailing medical consensus in the United States and the recommended treatment guidelines for gender dysphoria, as well as the safety and efficacy of this care. *See generally* Dkt. 100-15. He further opines that the treatment received by A.B. and J.M. was well within the established standard of care and therefore "medically necessary" under Premera's contract. *Id.*; Hamburger Decl., *Exh. 3*. That testimony is required by Plaintiffs foundationally for the age-discrimination claim, and to address any arguments that Premera may make regarding the narrow four-part exception for facial age discrimination.[6] Dr. Karasic's properly disclosed primary and supplemental reports may be relied upon by Plaintiffs for their case-in-chief, for summary judgment and at trial.

### III. CONCLUSION

For the foregoing reasons, the Court should deny Premera's Motion to Exclude the testimony of Dan H. Karasic, M.D.

DATED: February 26, 2025

*I certify that the foregoing contains 4,200 words, in compliance with the Local Civil Rules.*

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC

　/s/ Eleanor Hamburger　
Eleanor Hamburger (WSBA #26478)
Daniel S. Gross (WSBA #23992)
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303; Fax (206) 223-0246
Email: ehamburger@sylaw.com
　　　dgross@sylaw.com

---

[6] The cases cited by Premera do not stand for the proposition that properly disclosed primary expert testimony can ***ever*** be limited to only rebuttal testimony. Rather, the cases hold that the converse is true – rebuttal reports with new opinions cannot be used to support the party's case-in-chief. *See Wadler v. Bio-Rad Labs., Inc.*, No. 15-cv-02356-JCS, 2016 U.S. Dist. LEXIS 143480, at *11 (N.D. Cal. Oct. 17, 2016); *Matthew Enter. v. Chrysler Grp. LLC,* No. 13-cv-04236-BLF, 2016 U.S. Dist. LEXIS 108694, at *4 (N.D. Cal. Aug. 3, 2016).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO EXCLUDE TESTIMONY OF DAN H. KARASIC, M.D. – 12
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303　FAX (206) 223-0246

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.

 /s/ Omar Gonzalez-Pagan
Omar Gonzalez-Pagan (Admitted *Pro Hac Vice*)
120 Wall Street, 19th Floor
New York, NY 10005
Tel. (212) 809-8585; Fax (212) 809-0055
Email: ogonzalez-pagan@lambdalegal.org

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
Kell L. Olson (Admitted *Pro Hac Vice*)
3849 E Broadway Blvd #136
Tucson, AZ 85716
Tel. (323) 370-6915
Email:  kolson@lambdalegal.org

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
Sasha Buchert (Admitted *Pro Hac Vice*)
111 K Street NE, 7th Floor
Washington DC 20002
Tel. 503-688-8071
Email: sbuchert@lambdalegal.org

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
Nicholas Hite (Admitted *Pro Hac Vice*)
3500 Oak Lawn Ave., Suite 500
Dallas, TX 75219-6722
Tel. (214) 219-8585
Email: nhite@lambalegal.org

*Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO EXCLUDE TESTIMONY OF DAN H. KARASIC, M.D. – 13
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246