1
2
3
4
5

### IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

6

7   L.B. and M.B., individually and on behalf
of their minor child A.B.; C.M. and A.H.,
8   individually and on behalf of their minor
child J.M.; and on behalf of others
9   similarly situated,

Case No. C23-0953-TSZ

                            Plaintiffs,

10          v.

**STATEMENT OF INTEREST BY THE
UNITED STATES OF AMERICA**

11   Premera Blue Cross,

                            Defendant.

12

13                    <u>**INTRODUCTION**</u>

14        The United States respectfully submits this Statement of Interest to address the effect of the

15   Supreme Court's recent decision in *United States v. Skrmetti*, 145 S. Ct. 1816, 1829 (2025), in this case.

16   *See* Minute Order (June 20, 2025) (ordering supplemental briefing on *Skrmetti*'s "effect, if any"), Dkt.

17   No. 176; 28 U.S.C. § 517 (authorizing the Attorney General to attend to the interests of the United States

18   as a non-party in a suit pending in any court of the United States). The United States has a strong interest

19   in the proper interpretation of federal anti-discrimination law, whether constitutional or statutory.

20        In light of *Skrmetti*, the Court should reconsider its conclusion that "Premera's medical policy

21   facially discriminates on the basis of sex" (whether "sex" is narrowly or broadly construed), Order 16,

22   Dkt. No. 169, and instead conclude that policies like the one here that classify based on a patient's age

23   and a treatment's medical use do *not* discriminate based on sex.

24

United States Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 90530
(202) 514-2000

**1.** The medical policy at issue provides coverage for certain medically necessary mastectomies or breast reduction surgeries but excludes coverage for using such procedures to treat gender dysphoria in patients under 18 years of age. *See* Order 6–7. In other words, it covers the treatments for males and females equally, but not for minors who have "a diagnosis of gender dysphoria." *Id.* The medical policy does not restrict coverage for those treatments on individuals 18 and older; nor does it prohibit coverage for those procedures to treat minors with diagnoses other than gender dysphoria. *See id.* So a minor patient may obtain coverage for medically necessary surgeries to treat other conditions, just not to treat gender dysphoria.

Premera justifies its coverage exclusion for mastectomies or breast reductions performed on minors diagnosed with gender dysphoria based on "(i) a minor's insufficient maturity 'to make a truly informed, educated decision' and 'to understand all of the ramifications of such transformation including its irreversibility,'" and (ii) a "dearth of scientifically-sound studies support[ing]" sex transition surgeries for minors. *Id.* at 7, 8 (quoting Premera medical policy).

This Court concluded that the "policy facially discriminates on the basis of sex," under either a "narrow" definition of sex or a "broader" definition of sex. Order 16–20. As to the "narrow" definition, the Court reasoned that Premera's policy "treats adolescents differently depending on whether their natal sex is male or female." Order 17–18. And as to the "broader" definition, the Court reasoned that the "policy discriminates on the basis of sex by overtly differentiating between transgender and cisgender youth or by using the proxy of gender dysphoria." Order 19–20. In support of both conclusions, the Court relied heavily on *Kadel v. Fowell*, 100 F.4th 122 (4th Cir. 2024). *See* Order 17–20.

**2.** *Skrmetti* addressed a Tennessee law, SB1, under which "a healthcare provider may administer puberty blockers or hormones to any minor to treat a congenital defect, precocious puberty, disease, or physical injury; [but under which] a healthcare provider may not administer puberty blockers or hormones to any minor to treat gender dysphoria, gender identity disorder, or gender incongruence." 145 S. Ct. at

STATEMENT OF INTEREST BY THE
UNITED STATES OF AMERICA [CASE NO. C23-0953-TSZ] - 2

United States Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 90530
(202) 514-2000

1    1830–31. The law "does not restrict the administration of [those treatments] to individuals 18 and over."

2    *Id.* at 1826. Nor does it "fully ban the administration of [the treatments] to minors. A healthcare provider

3    may administer [the treatments] to treat a minor's congenital defect, precocious (or early) puberty, disease

4    or physical injury"—but not "gender dysphoria, gender identity disorder, and gender incongruence." *Id.*

5    at 1826–27 (quotation modified).

