The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| L.B. and M.B., on behalf of their minor child A.B., and on behalf of similarly situated others; L.B.; M.B., C.M. and A.H., on behalf of their minor child J.M., and on behalf of similarly situated others; C.M.; and A.H.,<br><br>Plaintiffs,<br><br>v.<br><br>PREMERA BLUE CROSS,<br><br>Defendant. | NO. 2:23-cv-00953-TSZ<br><br>PLAINTIFFS' SUPPLEMENTAL BRIEFING RE: *U.S. V. SKRMETTI*<br><br>**Note for Consideration:<br>July 24, 2025** |

PLAINTIFFS' SUPPLEMENTAL BRIEFING RE: *SKRMETTI*
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

The Supreme Court's decision in *United States v. Skrmetti*, 145 S. Ct. 1816 (2025), does not control—or undercut—this case.

***First,*** the Court correctly determined that *Skrmetti* does not apply when it issued its Order. *Id.* at 19, n.8. *Skrmetti* does not involve any claim under the Affordable Care Act's ("ACA") anti-discrimination law, 42 U.S.C. § 18116 ("Section 1557"). Nor does *Skrmetti* direct the application of the Supreme Court's constitutional equal protection holding to Title IX, Title VII, the ACA, or other federal statutes. The Supreme Court expressly reaffirmed the validity of *Bostock v. Clayton County,* 590 U.S. 644 (2020). *Skrmetti,* 145 S. Ct. at 1834. Indeed, the Supreme Court specifically preserved *Bostock*'s clear holding that "it is impossible to discriminate against a person for being … transgender without discriminating against that individual based on sex." *Id.*, 590 U.S. at 660; *see Skrmetti*, 145 S. Ct. at 1834. Ultimately, *Skrmetti* only addressed a challenge to **legislative** action under constitutional equal protection, concluding that deference to the legislative process was required. It does not apply to this statutory civil rights case.

Foundational to *Skrmetti*'s reasoning was the legal fiction in *Geduldig v. Aiello*, 417 U.S. 484 (1974), that a medical condition (pregnancy) cannot be a proxy for sex (women) under constitutional equal protection. But Congress has expressly and repeatedly rejected this fiction in the statutory context, including the ACA. Neither the reasoning of *Skrmetti*, nor the Fourteenth Amendment's limitations apply here.

***Second,*** context matters here. This case must be interpreted in light of the ACA's purpose and Congressional intent. *See King v. Burwell,* 576 U.S. 473, 498 (2015). The central purpose of the ACA is to protect Americans from health insurance discrimination in the form of exclusions and limitations based on the medical conditions or the health services used by a class of people. *See*, *e.g., Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 949, 958 (9th Cir. 2020). Consistent with that purpose, where a particular treatment or condition associated with a protected characteristic is excluded, courts may consider proxy discrimination—even when a proxy is alleged to be based on a medical condition or service. *See id.* at 954. Extending *Skrmetti*'s

PLAINTIFFS' SUPPLEMENTAL BRIEFING RE: *SKRMETTI* – 1
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

reasoning to the ACA would undermine the ACA's protections and create a "transgender exception" to its protections; neither is consistent with the ACA's statutory purpose and plain text.

**Third,** even if *Skrmetti* were to apply—and it does not—the undisputed evidence here shows that Premera discriminates facially based on transgender status and therefore sex, and not just on a medical procedure. This Court properly concluded that Premera's Medical Policy No. 7.01.557 Gender Transition Affirmation Surgery and Related Services policy ("GTAS Policy") is facially based on sex and transgender status because Premera denies coverage for the same surgical procedure based on sex assigned at birth. Dkt. No. 169 at 18 ("Pursuant to the 'explicit terms' ... of Premera's medical policy, breast reductions performed for gender-affirming reasons are potentially available to [natal] males under the age of eighteen, but not to [natal] females under the age of 18."). The Court correctly held that this is "textbook sex discrimination." *Id.* The Court should enter the stipulated judgment in this matter without further delay.[1]

### A.   *Skrmetti*'s Reasoning Does Not Apply to Plaintiffs' Section 1557 Claim.

The Constitution sets a floor, not a ceiling—federal statutes like the ACA may establish civil rights that rise above that established under the Constitution. *Cf. Van Wyhe v. Reisch*, 581 F.3d 639, 651 (8th Cir. 2009); *Mayweathers v. Newland*, 314 F.3d 1062, 1070 (9th Cir. 2002). For that reason, the Court properly concluded, even before *Skrmetti* was issued, that the decision would have no impact on this ACA case. Dkt. No. 169 at 19, n.8. The Court's prescient conclusion remains correct.

