# Exhibit A

The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| L.B. and M.B., on behalf of their minor child A.B., and on behalf of similarly situated others; L.B.; M.B., C.M. and A.H., on behalf of their minor child J.M., and on behalf of similarly situated others; C.M.; and A.H., <br><br> Plaintiffs, <br><br> v. <br><br> PREMERA BLUE CROSS, <br><br> Defendant. | NO. 2:23-cv-00953-TSZ <br><br> PLAINTIFFS' RESPONSE TO STATEMENT OF INTEREST BY UNITED STATES <br><br> **Note for Consideration: July 24, 2025** |

PLAINTIFFS' RESPONSE TO STATEMENT OF INTEREST
BY UNITED STATES
[Case No. 2:23-cv-00953-TSZ]

The Statement of Interest by the United States (the "Government") is untimely, prejudicial, and improper.[1]  It misinterprets *United States v. Skrmetti,* 145 S. Ct. 1816 (2025), and improperly attempts to extend the *Skrmetti* holding beyond its narrow constitutional equal protection confines. Moreover, the Government disregards the undisputed facts of the case and existing law for its own political ends.  The Statement of Interest should be excluded and not considered.

**A.      The Government's Statement Is Untimely and Prejudicial.**

The Government cannot enter this litigation at the end in a last-ditch effort to sway the Court in favor of Premera.  A statement of interest by the Government pursuant to 28 U.S.C. § 517 is akin to an amicus brief or a motion to intervene.  *See*, *e.g., M.R. v. Dreyfus,* 697 F.3d 706, 735 (9th Cir. 2012).  While the Government has broad authority to appear in litigation to assert its interests, that authority is not without constraints.  *See Creedle v. Gimenez*, No. 17-22477-Civ, 2017 U.S. Dist. LEXIS 184223, at *5-6 (S.D. Fla. Nov. 7, 2017) ("[T]o the extent the Government contends that it can file a statement of interest at any time in a case and have it considered, that position is unavailing.").  Its participation must be timely, without prejudice and with sufficient interest.  *See United States ex rel. Ruckh v. Salus Rehab.*, No. 8:11-cv-1303-T-23TBM, 2017 U.S. Dist. LEXIS 63325, at *4 (M.D. Fla. Apr. 26, 2017) (statement of interest not justified where the government did not explain why relator's representation was inadequate); *U.S. ex rel. Gudur v. Deloitte Consulting LLP*, 512 F. Supp. 2d 920, 928 (S.D. Tex. 2007) (granting motion to strike U.S. Statement of Interest filed without leave of court because it was untimely); *cf. Allen v. Cty. Sch. Bd.*, 28 F.R.D. 358, 361 (E.D. Va. 1961) (denying the Government's intervention due to delay and undue prejudice). The Government fails to make the required showing.

This private party litigation was filed more than two years ago.  Dkt. No. 1.  During that time, and throughout discovery and extensive motions practice, the Government did not appear.  On

---

[1] The Government failed to move the Court for permission to submit its Statement of Interest. *See* Fed. R. Civ. P. 7(b)(1); LCR 7; *see e.g., United States ex rel. Ricia Johnson & Health Dimensions Rehab. v. Golden Gate Nat'l Senior Care*, LLC, No. 08-cv-1194 (DWF/HB), 2016 U.S. Dist. LEXIS 196065, at *3 (D. Minn. June 1, 2016).

PLAINTIFFS' RESPONSE TO STATEMENT OF INTEREST
BY UNITED STATES – 1
[Case No. 2:23-cv-00953-TSZ]

April 18, 2025, the Court issued an Order denying class certification and granting partial summary judgment to Plaintiffs on whether Premera's Medical Policy No. 7.01.557 Gender Transition Affirmation Surgery and Related Services ("GTAS Policy") discriminates based on sex.[2]  Even then the Government did not appear.  After the Order was issued, Defendant Premera Blue Cross ("Premera") failed to move for reconsideration.  Still nothing was heard from the Government.  Ultimately, both parties agreed that the Order resolved all of the issues in dispute, and submitted a stipulated final judgment. Dkt. No. 174.  Still, the Government did not appear.  Only now, after Premera requested supplemental briefing in response to *Skrmetti*, does the Government suddenly have an "interest" in this case, apparently to bolster Premera's position.  It is simply too late for the Government to manufacture an interest in this litigation, when failing to appear during active litigation. *See Allen,* 28 F.R.D. at 361.  The Statement is untimely and improper.

