UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

L.B. and M.B., individually and on behalf of their minor child A.B.; C.M. and A.H., individually and on behalf of their minor child J.M.; and on behalf of others similarly situated,

Plaintiffs,

v.

PREMERA BLUE CROSS,

Defendant.

C23-0953 TSZ

ORDER

THIS MATTER comes before the Court on the parties' proposed stipulated judgment, docket no. 174, which was deferred pending briefing on the effect, if any, of *United States v. Skrmetti*, 605 U.S. ---, 145 S. Ct. 1816 (2025). *See* Minute Order at ¶ 1 (docket no. 176). Having concluded that *Skrmetti* does not alter the result in this case, the Court DIRECTS the Clerk to enter judgment in the form proposed by the parties and to CLOSE this case.

**Background**

By Order entered April 18, 2025, the Court ruled that plaintiffs are entitled to a declaratory judgment that the challenged medical policy of defendant Premera Blue

ORDER - 1

1    Cross ("Premera") violates Section 1557 of the Patient Protection and Affordable Care
2    Act of 2010 ("ACA § 1557")[1] by facially discriminating on the basis of sex. Order at
3    16–21 & 31 (docket no. 169). Premera's various medical policies apply whenever
4    Premera makes coverage decisions, regardless of which health care plan is involved. <u>See</u>
5    <u>id.</u> at 6. The policy at issue, Premera Medical Policy – 7.01.557, does not provide
6    insurance coverage for "<u>*female*</u> to male patients" or "<u>*female*</u> to non-binary/gender neutral
7    patients" who are under "18 years of age" and seek a "mastectomy or breast reduction."
8    <u>See</u> Ex. B to Hamburger Decl. (docket no. 46-2 at 4–5) (emphasis added). Another
9    medical policy, however, offers insurance coverage for "<u>*boys*</u>" (<u>*i.e.*</u>, males under 18 years
10   of age) who have mastectomies to treat "gynecomastia." <u>See</u> Premera Medical Policy –
11   7.01.521, Ex. E to Hamburger Decl. (docket no. 46-5 at 2–3) (emphasis added). In other
12   words, Premera's medical policies treat minors differently with respect to insurance
13   coverage for gender-affirming mastectomies based on their natal sex, as well as their
14   transgender or cisgender status.
15          On June 13, 2025, the parties filed a proposed stipulated judgment that (i) is
16   consistent with the Court's prior Order, (ii) awards $25,750 in out-of-pocket expenses
17   plus $1 in nominal damages to plaintiffs L.B. and M.B. on behalf of A.B., as well as

---

[1] ACA § 1557 provides, in relevant part, that "an individual shall not, on the ground prohibited under . . . title IX of the Education Amendments of 1972 [("Title IX")] . . . , be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116(a). By referencing Title IX, ACA § 1557 prohibits discrimination "on the basis of sex." <u>See</u> 20 U.S.C. § 1681(a).

ORDER - 2

$1 in nominal damages to plaintiffs C.M. and A.H. on behalf of J.M., and (iii) defers consideration of attorney's fees and costs pursuant to 42 U.S.C. § 1988 pending resolution of any appeal.  *See* Prop. Stip. Judgment (docket no. 174).

Five days later, on June 18, 2025, the United States Supreme Court issued its decision in *Skrmetti*.  On the same day, Premera filed a notice of supplemental authority and requested an opportunity to brief the effect, if any, of *Skrmetti*.  *See* Notice (docket no. 175).  The Court allowed Premera to file an opening brief and plaintiffs to file a response brief.  *See* Minute Order at ¶¶ 1(a)–(b) (docket no. 176).  Premera subsequently sought and was granted permission to file (and has filed) a reply brief.  On July 7, 2025, the United States Department of Justice ("DOJ") filed a "Statement of Interest," docket no. 179, which has been considered by the Court.  Plaintiffs requested and were provided an opportunity to respond to the DOJ's brief, and both Premera and the DOJ were allowed to file a reply, but neither has done so.  *See* Minute Order (docket no. 183).  The question of whether *Skrmetti* has any bearing on this matter has now been fully briefed by the parties and the DOJ.