6        Challengers argued that SB1 discriminates based on sex, in violation of the Fourteenth

7    Amendment's Equal Protection Clause. The Supreme Court disagreed, rejecting the challengers'

8    arguments that the law "classifies on the basis of sex because its prohibitions reference sex," that

9    "application of the law turns on sex," and that the law's "classifications rest on impermissible [sex]

10    stereotypes." *Id.* at 1829–32.

11        **3.** Like the law in *Skrmetti*, the medical policy here (i) does not restrict coverage for the surgical

12    procedures on "individuals 18 and over," and (ii) "does not ban fully [the coverage of such procedures

13    on] minors." *Id.* at 1827. A minor patient may obtain coverage for medically necessary procedures to treat

14    other conditions, but not to treat gender dysphoria. *See id.* (discussing definitions of "congenital defect"

15    and "disease," and exclusion of "gender dysphoria, gender identity disorder, [and] gender incongruence"

16    from those definitions (quoting the state law at issue)).

17        Therefore, like the state law in *Skrmetti*, Premera's medical policy "incorporates two

18    classifications," neither of which is a sex classification. *Id.* at 1829. First, the policy "classifies on the

19    basis of age." *Id.* Patients may obtain coverage for "certain medical treatments to individuals ages 18 and

20    older but not to minors." *Id.* Second, the policy "classifies on the basis of medical use." *Id.* Patients may

21    obtain coverage for treatments "to minors to treat certain conditions but not to treat gender dysphoria."

22    *Id.*

23        "Neither of the above classifications turns on sex." *Id.* Rather, the medical policy restricts

24    coverage for "administering [treatments] to *minors* for certain *medical uses*, regardless of a minor's sex."

STATEMENT OF INTEREST BY THE
UNITED STATES OF AMERICA [CASE NO. C23-0953-TSZ] - 3

United States Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 90530
(202) 514-2000

1    *Id.* (emphasis in original). The policy's mere "reference" to sex does not create a sex-based classification.

2    *Id.* at 1829–30. Nor does the policy's "application . . . turn[ ] on sex." *Id.* at 1829–31.

3    Rather than turning "on whether the[ patient's] natal sex is male or female," Order 17–19, the

4    medical policy (like the state law in *Skrmetti*) turns on "the underlying medical concern the treatment is

5    intended to address," 145 S. Ct. at 1830. And, "[w]hen properly understood from the perspective of the

6    indications that [the treatments] treat, [the policy] clearly does not classify on the basis of sex." *Id.* The

7    policy "does not prohibit [coverage] for one sex that it permits for the other. Under [the policy], *no* minor

8    may [obtain coverage for the treatments] to treat gender dysphoria . . . minors of *any* sex may be [obtain

9    coverage for the treatments] for other purposes." *Id.* at 1831; *see id.* at 1834–35 (explaining why

10   "changing a minor's sex or transgender status does not alter the application of" the challenged state law

11   and why "sex is simply not a but-for cause of [the law's] operation").

12   Likewise, the medical policy "does not exclude any individuals from medical treatments on the

13   basis of transgender status but rather removes one set of diagnoses—gender dysphoria . . .—from the

14   range of [coverable] conditions." *Id.* at 1833. And, because "there is a 'lack of identity' between

15   transgender status and the excluded medical diagnoses," *id.* at 1834, gender dysphoria does not function

16   as "a proxy for transgender status," Order 19–20. *See Skrmetti*, 145 S. Ct. at 1833 (citing *Geduldig v.*

17   *Aiello*, 417 U.S. 484, 496–97 & n.20 (1974)); *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228,

18   2245–46 (2022) (reasoning that abortion regulations are not sex discrimination, even though abortion is

19   "a medical procedure that only one sex can undergo"); *Marietta Mem. Hosp. Employee Health Benefit*

20   *Plan v. DaVita Inc.*, 142 S. Ct. 1968, 1973–74 (2022) (holding that an insurance plan's reimbursement

21   limit for dialysis does not violate a statute prohibiting differential treatment of "individuals having end

22   stage renal disease," even though dialysis is overwhelmingly used to treat end stage renal disease). In

23   short, treating gender dysphoria differently is not discrimination based on "transgender status" (let alone

24   sex), even though only transgender individuals suffer from it.