*Skrmetti* was focused on what the Supreme Court determined to be a facially neutral classification that required "reconcil[ing] the principle of equal protection with the reality of legislative classification," noting that courts afford "wide latitude" to a legislative classification, subject to only a highly deferential "rational basis" review unless the classification was afforded a "heightened" level of scrutiny. 145 S. Ct. at 1828. Based on *Geduldig*, the Supreme Court concluded

---

[1] Premera's request for supplemental briefing, Dkt. No. 175, is an improper and untimely motion for reconsideration. *See* LCR 7(h)(2). Such reconsideration may be rejected based on this ground alone. *Chang v. Vanderwielen*, No. C22-0013-SKV, 2023 U.S. Dist. LEXIS 65993, at *2 (W.D. Wash. Apr. 14, 2023).

PLAINTIFFS' SUPPLEMENTAL BRIEFING RE: *SKRMETTI* – 2
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

that Tennessee's law classified only based on age and medical use, not sex or transgender status. Such is not the case here. *See infra.*

*Skrmetti* (and *Geduldig*) have no application in the statutory context. Congress can—and has—passed legislation that reflects the understanding that utilizing medical use or diagnosis classifications as proxies for sex discrimination is unlawful. Following the Supreme Court's decision in *General Elec. Co. v. Gilbert*, 429 U.S. 125 (1976), which imported *Geduldig*'s reasoning into Title VII, Congress swiftly amended Title VII to "unambiguously" reject "the holding and the reasoning" of *Gilbert* and *Geduldig*. *Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 678 (1983); *see also* 42 U.S.C. § 2000e(k); H.R. Rep. 95-948, 1978 U.S.C.C.A.N. 4749 (attached as **Appendix 1**); *Newport News*, 462 U.S. at 679, n.17 (collecting statements by legislators).[2] Congress took the position that the dissenting Justices in *Gilbert* "correctly interpreted" federal civil rights law, rejecting *Geduldig*. *Newport News,* 462 U.S. at 678-79 ("Proponents of the bill repeatedly emphasized that the Supreme Court had erroneously interpreted congressional intent and that amending legislation was necessary to re-establish the principles of Title VII law."). The Supreme Court then upheld the federal statutory standards, despite its holdings in *Geduldig* and *Gilbert*.

The same statutory standards were then incorporated into Title IX when that law was enacted. *See Emeldi v. Univ. of Oregon*, 698 F.3d 715, 724 (9th Cir. 2012) ("[T]he legislative history of Title IX 'strongly suggests that Congress meant for similar substantive standards to apply under Title IX as had been developed under Title VII.'"). Consistent with Congress's direction, Title IX's regulations relating to sex discrimination have expressly rejected *Geduldig* and *Gilbert*'s reasoning since their first formulation more than forty years ago. *See* 45 Fed. Reg. 30,903, 35,959, 35,962-63

---

[2] *See* 123 CONG. REC. 10581, 10582 (1977) (statement by Rep. Hawkins); 123 CONG. REC. 29385 (1977) (statement by Sen. Williams); *id.* at 29387 (statement by Sen. Javits); 123 CONG. REC. 29641 (1977) (statement by Sen. Bayh); *id.* at 29647 (statement by Sen. Williams); 124 CONG. REC. 21435 (1978) (statement by Rep. Hawkins); *id.* at 21439 (statement by Rep. Corrada); *id.* at 21440 (statements of Reps. Thompson and LaFalce); *id.* at 21441 (statement by Rep. Whalen); *id*. at 21442 (statement by Rep. Myers) (attached as **Appendix 3**).

PLAINTIFFS' SUPPLEMENTAL BRIEFING RE: *SKRMETTI* – 3
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

(May 9, 1980). Put simply, Congress intended to preserve the use of medical classifications as a proxy for sex discrimination under Title VII and Title IX. And, when the ACA was enacted, Congress explicitly imported the use of medical classifications from Title IX into the ACA, protecting enrollees from sex discrimination using medical classifications. *See* 42 U.S.C. § 18116(a); *see also Lorillard v. Pons*, 434 U.S. 575, 581 (1978) ("[W]here, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute."). Congress intentionally preserved the ability to allege discrimination based on exclusions or limitations of medical services in federal anti-discrimination statutes, including the ACA.