While the Government claims to have a "strong interest in the proper interpretation of federal anti-discrimination law, whether constitutional or statutory," *see* Dkt. No. 179 at 1, that interest is belied by the Government's stated position.  Here, the administration argues that Premera's exclusion of coverage for gender-affirming mastectomy for transgender minors is not sex discrimination under the Affordable Care Act ("ACA").  Yet—at the very same time—the operative federal regulations and guidance interpreting the ACA hold the opposite. *See*, *e.g.,* 89 Fed. Reg. 37,522, 37,612 (May 6, 2024); 45 C.F.R. § 92.207; *see also Walker v. Kennedy,* No. 20-CV-2834 (FB) (VMS), 2025 U.S. Dist. LEXIS 129455, at *11 (E.D.N.Y. July 8, 2025*)* (noting that "the definitions of 'on the basis of sex,' 'gender identity,' and 'sex stereotyping' currently set forth in [the 2016 version] of 45 C.F.R. § 92.4 [] remain in effect.").  Put simply, the Government's position in its Statement of Interest is in conflict with HHS's current governing guidance and regulations.  The Government ignores that conflict entirely and offers no explanation for it.

---

[2] The Court's Order directly impacts two Premera enrollees.  Plaintiff A.B. whose parents paid out of pocket for his medically necessary gender-affirming chest surgery, and Plaintiff J.M. who has received the surgery, after waiting until he was 18 to obtain it.  It is difficult to see the Government's interest in this dispute between two individuals and a private insurer.

PLAINTIFFS' RESPONSE TO STATEMENT OF INTEREST
BY UNITED STATES – 2
[Case No. 2:23-cv-00953-TSZ]

Finally, the Government fails to show why it has a special interest in bolstering the briefing of Premera, a private insurance company, at the expense of two individual transgender teenagers. *See Ruckh,* 2017 U.S. Dist. LEXIS 63325 at *6 (a vague interest that "appears calculated to duplicate" one party's position is insufficient). Rather, the Government's appearance should be viewed as part of the current administration's ongoing deluge of attacks on transgender people, which is nothing more than facial discrimination writ large.

As one court recognized, "the flurry of government actions directed at transgender persons—denying them everything from necessary medical care to access to homeless shelters—must give pause to any court." *Talbott v. United States*, 775 F. Supp. 3d 283, 331 (D.D.C. 2025). The administration has adopted policies that: "recogniz[e] the existence of only two sexes; blocked schools from using federal funds to promote the idea that gender can be fluid; directed the State Department to stop issuing documents that allow a third 'X' gender marker; changed references to 'LGBTQI+' on government websites to 'LGB,' erasing not just transgender persons, but intersex people as well; revoked the ability of transgender federal employees to receive gender-affirming care; and directed that all incarcerated transgender persons be denied medical treatments and be housed by birth sex, where they are nine times more susceptible to violence." *Id.* at 330-31. The Statement here is "part of a constellation of close-in-time executive actions directed at transgender Americans that contained powerfully demeaning language." *Orr v. Trump,* No. 1:25-cv-10313-JEK, 2025 U.S. Dist. LEXIS 74577, at *47 (D. Mass. Apr. 18, 2025). It is "part of a coordinated and rapid rollback of rights and protections previously afforded to transgender Americans," which "suggest[s]" that it is "built on a foundation of irrational prejudice toward fellow citizens whose gender identity does not match their sex assigned at birth." *Id.* at *50. Indeed, the administration has been "candid in its rejection of the identity of an entire group—transgender Americans—who have always existed and have long been recognized in, among other fields, law and the medical profession." *Id.* at *44. One "cannot fathom discrimination more direct than the plain pronouncement of a policy resting on the premise that the group to which the policy is directed does not exist." *PFLAG, Inc. v. Trump*,

PLAINTIFFS' RESPONSE TO STATEMENT OF INTEREST
BY UNITED STATES – 3
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

769 F. Supp. 3d 405, 444 (D. Md. 2025). The administration's interest in fomenting discrimination is not valid or legitimate, and should be disregarded.