**Discussion**

**A.    *Skrmetti* is Distinguishable**

In *Skrmetti*, the Supreme Court held that Tennessee's Senate Bill No. 1 ("SB1"), Tenn. Code Ann. §§ 68-33-101 to -109 (2023), does not violate the Equal Protection Clause of the Fourteenth Amendment.  *See* 145 S. Ct. at 1829–32 & 1835–37.  The *Skrmetti* Court explained that, unless a law burdens a fundamental right or targets a suspect class, the legislation is provided "wide latitude" under "rational basis" review

ORDER - 3

because "the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes." *Id.* at 1828 (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)). In contrast to *Skrmetti*, in this matter, plaintiffs do not present a constitutional tort claim or challenge any governmental action, and unlike the *Skrmetti* Court, this Court need not decide what level of scrutiny to apply.[2] *See* Order at 19 n.8 (docket no. 169). Moreover, Premera's medical policies are not governed by the ballot box and, with respect to this litigation between individuals and their health insurers, "democratic processes" play no role. Rather, Premera's policies are regulated by various laws, including ACA § 1557, which was not at issue in *Skrmetti*.

      Not only did *Skrmetti* involve a fundamentally different type of claim than the ACA § 1557 claim raised in this case, but *Skrmetti* concerned statutory language that bears no resemblance to the medical policies that are the focus of this litigation. With respect to minors, Tennessee's SB1 prohibits a healthcare provider from knowingly performing, offering to perform, administering, or offering to administer a medical procedure "for the purpose of . . . [e]nabling *a minor* to identify with, or live as, a purported identity inconsistent with *the minor's* sex; or . . . [t]reating purported discomfort or distress from a discordance between *the minor's* sex and asserted identity."

---

[2] Premera erroneously asserts that "the Supreme Court declined to address the level of scrutiny question." *See* Def.'s Reply at 2 (docket no. 184). The Court is left to wonder whether Premera and its counsel actually read the decision in *Skrmetti*. According to the *Skrmetti* Court, the sole question before it was "whether SB1 is subject to heightened scrutiny." 145 S. Ct. at 1829. The *Skrmetti* Court answered in the negative, *id.*, and it applied "rational basis" review to reach its decision, *see id.* at 1835–37.

ORDER - 4

1  Tenn. Code Ann. § 68-33-103(a)(1) (emphasis added).  SB1 applies to <u>all</u> minors

2  regardless of sex.³  <u>See Skrmetti</u>, 145 S. Ct. at 1829.  In contrast, Premera Medical

3  Policy – 7.01.557 applies solely to "<u>*female*</u> to male" or "<u>*female*</u> to non-binary/gender

4  neutral" minors.  <u>See</u> Order at 1–2 (docket no. 169) (emphasis added).  Regardless of

5  whether the term "sex" is defined narrowly as "sex assigned at birth" or broadly as

6  "gender identity," Premera's medical policies explicitly discriminate on the basis of "sex"

7  in violation of ACA § 1557.  <u>See id.</u> at 16–21.

8        In <u>Skrmetti</u>, the Supreme Court acknowledged that, just as some gender-specific

9  terms might be permissible, certain gender-neutral wording might "mask discrimination

10  that is unlawful."  145 S. Ct. at 1829.  With regard to SB1, however, the <u>Skrmetti</u> Court

11  reasoned that the law did not "prohibit conduct for one sex that it permits for the other."