STATEMENT OF INTEREST BY THE
UNITED STATES OF AMERICA [CASE NO. C23-0953-TSZ] - 4

United States Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 90530
(202) 514-2000

1      Nor does *Bostock v. Clayton County* "alter [the] analysis." *Skrmetti*, 145 S. Ct. at 1834 (citing 590

2    U.S. 644 (2020)). Because "changing a minor's sex or transgender status does not alter the application of

3    [Premera's policy]," neither sex nor transgender status "is the but-for cause" of a patient's inability to

4    obtain coverage. *Id.* As the Supreme Court explained in *Skrmetti*, "sex is simply not a but-for cause of

5    SB1's operation;" rather a patient's age and a treatment's medical use are. *Id.* at 1835. So too here.

6          At bottom, it is the medical use of the treatment for minors that matters under Premera's policy,

7    not the sex of the patient. That is why the treatment would be covered for a patient with a qualifying

8    medical condition, but not for a patient without. Plaintiffs have thus not established any forbidden

9    discrimination.

10         Further driving home the significance of *Skrmetti* on the Court's prior conclusion, the Supreme

11    Court also has vacated in light of *Skrmetti* the Fourth Circuit's decision in *Kadel*, on which this Court's

12    decision primarily relied. *See Folwell v. Kadel*, No. 24-99, 2025 WL 1787687 (U.S. June 30, 2025); Order

13    15–20.

14         **4.** Lastly, *Skrmetti* recognizes the validity of concerns over providing sex transition treatments to

15    minors like those animating Premera's medical policy. *See* 145 S Ct. 1835–37. Although not a government

16    policy, and therefore not subject to the same rational-basis review as *Skrmetti* applied, the medical policy

17    nonetheless stems from serious and valid concerns about "protecting minors' health and welfare." *Id.* at

18    1836. "[O]ngoing debate among medical experts regarding the risks and benefits associated with

19    administering" the procedures at issue to minors justifies declining to cover those procedures as medically

20    necessary. *Id.* Such "open questions regarding basic factual issues before medical authorities and other

21    regulatory bodies" are a poor fit for judicial resolution in absolute terms under federal anti-discrimination

22    law. *Id.* at 1837.

23

24

STATEMENT OF INTEREST BY THE
UNITED STATES OF AMERICA [CASE NO. C23-0953-TSZ] - 5

United States Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 90530
(202) 514-2000

1                                     *      *      *

2          As with the state law at issue in *Skrmetti*, the medical policy here may "carr[y] with it the weight

3   of fierce scientific and policy debates about the safety, efficacy, and propriety of medical treatments in an

4   evolving field." *Id.* Federal anti-discrimination law "does not resolve these disagreements. Nor does it

5   afford [courts] license to decide them as [they] see best." *Id.* The Court should reconsider its conclusion

6   that "Premera's medical policy facially discriminates on the basis of sex" (whether "sex" is narrowly or

7   broadly construed), Order 16, and instead conclude that policies like the one here that classify based on

8   a patient's age and a treatment's medical use do *not* discriminate based on sex.

9

10         Dated this 7th day of July, 2025.

11                                                   Respectfully submitted,

12                                                   BRETT A. SHUMATE
                                                     Assistant Attorney General

13                                                   YAAKOV M. ROTH
                                                     Principal Deputy Assistant Attorney General

14

15                                                   /s/ *Charles E.T. Roberts*
                                                     CHARLES E.T. ROBERTS
16                                                   *Counsel to the Assistant Attorney General*
                                                     U.S. Department of Justice
17                                                   Civil Division
                                                     950 Pennsylvania Avenue, NW
18                                                   Washington, DC 20530
                                                     (202) 305-1141
19                                                   Charles.Roberts2@usdoj.gov

20                                                   *Counsel for the United States of America*

21

22

23

24