Nonetheless, Premera claims, without citation, that *Skrmetti* determined that classifications based on medical diagnosis of gender dysphoria are not unlawful sex discrimination under federal statutes such as Section 1557. Dkt. No. 177 at 2, 5. This is demonstrably false. Not only is *Skrmetti*'s reasoning not applicable here, *supra*, but as the Supreme Court noted, "[w]e have not yet considered whether *Bostock's* reasoning reaches beyond the Title VII context and we need not do so here." *Skrmetti*, 145 S. Ct. at 1834. Rather, Ninth Circuit precedent applies here. *See Doe v. Snyder*, 28 F.4th 103, 114 (9th Cir. 2022). *Skrmetti* does not extend beyond constitutional equal protection.

**B.    The Court Must Consider the Purpose and Congressional Intent Behind the ACA When Applying Section 1557.**

The context of this ACA case matters. The ACA's purpose is to protect Americans from discrimination based on medical conditions or services used. *See, e.g.,* 42 U.S.C. §§ 300gg-3(b)(1) (prohibiting discrimination based on pre-existing condition), 300gg-4 (prohibiting discrimination based on health status), 18022(4)(B), (D) (essential health benefits cannot discriminate based on age, disability, medical dependency, or expected length of life), 18116(a) (prohibiting discrimination based on race, sex, disability and age). The Supreme Court agrees: "In the Affordable Care Act, Congress addressed the problem of those who cannot obtain insurance coverage because of preexisting conditions or other health issues." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 547 (2012); *see Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S.

PLAINTIFFS' SUPPLEMENTAL BRIEFING RE: *SKRMETTI* – 4
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

212, 216 (2022). With the ACA, Congress abolished the ability of health insurers to discriminate based on health condition: "Prior to the ACA's enactment, an insurer could generally design plans to offer or exclude benefits as it saw fit without violating federal antidiscrimination law…" *Schmitt*, 965 F.3d at 948. After the ACA, health insurers have "an ***affirmative obligation not to discriminate*** in the provision of health care" and must "not design plan benefits in ways that discriminate." *Id.* at 955 (emphasis added). The ACA's Section 1557 was thus adopted to ***statutorily*** protect Americans from health insurance discrimination that targets people based on a protected characteristic by excluding or limiting coverage of medical diagnoses or procedures.

The Congressional record pertaining to the ACA documents that the ACA's reforms were particularly directed at preventing discrimination against people based on medical diagnosis, health status, or medical use. *See, e.g.*, 111 CONG. REC. Vol. 156, No. 45, E462 (March 23, 2010); 111 CONG. REC. H1855 (March 21, 2010); 110 CONG. REC. S13890 (December 24, 2009) (attached in ***Appendix 2***). Congress knew that eliminating barriers to ***enrollment*** in health insurance (such as ending pre-existing condition limits), without more, would not end health insurance discrimination. Health insurers could achieve the same result by incorporating exclusions and limitations in their benefits. That is why Congress included new benefit design anti-discrimination requirements in the ACA. Congress intended the ACA to prohibit discrimination based on race, sex, age and disability, including when medical diagnoses and services are used as a proxy for such protected characteristics. *See* 42 U.S.C. § 18116(a).

Put simply, if medical diagnoses or services can never be a proxy for a protected trait even under the ACA, as Premera argues, then the ACA's promise to eliminate benefit design discrimination would be a mirage. Health insurers could simply use medical diagnoses as the basis for exclusions and limitations to avoid the ACA's anti-discrimination requirements. In other words, Premera and other insurers could freely exclude diagnoses like gender dysphoria, autism, cancer, or HIV from coverage, without running afoul of ACA—essentially bringing back the very barriers to health coverage that the ACA was designed to end. This cannot be so. As the Supreme Court concluded in *King,* "[i]n every case we must respect the role of the Legislature, and take care not to

PLAINTIFFS' SUPPLEMENTAL BRIEFING RE: *SKRMETTI* – 5
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

undo what it has done." *Id.,* 576 U.S. at 498. *Skrmetti* cannot be interpreted to override Congress's purpose and intent when enacting the ACA.