**B.    *Skrmetti* Does Not Eliminate Proxy Discrimination Based on Medical Use Under the ACA.**

The Government merely reiterates arguments made by Premera and offers nothing new. Indeed, it ignores the Court's reasoning that natal sex is the "but-for cause" of Premera's denial of coverage to Plaintiffs.  *See* Dkt. No. 169 at 6-7 (Under Premera's policy natal females under 18 are not eligible for coverage of gender-affirming mastectomy while natal males under 18 are). Under *Bostock,* this facial sex discrimination is illegal.  *Id*., 590 U.S. at 660.

Instead, the Government claims that Premera's medical policy merely distinguishes between various medical diagnoses, which, it asserts, can never be a proxy for sex.  Dkt. No. 179 at 5 ("it is the medical use of the treatment for minors that matters under the Premera policy, not the sex of the patient.").  The government is wrong on the facts and the law.

***First,*** on the facts, the sex-based exclusion challenged here is quite different from that in *Skrmetti*. In *Skrmetti*, the Tennessee legislature banned gender-affirming medical care for minors, which the legislature claimed was "experimental."  The Supreme Court deemed the ban to be "facially neutral" such that the court could not "second-guess" the legislature's decision. *Skrmetti*, 145 S. Ct. at 1835, 1836.

In contrast, Premera's GTAS Policy is facially discriminatory.  *See* Dkt. No. 44 at 15-18; Dkt. No. 99 at 16-18; Plaintiffs' Supplemental Brief re *Skrmetti* (filed herewith). It references and functions based on "gender transition" and calls out the ***natal sex*** of the enrollees seeking coverage and treat natal females differently from similarly-situated natal males. *See, e.g.,* Dkt. No. 46-2 at 4 (coverage of gender-affirming mastectomy is excluded for "Female to male patients" and "Female to non-binary/gender neutral patients" under 18); *compare* Dkt. No. 46-5 at 2-3 (coverage of gender-affirming mastectomy for "boys or men" is available "regardless of age").  The defining difference between Premera's two medical policies is the **_sex_** of the enrollee, not the medical procedure or its

PLAINTIFFS' RESPONSE TO STATEMENT OF INTEREST
BY UNITED STATES – 4
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

purpose.  Indeed, Premera considers minor natal males and their parents to be competent to consent to the same surgical procedure that minor natal females and their parents are not, due to Premera's claim about natal females' "immaturity."  *See* Dkt. No. 169 at 7.  Of course, this is "textbook sex discrimination." *Id.* at 19.  *See J.E.B. v. Ala. ex rel. T.B.,* 511 U.S. 127, 129 (1994) (even under constitutional equal protection, gender cannot be used as a proxy for competency).

Most critically, here (unlike *Skrmetti*), Premera and Plaintiffs agree that gender-affirming mastectomy for transgender minors can be medically necessary.  *See* Dkt. No. 79 at 5.  The "medical debate" referenced in *Skrmetti* does not exist between Premera and Plaintiffs.  The factual issue here is much narrower and more straightforward:  Does Premera discriminate based on sex when its medical policies treat natal females differently than natal males when receiving the same medical procedure for gender affirming purposes?  The Court answered correctly that it does.

**Second,** on the law, the Government is wrong.  *Skrmetti* merely concluded that the Tennessee ban on medical treatment for gender dysphoria for minors was not a violation of constitutional equal protection since, ***in the context of that particular legislation***, a medical diagnosis of gender dysphoria was not a proxy for sex, deferring to the legislature's determination.

In contrast, as explained more fully in Plaintiffs' prior and simultaneous briefing, ***statutory*** civil rights laws recognize proxy discrimination through the use of medical diagnosis or medical use classifications.  *See*, *e.g.,* 42 U.S.C. § 2000e(k) (pregnancy and other related medical conditions can be a basis for sex discrimination); 42 U.S.C. § 12102(1)(A) (disability discrimination turns on the existence of a "physical or mental impairment" *i.e.,* medical condition); 42 U.S.C. § 18116(a) (adopting earlier federal statutory anti-discrimination grounds and enforcement mechanisms); *see e.g., Krocka v. City of Chicago*, 203 F.3d 507, 512 (7th Cir. 2000) (medically diagnosed conditions are considered impairments under the ADA); *Scutt v. UnitedHealth Ins. Co.*, 2022 U.S. Dist. LEXIS 45445, *12 (D. Haw. Mar. 15, 2022).