12  <u>Id.</u> at 1831.  Using this test, Premera's medical policies differ from SB1.  Unlike

13  disabilities associated with pregnancy, which only one sex can experience, <u>see id.</u> at 1833

14  (citing <u>Geduldig v. Aiello</u>, 417 U.S. 484 (1974), <u>superseded by statute</u>, Pub. L. No. 95-

15  555, 92 Stat. 2076 (1978) (codified at 42 U.S.C. § 2000e(k))), mastectomies may be

16  performed on both female and male adolescents for the exact same reason, namely gender

17  affirmation.  Premera's medical policies, however, offer insurance coverage for one sex

---

³ <u>Skrmetti</u> involved only the use of puberty blockers or hormones to treat minors for various conditions, including gender dysphoria, gender identity disorder, and/or gender incongruence (as to which such medications are not permitted by SB1) or congenital defect, precocious (or early) puberty, disease, and/or physical injury (as to which prescriptions and dispensing are allowed). <u>See</u> 145 S. Ct. at 1826–27.  The <u>Skrmetti</u> Court did not consider the surgical procedure at issue in this case, <u>*i.e.*</u>, breast reduction or mastectomy.  <u>See id.</u> at 1827 (observing that "the plaintiffs lacked standing to challenge the law's ban on sex transition surgery for minors").

ORDER - 5

1    and not the other.  Premera does what is expressly prohibited by ACA § 1557, *i.e.*, "it

2    regulates a class of <u>*persons*</u> identified on the basis of a specified characteristic," namely

3    sex.  <u>See id.</u> at 1834 n.3 (emphasis in original).  In sum, nothing in <u>Skrmetti</u> undermines

4    the validity of the Court's Order entered April 18, 2025, docket no. 169.

5    **B.    <u>Skrmetti</u> Supports the Court's Decision**

6         Indeed, the analysis in <u>Skrmetti</u> supports the Court's previous ruling.  In <u>Skrmetti</u>,

7    the Supreme Court reiterated the reasoning of <u>Bostock v. Clayton County</u>, 590 U.S. 644

8    (2020).  <u>See</u> 145 S. Ct. at 1834–35.  <u>Bostock</u> teaches that the "because of . . . sex" test set

9    forth in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), incorporates

10   "the traditional but-for causation standard, which 'directs us to change one thing at a time

11   and see if the outcome changes.  If it does, we have found a but-for cause.'"  <u>Skrmetti</u>,

12   145 S. Ct. at 1834 (quoting <u>Bostock</u>, 590 U.S. at 656).  In <u>Bostock</u>, the Supreme Court

13   held that an employer who fires a male employee for being attracted to men, *i.e.*, for

14   being homosexual, or who fires a employee for being transgender, engages in

15   discrimination on the basis of sex.  <u>See</u> 590 U.S. at 651–52.  Such employer has used

16   "sex" as the but-for cause of the termination, penalizing the male employee for a trait

17   (attraction to men) that is tolerated in female employees, and the transgender employee

18   for sexual characteristics that are tolerated in cisgender employees.  <u>Id.</u>; <u>see Skrmetti</u>, 145

19   S. Ct. at 1835 ("sex is the but-for cause of the employer's decision—change the

20   homosexual male employee's sex and he becomes a straight female whose attraction to

21   men the employer tolerates").  Although <u>Skrmetti</u> declined to consider whether <u>Bostock</u>

22   extends beyond the Title VII context, 145 S. Ct. at 1834, the Court is satisfied that

23

ORDER - 6

*Bostock*'s "but-for causation" analysis is appropriately applied to ACA § 1557's "on the basis of sex" standard.  See *Doe v. Snyder*, 28 F.4th 103, 114 (9th Cir. 2022).  As with the discriminatory discharge in *Bostock*, sex is the but-for cause of an insurance coverage denial under Premera's medical policies—change the juvenile's sex and she becomes an adolescent boy whose request for a gender-affirming mastectomy is not subject to any age restriction in ascertaining whether it is "medically necessary."