C.  **Premera's Policy Discriminates Based on Transgender Status and Sex.**

The Court properly concluded that Premera's GTAS Policy discriminates because it expressly references and turns on sex and is premised on the services being for transgender people.

*First*, as *Bostock* held, "discrimination based on … transgender status necessarily entails discrimination based on sex; the first cannot happen without the second." 590 U.S. at 669. Here, the GTAS Policy and Premera's denials expressly refer to and turn on "***gender transition***" and "***transsexualism***." *See, e.g.*, Dkt. No. 46-2 (repeatedly referring to "***gender transition***"); Dkt. No. 46-19 (referring to purpose of Plaintiff A.B.'s surgery "to ***change or affirm your gender***" and referring to "***gender transition***"); Dkt. No. 46-22 (referring to Plaintiff J.M.'s status of "***transsexualism***" because his "gender differs from the sex assigned at birth"). ***On its face***, the GTAS Policy operates differently than the law in *Skrmetti*, which contained no such references. *See* Tenn. Code Ann. § 68–33–101 *et seq*. These are not incidental references to sex because "medical treatments and procedures are uniquely bound up in sex." *Skrmetti*, 145 S. Ct. at 1829. Rather, the GTAS Policy explicitly "regulates a class of persons identified on the basis of a specified characteristic." *Id*. at 1834 n.3.

*Karnoski v. Trump*, 926 F.3d 1180, 1201 (9th Cir. 2019), is particularly instructive here. There, the Ninth Circuit found "unpersuasive" the government's argument that its exclusionary military policy was based on "gender dysphoria" and not transgender status because "***[o]n its face***, the 2018 Policy regulates ***on the basis of transgender status***" and therefore "***on its face treats transgender persons differently than other persons***." *Id*. at 1201 (emphasis added). The same is true here. By targeting "gender transition," the GTAS Policy necessarily classifies based on transgender status as only transgender people undergo "gender transition." *See* Dkt. No. 44 at 16-17; *see also E.E.O.C. v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 577 (6th Cir. 2018), *aff'd sub nom. Bostock*, 590 U.S. 644; *cf. Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011).

PLAINTIFFS' SUPPLEMENTAL BRIEFING RE: *SKRMETTI* – 6
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

Premera argues that the Policy is based on diagnosis, not identity. That argument fails. For one, classifications can be simultaneously based on multiple grounds; Premera does not avoid liability when one of the bases is prohibited. *See*, *e.g.*, *Craig v. Boren*, 429 U.S. 190, 197 (1976). For another, discrimination based on gender dysphoria is discrimination based on transgender status. Dkt. No. 44 at 17-18; *see also Skrmetti*, 145 S. Ct. at 1833 ("only transgender individuals seek treatment for gender dysphoria"). And while *Skrmetti* did not accept this argument in the constitutional context by invoking *Geduldig*, its reasoning does not extend to the statutory context.

**Second,** as the Court correctly concluded, "Premera's medical policy treats adolescents differently depending on whether their natal sex is male or female." Dkt. No. 169 at 18. Under Premera's medical policies, "mastectomies are *not* considered medically necessary for 'female to male' or 'female to non-binary/gender neutral' (*i.e.,* transgender) patients under the age of eighteen, but might be deemed medically necessary for cisgender male adolescents." *Id.* at 7 (emphasis in original).[3] In other words, sex is the "but-for" cause of Premera's decision to cover or not cover the same surgery provided to affirm a patient's gender identity. Natal males can receive gender-affirming mastectomy while natal females cannot. Under *Bostock,* this is facial sex discrimination.[4]

Premera complains that the Court's Order "does not hold that the medical policy was motivated by invidious sex discrimination." Dkt. No. 177 at 4-5. Premera misreads *Skrmetti* to argue that proof of animus is now required even for facial sex discrimination in the statutory context. Not true: *Johnson Controls* remains effective. *See Int'l Union v. Johnson Controls*, 499 U.S. 187, 199 (1991) ("[T]he absence of a malevolent motive does not convert a facially discriminatory policy

---

[3] *Skrmetti*'s "but-for" analysis does not apply here where the application of the Policy is based not just diagnosis but rather on whether it is performed for **gender transition**. In other words, under Premera's policies, an adolescent's chest surgery is covered if it is **consistent with** "the gender characteristics a person is born with" but it is not covered if it is meant for "**changing** the gender characteristics a person is born with." Dkt. No. 46-2 at 1 (emphasis added). Sex plays an inextricable role. Indeed, the adolescent's transgender or cisgender status "automatically switches" and therefore whether the surgery is for "gender transition" based on the adolescent's sex at birth. *Skrmetti*, 145 S. Ct. at 1835.