As the Seventh Circuit explained when recognizing proxy discrimination under Section 504 of the Rehabilitation Act, such proxies are necessary to eliminate discrimination in situations

PLAINTIFFS' RESPONSE TO STATEMENT OF INTEREST
BY UNITED STATES – 5
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

where a covered entity cloaks discrimination using different classifications that stand in for race, sex, age or disability:

> We have warned that a[ covered entity] cannot be permitted to use a technically neutral classification as a proxy to evade the prohibition of intentional discrimination. An example is using gray hair as a proxy for age: there are young people with gray hair (a few), but the "fit" between age and gray hair is sufficiently close that they would form the same basis for invidious classification. Similarly, discrimination "because of" handicap is frequently directed at an effect or manifestation of a handicap rather than being literally aimed at the handicap itself. Thus, a school's exclusion of a service dog has been held to be discrimination "because of" handicap, and no doubt a policy excluding wheelchairs would be such discrimination, even if the stated purpose of the policy were a benign one.

*McWright v. Alexander,* 982 F.2d 222, 228 (7th Cir. 1992) (internal citations omitted). The Ninth Circuit approved of proxy discrimination in *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1160 n.23 (9th Cir. 2013). It held that proxy discrimination applies when a "defendant discriminates against individuals on the basis of criteria that are almost exclusively indicators of membership in the disfavored group." *Id.* Indeed, the Supreme Court has repeatedly recognized proxy discrimination as a viable method of proving facial discrimination. *See e.g., Rice v. Cayetano,* 528 U.S. 495, 514 (2000) ("Ancestry can be a proxy for race"); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 613 (1993) ("Pension status may be a proxy for age"); *Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 678 (1983) (exclusions of pregnancy-related medical services for dependents discriminates based on sex).

The concept of proxy discrimination is necessary to combat discrimination in health insurance. Without this analytical approach, health insurers could simply rewrite their exclusions from being based on a protected trait to being based on the specific diagnosis, treatment or medical device highly associated with the protected trait, just to evade compliance. For example, without the concept of proxy discrimination, health insurers could eliminate most coverage of treatment for cancer by excluding chemotherapy; then they could argue that they are not discriminating based on disability, rather they just oppose the use of chemotherapy. To avoid this ludicrous situation, the Ninth Circuit approved of proxy discrimination in the context of the Affordable Care Act's anti-

PLAINTIFFS' RESPONSE TO STATEMENT OF INTEREST
BY UNITED STATES – 6
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

discrimination law. *See Schmitt,* 965 F.3d at 949 (an exclusion of hearing aids can be a proxy for hearing disability discrimination under the ACA); *see also, Berton v. Aetna Inc.*, No. 23-cv-01849-HSG, 2024 U.S. Dist. LEXIS 35556, at *9 (N.D. Cal. Feb. 29, 2024) (limitations on fertility coverage can be a proxy for discrimination based on sex and sexual orientation).

Gender dysphoria can serve as a proxy for discrimination based on transgender status, even after *Skrmetti*. The Supreme Court expressly acknowledged that "only transgender individuals seek treatment for gender dysphoria," 145 S. Ct. at 1820, and noted that neither its analysis nor *Geduldig v. Aeillo*, 417 U.S. 484 (1974), speak to situations when a policy "regulates a class of **persons** identified on the basis of a specified characteristic." *Id.* at 1834, n.3 (emphasis in original). That is the case in the GTAS Policy. Moreover, *Skrmetti* critically turns on the legal fiction created by *Geduldig*, which as Plaintiffs have explained, does not apply in the statutory context. *See* Dkt. No. 99 at 24-25; Plaintiffs' Supplemental Brief re: *Skrmetti*.

**C.    After Finding Facial Sex Discrimination, the Court Properly Did Not Consider Premera's "Concerns" about Coverage for Gender-Affirming Treatment for Minors.**

The Court owes no deference to Premera's "concerns" about covering gender-affirming care for transgender minors. The Government concedes it. Dkt. No. 179 at 5. Yet, the Government argues that Premera's concerns are "valid" while ignoring the undisputed facts in this case.