Notably, notwithstanding the wording of its medical policies, Premera does not advance a view that mastectomies are never "medically necessary" for "female to male" or "female to non-binary/gender neutral" minors.  Rather, Premera has employed a list of unwritten or secret exceptions pursuant to which thirty-five percent (35%) of all requests for coverage of a minor's gender-affirming mastectomy have been granted, meaning that the procedures were by definition deemed "medically necessary."  See Order at 7–8 (docket no. 169).  Given this record, *Skrmetti* suggests that Premera's medical policies would not pass muster even if "rational basis" review was the applicable standard.  Unlike in *Skrmetti*, in which the State of Tennessee (i) articulated its unequivocal concerns about, and goal of protecting, the health and welfare of its minors, see 145 S. Ct. at 1835–36, and (ii) offered no secret exemption to SB1, in this matter, Premera's objectives are inconsistent and ambiguous.  Premera has fluctuated between its alleged policy justifications (*e.g.*, the insufficient maturity of minors and a dearth of scientifically-sound studies) and its actual practices, through which it has acknowledged the risks and dangers to transgender youth of refusing to insure gender-affirming care (*e.g.*, chest binding that causes rib or skeletal injury or respiratory compromise, and

ORDER - 7

suicidal ideation or self-harm behaviors). *See* Order at 7–8 (docket no. 169). This vacillating conduct evidences Premera's own discomfort with the blanket exclusion set forth in Premera Medical Policy – 7.01.557, and undermines any contention that what is written (as opposed to what is secretly applied) has any rational basis. Contrary to Premera's and the DOJ's contentions, the result in this case is consistent with *Skrmetti*.[4]

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) The Court CONCLUDES that *Skrmetti* does not require any change to the Order entered April 18, 2025, docket no. 169, and hereby REAFFIRMS its decision that plaintiffs are entitled to a declaratory judgment that Premera's Medical Policy – 7.01.557 violates ACA § 1557 by facially discriminating on the basis of sex;

---

[4] On June 30, 2025, twelve days after deciding *Skrmetti*, the Supreme Court vacated the decision of the United States Court of Appeals for the Fourth Circuit in *Kadel v. Folwell*, 100 F.4th 122 (4th Cir. 2024), *vacated*, --- S. Ct. ---, 2005 WL 1787687 (June 30, 2025). Premera asserts that the Court's previous Order in this matter "turned almost *entirely* on the application of the Fourth Circuit's decision in *Kadel*" and suggests that the Court's Order "cannot stand now that *Kadel* has been vacated." *See* Def.'s Reply at 5 (docket no. 184) (emphasis in original). Premera overstates the extent to which the Court relied on *Kadel*, and its contentions otherwise lack merit. *Kadel* involved consolidated appeals, one concerning the health plan for employees of North Carolina and the other relating to West Virginia's Medicaid program. *See* 100 F.4th at 133–35 & 138. The plaintiffs in both matters challenged certain insurance coverage exclusions as violative of the Equal Protection Clause of the Fourteenth Amendment. *See id.* at 133–34. Because this case does not involve any similar constitutional tort claim, the vacatur of the *Kadel* Court's decision has no impact on this Court's earlier ruling. With respect to West Virginia's Medicaid program, the result in *Kadel* also rested on the anti-discrimination mandate of ACA § 1557, *see id.* at 163–64, which was not the basis of any claim in *Skrmetti* or of the vacatur of the *Kadel* decision. In concluding that West Virginia's Medicaid program violates ACA § 1557, the *Kadel* Court affirmed the district court's application of *Bostock*, *see id.* at 164, and nothing in *Skrmetti* undermines the validity of *Bostock* or the extension of *Bostock* from Title VII to Title IX and/or ACA § 1557 claims.

ORDER - 8

     (2)    The Clerk is DIRECTED to enter judgment in the form proposed by the parties, docket no. 174.

     (3)    The Clerk is further DIRECTED to send a copy of this Order and the Judgment to all counsel of record, and to CLOSE this case.

IT IS SO ORDERED.

Dated this 12th day of August, 2025.

                                                  Thomas S. Zilly
                                                United States District Judge

ORDER - 9