[4] Premera's secret, undisclosed exception process is a second form of facial sex discrimination. *See* Dkt. No. 99 at 4, 22-23. The secret exception process only applies to gender-affirming mastectomy sought by natal females and not natal males. *Id.*

PLAINTIFFS' SUPPLEMENTAL BRIEFING RE: *SKRMETTI* – 7
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

into a neutral policy with a discriminatory effect."); *Latta v. Otter,* 771 F.3d 456, 467-468 (9th Cir. 2014). Since Premera's medical policy is facial sex discrimination, Premera's justifications are irrelevant,[5] nor is any showing of "pretext" required.[6]

*Bostock* and the caselaw that flows from it, including *Doe v. Snyder*, 28 F.4th at 114, remain the law. The Court's conclusion that Premera's medical policy impermissibly turns on "gender identity" or transgender status remains correct. Dkt. No. 169 at 18-19. And even if the Court concludes that this case turns on a diagnosis of "gender dysphoria" and not facially on sex or transgender status, under the ACA, an exclusion based on a diagnosis can be a proxy for illegal discrimination. *See e.g., Schmitt,* 965 F.3d at 949 (exclusion of all coverage for hearing loss can be a proxy for disability discrimination). Simply put, *Skrmetti* does not undo the ACA's statutory command that benefit design discrimination is illegal.

DATED: July 24, 2025.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC

*s/ Eleanor Hamburger*
Eleanor Hamburger (WSBA #26478)
Daniel S. Gross (WSBA #23992)
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303; Fax (206) 223-0246
Email: ehamburger@sylaw.com
    dgross@sylaw.com

---

[5] Premera complains that the Court "discounted" the reasons Premera claimed that it adopted the medical policy. Dkt. No. 177 at 6, n.3. But the court would only reach such reasons if it concluded that the challenged policy is **not** facial sex discrimination. Even then, Plaintiffs' expert testimony challenged . *See* Dkt. No. 99 at 8-16; *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (conflicting expert testimony must be resolved at trial).

[6] Undoubtedly, Premera's Age Exclusion is "mere pretext for invidious sex discrimination." *Skrmetti*, 145 S. Ct. at 1833; *see also* Dkt. No. 44 at 23-25.  It is well established that intentional discrimination may be adduced from the "totality of the relevant facts." *Washington v. Davis*, 426 U.S. 229, 242 (1976). Premera imposes the Exclusion despite its concession that chest surgery can be medically necessary for some transgender adolescents with gender dysphoria, as demonstrated by its secret exception process. *See* Dkt. No. 44 at 10-11. That the Age Exclusion impacts ***only transgender adolescents*** and no one else further demonstrates pretext. *See Doe v. Horne*, 115 F.4th 1083, 1103 (9th Cir. 2024) ("[A] policy's discriminatory impact may support a finding of discriminatory purpose."); *id.* at 1104 (upholding finding of discriminatory purposes when the law's "burdens instead fall *exclusively* on transgender women and girls").

PLAINTIFFS' SUPPLEMENTAL BRIEFING RE: *SKRMETTI* – 8
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.

    *s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan (Admitted *Pro Hac Vice*)
120 Wall Street, 19th Floor
New York, NY 10005
Tel. (212) 809-8585; Fax (212) 809-0055
Email: ogonzalez-pagan@lambdalegal.org

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
Kell L. Olson (Admitted *Pro Hac Vice*)
3849 E Broadway Blvd #136
Tucson, AZ 85716
Tel. (323) 370-6915
Email: kolson@lambdalegal.org

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
Sasha Buchert (Admitted *Pro Hac Vice*)
111 K Street NE, 7th Floor
Washington DC 20002
Tel. 503-688-8071
Email: sbuchert@lambdalegal.org

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
Nicholas Hite (Admitted *Pro Hac Vice*)
3500 Oak Lawn Ave., Suite 500
Dallas, TX 75219-6722
Tel. (214) 219-8585
Email: nhite@lambalegal.org

*Attorneys for Plaintiffs*

PLAINTIFFS' SUPPLEMENT BRIEFING RE: *SKRMETTI* – 9
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246