This case centers on an insurance contract that promises to provide medically necessary health coverage for "gender affirming care" "for all ages." Dkt. No. 46-1 at 6 of 7. Premera has a contractual obligation to provide coverage of gender affirming care that is medically necessary under the terms and conditions of the insurance contract—regardless of any "concerns" that Premera's Dr. Small or its hired-gun experts may have. *Id.* And as Plaintiffs' experts demonstrated and Premera's experts did not dispute, the surgery received by A.B. and J.M. was consistent with the generally accepted medical standard of care in Washington and in the United States and met Premera's ***contractual*** definition of medical necessity (which has no age limit). *See* Dkt. No. 99 at 8-16. Premera must provide coverage when the contract's medical necessity standard is met. It

PLAINTIFFS' RESPONSE TO STATEMENT OF INTEREST
BY UNITED STATES – 7
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

cannot interpose unscientific "concerns" to eliminate its coverage obligation; nor can it inject discriminatory sex-based assumptions about "maturity" into the coverage decision.

Premera's "concerns" are pretext. Neither the Government nor Premera explain why concerns about enrollee "maturity" are "valid" when the concerns apply only to natal females and not to similarly-situated natal males. Nor does Government address Premera's decision to approve nearly half of the claims submitted, using a secret exception process that had nothing to do with any assessment of "maturity." Dkt. No. 43 at 23-25. And, the Government wholly ignores that the Washington legislature has determined that gender-affirming care for minors is a legal, mandated health insurance benefit, unlike the legislature in Tennessee. *See* RCW 48.43.0128. The Court properly interpreted Premera's obligations to deliver benefits consistently with the terms of the contract and without discrimination.[3] *Skrmetti* does not impact this Court's Order at all.

## D.   Conclusion

The Government's Statement of Interest should be rejected as untimely, unhelpful, and prejudicial, since the Government delayed years—until the judgment stage—to identify its vague interest in this case. Moreover, the Government's alleged interest is inconsistent with HHS's operative regulations and guidance on the ACA's anti-discrimination law. Finally, the Government misconstrues the holding in *Skrmetti,* and ignores the undisputed facts of this case to make ultimately irrelevant argument.

This statutory civil rights case under the ACA is far different from the equal protection constitutional case brought in *Skrmetti.* The key question to be addressed is whether Premera's medical policies, which on their face treat natal females differently than natal males when receiving the same medical procedure for gender affirming purposes, is sex discrimination. The Court answered correctly that it is. The Court's Order should remain in place and the stipulated judgment entered.

---

[3] The Government's argument that an alleged "debate among medical experts" renders this case a "poor fit for judicial resolution" is nonsensical. Dkt. No. 179 at 5. This Court is obligated to resolve the claims in this case, regardless of any "medical debate." *Skrmetti* does not hold otherwise.

PLAINTIFFS' RESPONSE TO STATEMENT OF INTEREST
BY UNITED STATES – 8
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

DATED:  July 24, 2025.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC

    s/ Eleanor Hamburger
Eleanor Hamburger (WSBA #26478)
Daniel S. Gross (WSBA #23992)
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303; Fax (206) 223-0246
Email:  ehamburger@sylaw.com
            dgross@sylaw.com

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.

    s/ Omar Gonzalez-Pagan
Omar Gonzalez-Pagan (Admitted *Pro Hac Vice*)
120 Wall Street, 19th Floor
New York, NY 10005
Tel. (212) 809-8585; Fax (212) 809-0055
Email: ogonzalez-pagan@lambdalegal.org

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
Kell L. Olson (Admitted *Pro Hac Vice*)
3849 E Broadway Blvd #136
Tucson, AZ 85716
Tel. (323) 370-6915
Email:  kolson@lambdalegal.org

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
Sasha Buchert (Admitted *Pro Hac Vice*)
111 K Street NE, 7th Floor
Washington DC 20002
Tel. 503-688-8071
Email: sbuchert@lambdalegal.org

PLAINTIFFS' RESPONSE TO STATEMENT OF INTEREST
BY UNITED STATES – 9
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
Nicholas Hite (Admitted *Pro Hac Vice*)
3500 Oak Lawn Ave., Suite 500
Dallas, TX 75219-6722
Tel. (214) 219-8585
Email: nhite@lambalegal.org

***Attorneys for Plaintiffs***

PLAINTIFFS' RESPONSE TO STATEMENT OF INTEREST
BY UNITED STATES – 10
[Case No. 2:23-cv-00953-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246